EXHIBIT 5

Prepare. Protect. Prevail.



**THE HARTFORD**

Business Insurance
Employee Benefits
Auto
Home

August 19, 2020

Re:     Insured:         DUSTEX HOLDINGS, LLC
           Policy Number:     52 XS ON1063
           Policy Term:        06/30/2019 – 06/30/2020
           Writing Company:    TWIN CITY FIRE INSURANCE COMPANY

This will verify that, to the best of the undersigned's knowledge, the attached is a complete and accurate representation of insurance policy referenced above. Documents and/or information produced herewith are kept and maintained in the ordinary course of business.

Kyona Lawrence
Operations Support Specialist
Clinton Business Center
Hartford Office Location

301 Woods Park Dr.
Clinton, NY 13323
Toll Free: 888-525-2652
Fax: 866-809-1178

**Exhibit 5
Page 1 of 39**

# EXCESS LIABILITY
# INSURANCE POLICY



### READ YOUR POLICY, DECLARATIONS PAGE, AND ENDORSEMENTS CAREFULLY

The Quick Reference on the next page has been designed to help you easily find the information you are looking for regarding the location of the Declarations Page, the policy and its various provisions, and any endorsements forming a part of the policy at issue.

(c) 2005, The Hartford

**Exhibit 5**
**Page 2 of 39**

# QUICK REFERENCE

**DECLARATIONS PAGE**

Your Name and Mailing Address
Policy Period
Description of Business and Location          See Adjacent Page
Coverages and Limits of Liability
Premium
Agent or Broker Representing Hartford

**Beginning on Page**

| | |
|---|---|
| INTRODUCTION | 1 |
| SECTION I - COVERAGES | 1 |
|     Insuring Agreement | 1 |
|     Exclusions | 2 |
|     Supplementary Payments | 5 |
| SECTION II - WHO IS AN INSURED | 6 |
| SECTION III - LIMITS OF LIABILITY | 6 |
| SECTION IV - CONDITIONS | 7 |
|     Appeals | 7 |
|     Bankruptcy | 7 |
|     Cancellation | 7 |
|     Changes | 8 |
|     Duties in the Event of Occurrence, Offense, Claim or Suit | 8 |
|     Examination of Your Books and Records | 9 |
|     Inspections and Surveys | 9 |
|     Legal Action Against Us | 9 |
|     Maintenance of Underlying Insurance | 9 |
|     Other Insurance | 10 |
|     Premiums | 10 |
|     Representations | 10 |
|     Transfer of Rights of Recovery Against Others To Us | 10 |
|     Transfer of Your Rights and Duties Under This Policy | 11 |
|     When We Do Not Renew | 11 |
| SECTION V - DEFINITIONS | 11 |
| SECTION VI - NUCLEAR ENERGY LIABILITY EXCLUSION (BROAD FORM) | 13 |

**ENDORSEMENTS** These form numbers and titles are found in the Declarations Page or the
LISTING OF POLICY PROVISIONS AND ENDORSEMENTS FORMING A
PART OF THE POLICY AT ISSUE.

(c) 2005, The Hartford

**Exhibit 5**
**Page 3 of 39**



# IMPORTANT STATE INFORMATION

## FRAUD STATEMENT

**(Applicable in all jurisdictions, except for separate jurisdiction statements below)**

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECT THE PERSON TO CRIMINAL AND (NEW YORK: SUBSTANTIAL) CIVIL PENALTIES. IN THE DISTRICT OF COLUMBIA, LOUISIANA, MAINE AND VIRGINIA, INSURANCE BENEFITS MAY ALSO BE DENIED.

| | |
|---|---|
| **ALABAMA** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO RESTITUTION, FINES OR CONFINEMENT IN PRISON, OR ANY COMBINATION THEREOF. |
| **COLORADO** | IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES. |
| **HAWAII** | FOR YOUR PROTECTION, HAWAII LAW REQUIRES YOU TO BE INFORMED THAT PRESENTING A FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT IS A CRIME PUNISHABLE BY FINES OR IMPRISONMENT, OR BOTH. |
| **KANSAS** | ANY PERSON WHO COMMITS A FRAUDULENT INSURANCE ACT IS GUILTY OF A CRIME AND MAY BE SUBJECT TO RESTITUTION, FINES AND CONFINEMENT IN PRISON. A FRAUDULENT INSURANCE ACT MEANS AN ACT COMMITTED BY ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO DEFRAUD, PRESENTS, CAUSES TO BE PRESENTED OR PREPARES WITH KNOWLEDGE OR BELIEF THAT IT WILL BE PRESENTED TO OR BY AN INSURER, PURPORTED INSURER OR INSURANCE AGENT OR BROKER, ANY WRITTEN STATEMENT AS PART OF, OR IN SUPPORT OF, AN APPLICATION FOR INSURANCE, OF THE RATING OF AN INSURANCE POLICY, OR A CLAIM FOR PAYMENT OR OTHER BENEFIT UNDER AN INSURANCE POLICY, WHICH SUCH PERSON KNOWS TO CONTAIN MATERIALLY FALSE INFORMATION CONCERNING ANY MATERIAL FACT THERETO; OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO. |
| **MAINE** | WE DO NOT PROVIDE COVERAGE TO ONE OR MORE INSUREDS ("INSUREDS") WHO, AT ANY TIME:<br>1. INTENTIONALLY CONCEALED OR MISREPRESENTED A MATERIAL FACT;<br>2. ENGAGED IN FRAUDULENT CONDUCT; OR<br>3. MADE A FALSE STATEMENT;<br>RELATING TO THIS INSURANCE. |

© 2013, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

**Exhibit 5**
**Page 4 of 39**

| OHIO | ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE/SHE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AND APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD. |
|---|---|
| OKLAHOMA | ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY. |

# EXCESS LIABILITY INSURANCE POLICY



**Insurer:** Twin City Fire Insurance Company
One Hartford Plaza, Hartford, CT. 06155

**DECLARATIONS**  **POLICY NO.** 52 XS ON1063

| Previous Policy No. |
| --- |
| 52 XS ON1063 |

**Items**

### 1. Named Insured and Mailing Address

**The Named Insured is:**  [ ] Individual

[ ] Partnership  [ ] Joint Venture

[x] Corporation  [ ] Organization (Other than a Partnership or Joint Venture)

LDX SOLUTIONS
60 CHASTAIN CENTER BLVD NW SUITE 60
KENNESAW, GA 30144

### 2. Policy Period

12:01 a.m. Standard Time at the address of the "first named insured" as stated herein.

| 06/30/2019 | 06/30/2020 |
| --- | --- |
| Inception Date | Expiration Date |

**Producer's Name and Address**  **Producer's Code No.**

USI KIBBLE & PRENTICE
601 UNION STREET
SUITE 1000
SEATTLE, WA 98101

810246

### 3. Audit Period is the Policy Period unless otherwise herein stated:

[ ] Semi-Annual  [ ] Quarterly  [ ] Monthly
[ ] Annual  [x] Not subject to Audit

### 4. Deposit Premium ████████, which is

[x] A Flat Charge Per Each Policy Period

[ ] Adjustable at the end of each Audit Period, Per Premium Computation Endorsement

**Minimum Retained Audit Premium** N/A

**Minimum Retained Premium** N/A, not subject to adjustment in the event of cancellation by you.

**Applicable State Surcharges:** N/A

### 5. Limits of Liability

The Limits of Liability, subject to all the terms of this policy that apply, are:

$10,000,000. EACH OCCURRENCE
$10,000,000. PERSONAL AND ADVERTISING INJURY
$10,000,000. AGGREGATE

### 6. Total Limits of Liability - All Underlying Insurance Policies

See EXTENSION SCHEDULE forming a part of this policy for details.

$1,000,000.

### 7. Controlling Underlying Insurance Policy

See EXTENSION SCHEDULE forming a part of this policy for details.

### 8. Business Description: ENGINEERING & EQUIPMENT SUPPLIER PULP & PAPER

### 9. Form Numbers of Policy Provisions and Endorsements forming a part of this policy:

SEE LISTING OF POLICY PROVISIONS AND ENDORSEMENTS FORMING A PART OF THE POLICY AT ISSUE.

This policy will not be valid unless countersigned by our duly authorized representative

Countersigned by _*Susan L. Castaneda*_
(Where required by law)  *Authorized Representative*

06/28/2019

**Form XN 00 03 15 (ED. 01/07)**  **Page 1 of 1**

(c) 2006, The Hartford

**Exhibit 5**
**Page 6 of 39**



**Named Insured and Address:**    LDX SOLUTIONS
                                 60 CHASTAIN CENTER BLVD NW SUITE 60
                                 KENNESAW, GA 30144

# EXTENSION SCHEDULE OF UNDERLYING INSURANCE POLICIES (EXCESS LIABILITY POLICY)

| Insurer, Policy Number & Period | Type of Coverage | Underlying Limits - Controlling Underlying Ins. |
|---|---|---|
| TWIN CITY FIRE INSURANCE COMPANY<br>52 CES OF6859<br>06/30/2019 - 06/30/2020 | **CONTROLLING UNDER-LYING INSURANCE POLICY ***<br><br>General Liability<br><br>1) Expenses:<br><br>[x] Are in Addition to Limit<br><br>[ ] Reduce Limit<br><br>[ ] Are Self-Insured and In Addition to Limit<br><br>2) Duty to defend all covered claims or suits, either in the "controlling underlying insurance policy," or in all other "underlying insurance?"<br><br>[x] Yes  [ ] No<br><br>3) Form:<br><br>[x] OCCURRENCE<br><br>[ ] CLAIMS-MADE; Retro Date: _____ | $2,000,000. AGGREGATE<br>$1,000,000. EACH OCCURRENCE<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>See Item 6. of Declarations for **Total Limits of Liability - All Underlying Insurance Policies,** and any additional Extension Schedule pages showing **Underlying Layers Excess of Controlling Underlying Insurance Policy.** |

PLEASE REFER TO THE "MAINTENANCE OF UNDERLYING INSURANCE" CONDITION, AND DEFINITION OF "UNDERLYING INSURANCE" IN THIS POLICY.

As used in this Schedule, "Expenses" refers to all reasonable expenses and costs (other than the amount of any settlement) incurred with respect to investigation, settlement or defense of claims or suits.

*Except as otherwise provided by this policy, the insurance afforded herein shall follow all the terms, conditions, definitions and exclusions of the "controlling underlying insurance policy."



# EXTENSION SCHEDULE OF UNDERLYING INSURANCE POLICIES (EXCESS LIABILITY POLICY)

| Insurer, Policy Number & Period | Type of Coverage | Underlying Limits - Controlling Underlying Ins. |
|---|---|---|
| TWIN CITY FIRE INSURANCE COMPANY<br>52 CES OF6859<br>06/30/2019 - 06/30/2020 | **CONTROLLING UNDER-LYING INSURANCE POLICY \***<br><br>Products Liability<br><br>1) Expenses:<br><br>[x] Are in Addition to Limit<br><br>[ ] Reduce Limit<br><br>[ ] Are Self-Insured and In Addition to Limit<br><br>2) Duty to defend all covered claims or suits, either in the "controlling underlying insurance policy," or in all other "underlying insurance?"<br><br>[x] Yes   [ ] No<br><br>3) Form:<br><br>[x] OCCURRENCE<br><br>[ ] CLAIMS-MADE; Retro Date: _____ | $2,000,000. AGGREGATE<br>$1,000,000. EACH OCCURRENCE<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>See Item 6. of Declarations for **Total Limits of Liability - All Underlying Insurance Policies,** and any additional Extension Schedule pages showing **Underlying Layers Excess of Controlling Underlying Insurance Policy.** |

PLEASE REFER TO THE "MAINTENANCE OF UNDERLYING INSURANCE" CONDITION, AND DEFINITION OF "UNDERLYING INSURANCE" IN THIS POLICY.

As used in this Schedule, "Expenses" refers to all reasonable expenses and costs (other than the amount of any settlement) incurred with respect to investigation, settlement or defense of claims or suits.

*Except as otherwise provided by this policy, the insurance afforded herein shall follow all the terms, conditions, definitions and exclusions of the "controlling underlying insurance policy."

**Named Insured and Address:**

LDX SOLUTIONS
60 CHASTAIN CENTER BLVD NW SUITE 60
KENNESAW, GA 30144



# EXTENSION SCHEDULE OF UNDERLYING INSURANCE POLICIES (EXCESS LIABILITY POLICY)

| Insurer, Policy Number & Period | Type of Coverage | Underlying Limits - Controlling Underlying Ins. |
|---|---|---|
| TRUMBULL INSURANCE COMPANY<br>52 UUN HA8416<br>06/30/2019 - 06/30/2020 | **CONTROLLING UNDERLYING INSURANCE POLICY \***<br><br>Auto Liability<br><br>1) Expenses:<br><br>  [x] Are in Addition to Limit<br><br>  [ ] Reduce Limit<br><br>  [ ] Are Self-Insured and In Addition to Limit<br><br>2) Duty to defend all covered claims or suits, either in the "controlling underlying insurance policy," or in all other "underlying insurance?"<br><br>  [x] Yes    [ ] No<br><br>3) Form:<br><br>  [x] OCCURRENCE<br><br>  [ ] CLAIMS-MADE; Retro Date: _____ | $1,000,000. PER ACCIDENT<br><br><br><br><br><br><br><br><br><br><br><br>See Item 6. of Declarations for **Total Limits of Liability - All Underlying Insurance Policies,** and any additional Extension Schedule pages showing **Underlying Layers Excess of Controlling Underlying Insurance Policy.** |

PLEASE REFER TO THE "MAINTENANCE OF UNDERLYING INSURANCE" CONDITION, AND DEFINITION OF "UNDERLYING INSURANCE" IN THIS POLICY.

As used in this Schedule, "Expenses" refers to all reasonable expenses and costs (other than the amount of any settlement) incurred with respect to investigation, settlement or defense of claims or suits.

*Except as otherwise provided by this policy, the insurance afforded herein shall follow all the terms, conditions, definitions and exclusions of the "controlling underlying insurance policy."

**Named Insured and Address:**    LDX SOLUTIONS
                                  60 CHASTAIN CENTER BLVD NW SUITE 60
                                  KENNESAW, GA 30144



# EXTENSION SCHEDULE OF UNDERLYING INSURANCE POLICIES (EXCESS LIABILITY POLICY)

| Insurer, Policy Number & Period | Type of Coverage | Underlying Limits - Controlling Underlying Ins. |
|---|---|---|
| TWIN CITY FIRE INSURANCE COMPANY<br>52 WE ZQ2040<br>06/30/2019 - 06/30/2020 | **CONTROLLING UNDERLYING INSURANCE POLICY ***<br><br>Employers' Liability<br><br>1) Expenses:<br><br>[x] Are in Addition to Limit<br><br>[ ] Reduce Limit<br><br>[ ] Are Self-Insured and In Addition to Limit<br><br>2) Duty to defend all covered claims or suits, either in the "controlling underlying insurance policy," or in all other "underlying insurance?"<br><br>[x] Yes [ ] No<br><br>3) Form:<br><br>[x] OCCURRENCE<br><br>[ ] CLAIMS-MADE; Retro Date: _____ | $1,000,000. EACH ACCIDENT (BI BY ACCIDENT)<br>$1,000,000. POLICY LIMIT (BI BY DISEASE)<br>$1,000,000. EACH EMPLOYEE (BI BY DISEASE)<br><br><br><br><br><br>See Item 6. of Declarations for **Total Limits of Liability - All Underlying Insurance Policies,** and any additional Extension Schedule pages showing **Underlying Layers Excess of Controlling Underlying Insurance Policy.** |

PLEASE REFER TO THE "MAINTENANCE OF UNDERLYING INSURANCE" CONDITION, AND DEFINITION OF "UNDERLYING INSURANCE" IN THIS POLICY.

As used in this Schedule, "Expenses" refers to all reasonable expenses and costs (other than the amount of any settlement) incurred with respect to investigation, settlement or defense of claims or suits.

*Except as otherwise provided by this policy, the insurance afforded herein shall follow all the terms, conditions, definitions and exclusions of the "controlling underlying insurance policy."

**Exhibit 5**
**Page 10 of 39**



**Named Insured and Address:**    LDX SOLUTIONS
60 CHASTAIN CENTER BLVD NW SUITE 60
KENNESAW, GA 30144

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LISTING OF POLICY PROVISIONS AND ENDORSEMENTS FORMING A PART OF THE POLICY AT ISSUE

The following is a listing of policy provisions and endorsements by Form Number and Title that form a part of the policy at issue.

| | **FORM NUMBER** | | **TITLE** |
|---|---|---|---|
| 1 | XN000816 | 06-05 | EXCESS LIABILITY INSURANCE POLICY - POLICY PROVISIONS |
| 2 | XN041513 | 10-91 | EMPLOYEE BENEFITS LIABILITY ENDORSEMENT |
| 3 | XN980218 | 01-15 | CONFIRMATION OF COVERAGE ELECTION - POLICYHOLDERS OF UMBRELLA OR EXCESS LIABILITY INS POLICIES |
| 4 | GS2170 | 01-15 | CAP ON LOSSES FROM CERTIFIED ACT OF TERRORISM |
| 5 | G-3418-0 | | PRODUCER COMPENSATION NOTICE |
| 6 | IH9940 | 04-09 | U.S. DEPT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS |
| 7 | IH9941 | 04-09 | TRADE OR ECONOMIC SANCTIONS ENDORSEMENT |
| 8 | GN999914 | 12-06 | MANDATORY FORM - OFFICER SIGNATURE |
| 9 | GN026215 | 02-15 | GEORGIA CHANGES |
| 10 | XN002513 | 09-14 | EXCLUSION - ACCESS OR DISCLOSURE OR PERSONAL INFORMATION & DATA-RELATED LIABILITY W/ LMTD BI EXCE |
| 11 | XN237617 | 03-17 | PUBLIC OR LIVERY PASSENGER CONVEYANCE EXCLUSION |

**Form GN 99 19 14 (ED. 04/95)**    Printed in U.S.A. (NS)

(c) 1995, The Hartford

**Exhibit 5**
**Page 11 of 39**



# EXCESS LIABILITY INSURANCE POLICY
# POLICY PROVISIONS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and what is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the stock insurance company member of THE HARTFORD shown on the Declarations Page as the insurer.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks are defined in SECTION V (DEFINITIONS) of this policy.

In consideration of the payment of the premium when due, and:

a. In reliance upon the statements made in the Declarations; and

b. Subject to the Limits of Liability, Exclusions, Definitions, Conditions and all other terms of this policy; including those modified, replaced by or added by endorsements we issue forming a part of this policy,

we agree with you as follows:

## SECTION I - COVERAGES

**1. Insuring Agreement.**

a. We will pay on behalf of the insured those sums that the insured shall become legally obligated to pay as damages which are:

(1) Because of any injury or damage for which insurance is afforded by the "controlling underlying insurance policy"; and

(2) Not excluded or modified by the Exclusions, Conditions, Definitions, or any other terms of this policy;

But only to the extent that such damages are in excess of the total limits of "underlying insurance" that have been reduced or exhausted solely by payment of that portion of judgments or settlements to which this policy applies.

b. We may at our discretion investigate any "occurrence" or "offense" in a. above, and settle any "claim" or "suit" that may result.

But:

(1) We shall not be obligated to assume charge of, participate in, or pay for the defense of any insured, or investigation or settlement of any "claim" or "suit".

However, if a "claim" or "suit", in our opinion, involves or is reasonably likely to involve payment of damages by us under this policy, we shall, at our own expense, have the right but not the duty to investigate and assign counsel in addition to any defense counsel assigned by or on behalf of the insured or its underlying insurers. Such additional counsel shall have the right to participate in the defense of any insured, or the investigation or settlement of any "claim" or "suit" on our behalf.

If we avail ourselves of the foregoing right(s), the insured, its underlying insurers and we shall cooperate in such investigation, defense, or settlement. In no event will we contribute to any costs or expenses incurred by any underlying insurer;

© 2005, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

**Exhibit 5**
**Page 12 of 39**

(2) Any right or opportunity we have exercised to participate in the defense ends at our discretion, but in all events ends when we have used up the limit of liability in the payment of judgments or settlements to which this policy applies; and

(3) The amounts we will pay for damages is limited as described in LIMITS OF LIABILITY (SECTION III).

No obligation to pay "claim expenses" or any other liability to pay sums or perform acts or services is covered unless explicitly provided for under the SUPPLEMENTARY PAY-MENTS section of this policy.

c.  This policy applies to injury or damage in 1.a. only if such injury or damage:

(1) (a) Is caused by an "occurrence" that takes place in the "coverage territory"; and

(b) Occurs during the "policy period"; or

(2) (a) Is caused by an "offense" committed in the "coverage territory"; and

(b) The "offense" is committed during the "policy period".

**2.  Exclusions.**

This policy does not apply to:

a.  Remedies Other Than Damages

Fines, penalties, restitutionary or equitable relief.

b.  Uninsured or Underinsured Motorists

Any "claim" for Uninsured or Underinsured Motorists Coverage.

c.  No-Fault

Any "claim" for Personal Injury Protection, Property Protection, or similar no-fault coverage by whatever name called.

d.  Workers Compensation and Similar Law

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e.  Employer's Liability

Any injury or damage to:

(1) An "employee" of the insured, in any state where, either prior to or at any time during the "policy period", any insured or any "employee" of any insured expressly or otherwise rejects, does not subscribe to, or has not complied with the workers compensation, unemployment compensation, disability benefits law or any similar law of that state;

(2) Any "leased workers"; or

(3) The spouse, child, parent, brother or sister of that "employee" or "leased worker" as a consequence of (1) or (2) above.

Exclusions (1), (2) and (3) apply:

(a) Whether the insured may be liable as an employer or in any other capacity;

(b) To any obligation to share damages with or repay someone else who must pay damages because of the injury; and

(c) Whether or not liability for any of the above is assumed by the insured under any contract or agreement, even if under an "insured contract".

f.  Pollution

(1) Any injury or damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph (a) does not apply to injury

or damage arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations;

(e) To the extent that any such injury or damage is included in the "products-completed operations hazard";

(f) That are, or that are contained in any property that is:

(i) Being transported or towed by, or handled for movement into, onto or from the covered "auto";

(ii) Otherwise in the course of transit by any insured; or

(iii) Being stored, disposed of, treated or processed in or upon the covered "auto";

(g) Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by any insured for movement into or onto the covered "auto"; or

(h) After the "pollutants" or any property in which the

"pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by any insured.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

However, this paragraph (2) does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or suit by or on behalf of a governmental authority.

Coverage afforded by reason of any exceptions set forth in paragraphs (1) and (2) applies only to the extent:

(i) Of the scope of coverage provided by the "underlying insurance" but in no event shall coverage be broader than the scope of coverage provided by this policy and any endorsements attached thereto; and

(ii) That such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Extension Schedule of Underlying Insurance.

g. Aircraft Products

Any injury or damage included within the "products-completed operations hazard"

**Exhibit 5**
**Page 14 of 39**

**EXCESS LIABILITY INSURANCE POLICY**

arising out of the design, manufacture, sale, handling or distribution of "aircraft products", or reliance upon any representation or warranty made with respect thereto, or to any liability arising out of the "grounding" of any "aircraft".

It is also agreed that this policy shall not apply to any liability assumed by the insured under any contract or agreement if such liability arises out of "aircraft products" designed, manufactured, sold, handled or distributed by the insured or by others trading under his or her name.

h.  Asbestos

Any injury, damages, loss, costs or expenses, including but not limited to "bodily injury", "property damage" or "personal and advertising injury" arising out of, or relating to, in whole or in part, the "asbestos hazard" that:

(1) May be awarded or incurred by reason of any "claim" or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the "asbestos hazard";

(2) Arise out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos hazard"; or

(3) Arise out of any "claim" or "suit" for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos hazard".

As used in this exclusion, "asbestos hazard" means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

i.  Employee Retirement Income Security Act

Any liability arising out of intentional or unintentional violation of any provision of the Employee Retirement Income Security Act of 1974, Public Law 93-406 (commonly referred to as the revision act of 1974), or any amendments to them.

j.  Employment Related Practices

Any injury or damage to:

(1) A person arising out of any "employment related practices"; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of any injury or damage to that person at whom any of "employment-related practices" are directed.

This exclusion applies:

(1) Whether the insured may be held liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

k.  Contractual Liability

Any injury or damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages:

(1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

(2) That the insured would have in the absence of the contract or agreement.

**Exhibit 5**
**Page 15 of 39**

l. Prior Knowledge

Any injury or damage if such injury or damage is a continuation of, or arises out of injury or damage that commenced prior to the inception date of the policy and if any insured knew, or should have known of such injury or damage.

m. Electronic Data

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

n. Limited Underlying Coverage

Any injury, damage, loss, cost or expense, including but not limited to "bodily injury", "property damage" or "personal and advertising injury" for which:

(1) An "underlying insurance" policy or policies specifically provides coverage; but

(2) Because of a provision within the "underlying insurance" such coverage is provided at a limit or limits of insurance that are less than the limit(s) for the "underlying insurance" policy or policies shown on the Schedule of Underlying Insurance Policies.

o. Distribution Of Material In Violation Of Statutes

Any injury or damage arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

p. War

Any injury or damage, however caused, arising directly or indirectly out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**SUPPLEMENTARY PAYMENTS**

Only to the extent not covered by "underlying insurance", we will pay the following:

1. All "claim expenses" we incur.

2. The following in the ratio that our liability for the judgment rendered or settlement made bears to the whole amount of such judgment or settlement:

a. "Claim expenses" incurred by the insured with our written consent. However, if a "claim" or "suit" is settled or results in a judgment for a sum within the limits of the "underlying insurance", none of the "claim expenses" incurred by the insured are payable by us;

b. Up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which this policy applies. We do not have to furnish these bonds;

**Exhibit 5**
**Page 16 of 39**

c.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of liability. We do not have to furnish these bonds;

d.  An insured's actual loss of earnings, up to $250 per day, resulting from time off from work because of our request for assistance in the investigation or defense of a "claim" or "suit"; and

e.  All costs taxed against the insured in the "suit".

3.  The interest on that portion of a judgment or settlement in excess of the amount of the "underlying insurance" that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable limit of liability.

Any amounts paid under 1. through 3. above will not reduce the limits of liability.

## SECTION II-WHO IS AN INSURED

The following is an insured:

1.  Any person or organization who is an insured under the "controlling underlying insurance policy" with limits of liability at least as high as set forth in the Extension Schedule of Underlying Insurance, subject to all the limitations upon coverage and all other policy terms and conditions of such "controlling underlying insurance policy" and this policy.

2.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock, will qualify as a Named Insured. However:

a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

b.  The provision does not apply to any injury or damage that occurred before you acquired or formed the organization; and

c.  This provision does not apply to injury or damage arising out of an "offense" committed before you acquired or formed the organization.

This paragraph 2. applies only if such persons or organizations are insured under the "controlling underlying insurance policy" and any "underlying insurance" with limits of liability at least as high as set forth in the Extension Schedule of Underlying Insurance, subject to all the limitations upon coverage and all other policy terms and conditions of the "controlling underlying insurance policy" and this policy.

No person or organization is an insured with respect to any newly acquired organization that has not been reported within the time period in the provisions set forth in paragraph 2.a. above, and that is not shown as a Named Insured in the Declarations.

## SECTION III-LIMITS OF LIABILITY

1.  Subject to item 1.a. of the Insuring Agreement, the Limits of Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a.  Insureds;

b.  "Claims" made or "suits" brought;

c.  Persons or organizations making "claims" or bringing "suits";

d.  Coverages under which damages are covered under this policy; or

e.  "Autos", "aircraft" or watercraft to which this policy applies.

2.  If the Limits of Liability stated in Item 5. of the Declarations are on a Quota Share Basis, our Limit of Liability shall be the quota share percentage so stated of all damages to which this policy applies in excess of "underlying insurance", up to the limits so stated.

If the Limits of Liability stated in Item 5. of the Declarations are on a Full Limits Basis, our Limit of Liability shall be the amount of all damages to which this policy applies in excess of "underlying insurance", up to the limits so stated.

3.  The Aggregate Limit is the most we will pay for the sum of all damages to which this policy applies.

**Exhibit 5**
**Page 17 of 39**

4. Subject to 2. and 3. above, the Each Occurrence Limit or the Personal and Advertising Injury Limit set forth in the Declarations is the most we will pay for any one "occurrence" or for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization respectively.

5. If you have agreed in a written contract or written agreement that another person or organization be added as an additional insured on your policy, the most we will pay on behalf of such additional insured is the lesser of:

   a. The limits of liability specified in the written contract or written agreement; or

   b. The Limits of Liability shown in the Declarations.

The Limits of Liability of this policy apply separately to each "policy period". If the "policy period" is extended after issuance for an additional period, such additional period will be deemed part of the "policy period" for purposes of determining the Limits of Liability.

**SECTION IV-CONDITIONS**

1. **Appeals.**

   In the event the insured or the underlying insurer elects not to appeal a judgment in excess of the "underlying insurance", we may, at our option, make such appeal at our cost and expense, although we will in no event be obligated to post or obtain any appeal bond (but we will, under those circumstances, pay for the cost of such a bond obtained by the insured). We shall be liable in addition to the limit of liability, for taxable costs and disbursements and interest incidental thereto.

   If a judgment is rendered in excess of the limits of the "underlying insurance" and we offer to pay our full share of such judgment, but you or your underlying insurers elect to appeal it, you, your underlying insurers or both together will bear:

   a. The cost of obtaining any appeal bond;

   b. All "claim expenses", taxable costs, disbursements and additional interest incidental to such appeal; and

   c. Any increase in damages over the amount the matter could have been settled for after the verdict was entered and before the appeal was filed.

2. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of an insured's estate will not relieve us of our obligations under this policy.

3. **Cancellation.**

   a. The "first named insured" may cancel this policy by:

      (1) Mailing or delivering to us advance written notice of cancellation; or

      (2) Surrendering the policy to us or to any of our authorized agents.

   b. We may cancel this policy by mailing or delivering to the "first named insured" written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation, if we cancel for non-payment of any premium when due; or

      (2) 60 days before the effective date of cancellation, if we cancel for any other reason.

      The 10 days or 60 days in (1) and (2) above are replaced by longer minimum number of days requirements, if any, of the state shown as the "first named insured's" mailing address shown in the Declarations.

   c. We will mail or deliver our notice to the last mailing address known to us of the "first named insured".

   d. Notice of cancellation by us will state the effective date of the cancellation. The "policy period" will end on that date.

   e. If this policy is cancelled, we will send the "first named insured" any premium refund due. If we cancel, the refund will be pro-rata. If the Named Insured cancels, we shall compute the return premium at 90% of the pro-rata unearned premium.

**Exhibit 5**
**Page 18 of 39**

**EXCESS LIABILITY INSURANCE POLICY**

We shall in any event be entitled to retain any Minimum Retained Premium stated in the Declarations.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

g. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4. **Changes.**

This policy contains all the agreements between you and us concerning the insurance afforded. The "first named insured" is authorized on behalf of all insureds to agree with us on all changes in the terms of this policy.

If the terms are changed, the changes will be shown in an endorsement issued by us and made a part of this policy.

5. **Duties In The Event Of Occurrence, Offense, Claim or Suit.**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an "offense" which may result in a "claim" under this policy. This requirement applies only when such "occurrence" or "offense" is known to any of the following:

(1) You or any additional insured that is an individual;

(2) Any "executive officer" or insurance manager, if you or an additional insured are a corporation;

(3) Any elected or appointed official, if you or an additional insured is a political subdivision or public entity;

(4) Any partner, if you or an additional insured are a partnership;

(5) Any member, if an insured or an additional insured is a joint venture or limited liability company; or

(6) Any trustee, if you or an additional insured is a trust.

This duty applies separately to you and any additional insured.

To the extent possible, notice should include:

(1) How, when and where the "occurrence" or "offense" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or "offense".

b. If a "claim" is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us in writing as soon as practicable if the "claim" is likely to exceed the amount of the "underlying insurance".

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit" involving or likely to involve a sum in excess of any "underlying insurance";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit";

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this policy or any "underlying insurance" applies;

(5) Furnish us the following, as soon as practicable:

**Exhibit 5**
**Page 19 of 39**

(a) Complete information on all "claims" reserved for 50% or more of the amount of the "underlying insurance";

(b) Complete information on all "claims" (including multiple "claims") arising out of an "occurrence" or "offense" which might require payment in excess of "underlying insurance"; and

(6) Maintain adequate "claim" records and supporting data which document reserves for payment of "claims", dates and amounts of any settlements, including specific identification of "claim expenses" incurred and paid.

d. No insureds will, except at that insured's own cost, make or agree to any settlement for a sum in excess of the total limits of "underlying insurance" without our consent.

e. No insureds will, except at that insured's own cost, make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

6. **Examination Of Your Books And Records.**

We may examine and audit your books and records as they relate to this policy at any time during the "policy period" and up to three years afterward.

We may do the same as to the books and records of any organization you newly acquire or form that is deemed to be a Named Insured under this policy.

7. **Inspections And Surveys.**

We have the right but are not obligated to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. Such inspections are not safety inspections. We do not undertake any duty to provide for the health or safety of any person. And we do not represent or warrant that conditions:

a. Are safe or healthful; or

b. Comply with laws, regulations, codes or standards.

8. **Legal Action Against Us.**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms and those of the "controlling underlying insurance policy" have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the limit of liability.

An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

9. **Maintenance of Underlying Insurance.**

Policies affording in total at least the coverage and limits stated in the Extension Schedule of Underlying Insurance Policies shall be maintained in full effect during the currency of this policy. Your failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, we shall be liable only to the extent we would have been liable had you complied with this condition.

**Exhibit 5**
**Page 20 of 39**

The limit of "underlying insurance" shall not, for the purpose of determining when this insurance applies, be reduced by the payment of expenses incurred in the defense of any insured, or the investigation or settlement of a "claim" or "suit".

The "first named insured" shall give us written notice as soon as practicable of any change in the coverage or in the limits of any "underlying insurance", and of the termination of any coverage or when the sum of all incurred losses equals or exceeds 70% of the aggregate limits of the "underlying insurance".

10**. Other Insurance.**

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except when purchased specifically to apply in excess of this insurance.

11. **Premiums.**

a. We will compute all premiums for this policy, including any applicable Audit Premium, Minimum Retained Audit Premium and Minimum Retained Premium in accordance with our rules, rates and rating plans.

b. The "first named insured":

(1) Is responsible for payment of all premiums when due; and

(2) Will be the payee for any return premiums we pay.

c. If the Deposit Premium set forth in the Declarations is adjustable, such Deposit Premium is an estimated premium for the Audit Period set forth in the Declarations. At the end of such Audit Period, we will compute any applicable Audit Premium.

Then:

(1) Audit Premium which is greater than the paid Deposit Premium is due and payable by the "first named insured" upon notice; or

(2) Paid Deposit Premium which is greater than Audit Premium will be refunded to the "first named insured", subject to any Minimum Retained Audit

Premium and Minimum Retained Premium set forth in the Declarations,

Whichever of (1) or (2) applies.

d. The "first named insured" must keep records of the information we need for premium computation, and send us copies at such time as we may request.

e. The Minimum Retained Premium stated in the Declarations shall be considered as fully earned at the inception of this policy.

12. **Representations.**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. The statements in the Extension Schedule Of Underlying Insurance Policies are accurate and complete;

c. The statements in a. and b. are based upon representations you made to us;

d. We have issued this policy in reliance upon your representations; and

e. If unintentionally you should fail to disclose all hazards at the inception of this policy, we shall not deny coverage under this policy because of such failure.

13. **Transfer of Rights Of Recovery Against Others To Us.**

a. If the insured has rights to recover all or a part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

b. Recoveries shall be applied to reimburse:

(1) First, any interest (including the Named Insured) that paid any amount in excess of our limit of liability;

(2) Second, us, along with any other insurers having a quota share interest at the same level;

(3) Third, such interests (including the Named Insured) of whom this insurance is excess.

However, a different apportionment may be made to effect settlement of a "claim" by agreement signed by all interests.

c. Reasonable expenses incurred in the exercise of rights or recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

14. **Transfer Of Your Rights And Duties Under This Policy.**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.

Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

15. **When We Do Not Renew.**

a. If we decide not to renew this policy, we will mail or deliver written notice of non-renewal to the "first named insured" at least 60 days before the end of the "policy period".

b. If notice is mailed, we will mail it to the last mailing address known to us of the "first named insured". Proof of mailing will be sufficient notice.

c. If we offer to renew this policy and the "first named insured" does not accept our offer during the current "policy period", this policy will expire at the end of such "policy period".

## SECTION V - DEFINITIONS

All other words or phrases found in quotation marks in this policy which are not listed in this section or defined elsewhere in the policy or an endorsement to this policy shall have the same definitions that those words or phrases have in the "controlling underlying insurance policy".

1. "Aircraft" includes but is not limited to heavier-than-air flying vehicles, helicopters, gliders, missiles or spacecraft.

2. "Aircraft products" means "aircraft" and any other goods or products manufactured, sold, handled or distributed or services provided or recommended by the insured or by others trading under his or her name for use in the manufacture, repair, operation, maintenance or use of any "aircraft".

"Aircraft products" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "aircraft products"; and

b. The providing of or failure to provide warnings or instructions.

3. "Auto" means:

a. Any land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. However, the foregoing applies only to the extent that such land vehicle is defined as an "auto" under the Automobile Liability "underlying insurance".

However, "auto" does not include "mobile equipment".

4. "Claim" means a demand received by any insured for damages alleging injury or damage to persons or property including the institution of a "suit" for such damages against any insured.

5. "Claim expenses" means all expenses:

a. Incurred by us; or

b. Incurred by or on behalf of the insured with our written consent.

But "claim expenses" include only those expenses incurred in the defense of any insured, or the investigation or

**Exhibit 5**
**Page 22 of 39**

settlement of "claims" or "suits". "Claim" fees paid to the insured's "claim" servicing agency, "underlying insurance", or other insurance are not "claim expenses".

Salaries of your and our "employees" are excluded from this definition; but the costs and expenses of our staff defense counsel and legal assistants are included.

"Claim expenses" are not damages.

6. "Controlling underlying insurance policy" means the insurance policy listed in item 7. of the Declarations or set forth as such in the Extension Schedule of Underlying Insurance Policies.

7. "Coverage territory" is the geographic area in which the "controlling underlying insurance policy" applies.

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

9. "Employment related practices" means:

   a. Refusal to employ a person;

   b. Termination of a person's employment; or

   c. Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at a person.

10. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

11. "First named insured" means the person or entity first named in Item 1. of the Declarations of this policy.

12. "Grounding" means:

    a. The withdrawal of one or more "aircraft" from flight operations; or

    b. The imposition of speed, passenger or load restrictions on such "aircraft" by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such "aircraft" or any part thereof:

(1) Sold, handled or distributed by the insured; or

(2) Manufactured, assembled or processed by any other person or organization:

   (a) According to specifications, plans, suggestions, orders or drawings of the insured; or

   (b) With tools, machinery or other equipment furnished to such persons or organizations by the insured;

Whether such "aircraft" so withdrawn are owned or operated by the same or different person or organizations.

13. "Hostile fire" means a fire which becomes uncontrollable or breaks out from where it was intended to be.

14. "Insured contract" means the definition of insured contract contained in the "controlling underlying insurance policy".

15. "Leased worker" means the definition of leased worker contained in the "controlling underlying insurance policy".

16. "Mobile equipment":

    a. Means the definition of mobile equipment contained in the "underlying insurance"; but

    b. Does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. However, the foregoing applies only to the extent that such land vehicle is not defined as "mobile equipment" under the General Liability "underlying insurance".

17. "Occurrence" means an accident or occurrence as defined in and covered by the "controlling underlying insurance policy".

18. "Offense" means an offense described in the definition of "personal and advertising injury" as defined in and covered by the "controlling underlying insurance policy".

**Exhibit 5**
**Page 23 of 39**

19. "Policy period" means the period beginning with the inception date shown in the Declarations and ending with the earlier of:

    a. The date of cancellation of this policy; or

    b. The expiration date shown in the Declarations.

20. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

21. "Products-completed operations hazard" means the products-completed operations hazard as defined in and covered by the "controlling underlying insurance policy".

22. "Suit" means a civil proceeding in which damages because of injury or damage to which this policy applies are alleged.

    "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

23. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

24. "Underlying insurance" means the insurance policies listed in the Extension Schedule of Underlying Insurance Policies, including any renewals or replacements thereof, which provide the underlying coverages and limits stated in such Extension Schedule. A limit of "underlying insurance" includes any deductible amount, any participation of the insured, or any amount retained by the insured above or beneath any such policy, less the amount, if any, by which the aggregate limit of such insurance has been reduced solely by payment of that portion of judgments or settlements to which this policy applies, taking place during the "policy period" of this policy. The coverage and limits of such "underlying insurance" policies and any such deductible amount, participation or any amount retained by the insured shall be deemed applicable regardless of (1) any defense which any underlying insurer may assert because of any insured's failure to comply with any condition in its policy or (2) the actual or alleged insolvency or financial impairment of any underlying insurer or any insured. The risk of insolvency or financial impairment of any underlying insurer or any insured is borne by insureds or others and not by us.

**SECTION VI - NUCLEAR ENERGY LIABILITY EXCLUSION (BROAD FORM)**

1. This policy does not apply:

    a. To any injury or damage:

       (1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

       (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**Exhibit 5**
**Page 24 of 39**

b. To any injury or damage resulting from the "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to injury or damage to such "nuclear facility" and any property thereat.

2. As used in this exclusion:

"Hazardous properties" include radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

Injury or damage includes all forms of radioactive contamination of property.

**Named Insured and Address:**     LDX SOLUTIONS
                                   60 CHASTAIN CENTER BLVD NW SUITE 60
                                   KENNESAW, GA 30144

**Endt. No.**    2

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYEE BENEFITS LIABILITY ENDORSEMENT

### SCHEDULE I
Coverage afforded by this endorsement

| **Coverage** | **Limits of Liability** | |
|---|---|---|
| Employee Benefits Injury Liability | $10,000,000 | Each "Offense" Limit |
| | N/A | Each "Claim" Limit |
| | $10,000,000 | Aggregate Limit; |

[X] Included in the General Aggregate set forth in Item 5. of the Declarations, or

[ ] Applies separately to Employee Benefits Injury Liability

---

### SCHEDULE II
Coverage afforded by the "Controlling Underlying Insurance Policy"

| **Insurer** | **Policy No.** | **Policy Period** |
|---|---|---|
| TWIN CITY FIRE INSURANCE CO. | 52 CES OF6859 | 6/30/2019-6/30/2020 |

**Coverage**

Employee Benefits Liability

[ ] Occurrence Basis

[X] Claims-made Basis

    Retroactive Date:   6/30/2003

(If none, the retroactive date is inception of "policy period" set forth in Item 2. of the Declarations of the policy of which this endorsement forms a part.)

**Limits of Liability**

    Each "Offense" Limit

    Each "Claim" Limit

    Aggregate Limit

[X] Included within General Aggregate

[ ] Applies separately to Employee Benefits Injury Liability

**Form XN 04 15 13 (ED. 10/91)** Printed in U.S.A. (NS)                    **Page 1 of 3**

(c) 1991, The Hartford

**Exhibit 5**
**Page 26 of 39**

This policy is extended to apply to Employee Benefits Liability, subject to the following additional provisions:

1. Except as otherwise provided by this endorsement, the insurance afforded herein shall follow all the terms, definitions and exclusions of the "controlling underlying insurance policy" with respect to "employee benefits injury," including whether such coverage is afforded on an occurrence or claims made basis.

2. **SECTION I - COVERAGE B**

   We will pay those sums that the insured must legally pay as damages:

   1. Because of "employee benefits injury" to which this endorsement applies, and

   2. That are in excess of the limits of liability of "controlling underlying insurance policy" as set forth in SCHEDULE II.

3. **SECTION III - LIMITS OF LIABILITY**

   A. The Limits of Liability set forth in SCHEDULE I and the rules below fix the most we will pay regardless of the number of:

      1. Insureds;

      2. "Claims" made or "suits" brought; or

      3. Persons or organizations making "claims" or bringing "suits."

   B. The Aggregate Limit set forth in SCHEDULE I is the most we will pay for all damages to which this endorsement applies.

   C. Subject to B. above, the Each Offense Limit or the Each Claim Limit (whichever one applies) set forth in SCHEDULE I is the most we will pay for all damages with respect to any one "offense" or "claim," respectively.

   D. Our obligation under this endorsement ends when the applicable Limit of Liability is used up. If we pay for any damages in excess of that Limit of Liability, you agree to reimburse us for such amounts.

   E. The Limits of Liability shown in SCHEDULE I apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in SCHEDULE II, unless the endorsement is extended after issuance for an additional period of less than 12 months. In that case the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Liability.

4. **ADDITIONAL DEFINITIONS**

   For purposes of this endorsement only, the following additional definitions apply:

   "Administration" means administration, as defined in the "controlling underlying insurance policy," of your "employee benefits program."

"Controlling underlying insurance policy" means the policy of "underlying insurance" designated in SCHEDULE II providing coverage and limits for Employee Benefits Liability.

"Employee Benefits Injury" means the definition of employee benefits injury set forth in the "controlling underlying insurance policy."

"Employee Benefits Program" means the definition of employee benefits program set forth in the "controlling underlying insurance policy."

"Offense" means, with respect to "employee benefits injury," an act, error or omission described in the "administration" of your "employee benefits program." All "employee benefits injury" arising out of the same or similar act, error or omission shall be considered as arising solely out of one "offense."

5. **ADDITIONAL CONDITION**

   You warrant that you will maintain in force during the currency of this policy underlying limits for Employee Benefits Liability Coverage as stated in the SCHEDULE II of this endorsement. In the event of your failure to maintain such coverage and limits or to meet all conditions required for payment of any "claim" under such coverage, the insurance afforded under the terms of this endorsement shall apply in the same manner it would have applied had such coverage and limits been so maintained in force.

6. **EXTENDED REPORTING PERIODS**

   The following applies only if the coverage afforded by this endorsement is on a claims-made basis.

   a. We will provide one or more Extended Reporting Periods, as described below, if:

      (1) This endorsement is cancelled or not renewed; or

      (2) We renew or replace this endorsement with insurance that:

         (a) Has a Retroactive Date later than the date shown in SCHEDULE II of this endorsement, or

         (b) Does not apply to "employee benefits injury" on a claim-made basis.

   b. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the "policy period" and lasts for:

      1. One year for "claims" arising out of an "employee benefits injury" reported to us, not later than 60 days after the end of the "policy period," in accordance with paragraph 2.a. of Conditions (Section IV); or

(2) Sixty days for all other "claims."

The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims."

c. A Supplemental Extended Reporting Period of three years duration is available, but only by an endorsement and for an extra charge. This supplemental period starts:

(1) One year after the end of the "policy period" for "claims" arising out of an "offense" reported to us, not later than 60 days after the end of the "policy period," in accordance with paragraph 2.a. of Conditions (Sections IV); or

(2) Sixty days after the end of the "policy period" for all other "claims."

You must give us a written request for the endorsement within 60 days after the end of the "policy period." The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due. We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

(1) The exposures insured;

(2) Previous types and amounts of insurance;

(3) Limits of Liability available under this endorsement for future payment of damages; and

(4) Other related factors.

The additional premium will not exceed 200% of the annual premium for this endorsement.

This endorsement shall set forth the terms, not inconsistent with this Section 6., applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other insurance available under policies in force after the Supplemental Extended Reporting Period starts.

d. Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided. They apply only to "claims" for "employee benefits injury" that occur before the end of the "policy period" (but not before the Retroactive Date, if any, shown in SCHEDULE II of this endorsement).

"Claims" for such injury which are first received and recorded during the Basic Extended Reporting Period (or during the Supplemental Extended Reporting Period, if it is in effect) will be deemed to have been made on the last day of the "policy period."

Once in effect, Extended Reporting Periods may not be cancelled.

e. Extended Reporting Periods do not reinstate or increase the Limits of Liability applicable to any "claim" to which this endorsement applies, except to the extent described in paragraph f. of this section 6.

f. If the Supplemental Extended Reporting Period is in effect, we will provide the separate aggregate limit of liability described below, but only for "claims" first received and recorded during the Supplemental Extended Reporting Period.

The separate aggregate limit of liability will be equal to the dollar amount shown in SCHEDULE I in effect at the end of the "policy period" of this endorsement.

Paragraph B. of **SECTION III - LIMITS OF LIABILITY** will be amended accordingly.



# CONFIRMATION OF COVERAGE ELECTION - POLICYHOLDERS OF UMBRELLA OR EXCESS LIABILITY INSURANCE POLICIES - TERRORISM RISK INSURANCE ACT

We have previously notified you that in accordance with the federal Terrorism Risk Insurance Act, as amended (TRIA), we must make terrorism coverage available in the policies we offer.

A "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of TRIA, to be an act of terrorism under TRIA. The criteria contained in TRIA for a "certified act of terrorism" include the following:

1. The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and
2. The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and
3. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The United States Department of the Treasury will reimburse insurers for a portion of such insured losses as indicated in the table below that exceeds the applicable insurer deductible:

| Calendar Year | Federal Share of Terrorism Losses |
|---|---|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 or later | 80% |

However, if aggregate insured losses attributable to "certified acts of terrorism" under TRIA exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States Government has not charged any premium for their participation in covering terrorism losses.

If aggregate insured losses attributable to "certified acts of terrorism" under TRIA exceed $100 billion in a calendar year and we have met, or will meet, our insurer deductible under TRIA we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro-rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with Treasury procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

Our prior notice advised you that the premium for such terrorism coverage would be ██ of the total premium for your Umbrella or Excess Liability Insurance Policy unless an alternative amount is indicated below.

PREMIUM:

$ ██████████ Additional premium for Terrorism coverage under this Umbrella or Excess Liability Insurance Policy

© 2015, The Hartford

**Exhibit 5**
**Page 29 of 39**

As a result of our notification, you have made the following election:

**Accepted Terrorism Coverage:** [X]

**Rejected Terrorism Coverage:** [ ]

This premium charge assumes that you have also purchased underlying insurance coverage for certified acts of terrorism. We may, in accordance with the terms of the policy, examine your books and records to verify that your underlying insurance policy provides this coverage at the limits as shown in the Extension Schedule of Underlying Insurance Policies. If such coverage does not exist at the represented limits we will:

- o In accordance with the Maintenance of Underlying Insurance Condition in your Umbrella or Excess Liability Insurance Policy, be liable for certified acts of terrorism only to the extent that we would have been liable had you complied with this condition.
- o Endorse your policy to provide a self-insured retention in the amount of the required underlying insurance which will apply to coverage for such certified acts of terrorism.
- o Increase the premium quoted for certified acts of terrorism by an amount not to exceed 25% of the total Umbrella or Excess Liability Insurance Policy premium.

If you fail to purchase or maintain underlying insurance with coverage for certified terrorist acts, we will adjust your premium and add the necessary endorsements. These changes will be effective as of inception or the date when you ceased to have the represented underlying insurance, whichever is later.

## TERRORISM EXCLUSION ON YOUR BINDER AND/OR POLICY AND ITS RENEWALS

If the "Rejected Terrorism Coverage" box above is checked, you have previously rejected such coverage by signing a written rejection statement and returning such document to us.

By doing so you have also authorized the attachment of a terrorism exclusion to your Umbrella or Excess Liability Insurance binder and/or policy and to all subsequent renewals. Unless you contact your agent, broker or representative and accept coverage prior to the inception of your renewal policy, the terrorism exclusion(s) will apply to all subsequent renewals.



**Named Insured and Address:** LDX SOLUTIONS
60 CHASTAIN CENTER BLVD NW SUITE 60
KENNESAW, GA 30144

**Endt. No**. _____4_____

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

**A. Disclosure Of Federal Share Of Terrorism Losses**

The United States Department of the Treasury will reimburse insurers for a portion of such insured losses as indicated in the table below that exceeds the applicable insurer deductible:

| Calendar Year | Federal Share of Terrorism Losses |
|---|---|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 or later | 80% |

However, if aggregate insured losses attributable to "certified acts of terrorism" under the federal Terrorism Risk Insurance Act, as amended (TRIA) exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States Government has not charged any premium for their participation in covering terrorism losses.

**B. Cap On Insurer Liability For Terrorism Losses**

A "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism under TRIA. The criteria contained in TRIA for a "certified act of terrorism" include the following:

1. The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2. The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and

3. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to "certified acts of terrorism" under TRIA exceed $100 billion in a calendar year and we have met, or will meet, our insurer deductible under TRIA we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro-rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with Treasury procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, the inapplicability or omission of a terrorism exclusion, or the inclusion of Terrorism coverage, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion, Pollution Exclusion, or War Exclusion.

© 2015, The Hartford
(Includes copyrighted material of the Insurance Services Office, Inc., with its permission.)

**Exhibit 5**
**Page 31 of 39**



**PRODUCER COMPENSATION NOTICE**

You can review and obtain information on The Hartford's producer compensation practices at www.TheHartford.com or at 1-800-592-5717.

Form G-3418-0

**Exhibit 5**
**Page 32 of 39**



# U.S. DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by the United States. **Please read this Notice carefully.**

The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States. OFAC acts under Presidential national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction. OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries. It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific. Collectively, such individuals and companies are called "Specially Designated Nationals and Blocked Persons" or "SDNs". Their assets are blocked and U.S. persons are generally prohibited from dealing with them. This list can be located on OFAC's web site at – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is an SDN, as identified by OFAC, the policy is a blocked contract and all dealings with it must involve OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.



**Named Insured**: LDX SOLUTIONS

**Policy Number**: 52 XS ON1063

**Effective Date**: 06/30/2019          **Expiration Date**: 06/30/2020

**Company Name**: TWIN CITY FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

All other terms and conditions remain unchanged.



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MANDATORY ENDORSEMENT

We have caused this policy to be signed by our President and Secretary.  Where required by law, the Declarations page has been countersigned by our duly authorized representative.

Lisa Levin, Secretary

Douglas Elliot, President

**Exhibit 5**
**Page 35 of 39**

**Named Insured and Address:** LDX SOLUTIONS
60 CHASTAIN CENTER BLVD NW SUITE 60
KENNESAW, GA 30144

**Endt. No.**    9



### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

A. Paragraph a. (1) of the CANCELLATION Policy Condition is replaced by the following:

(1) The "first named insured" shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation, subject to the following:

(a) If only the interest of the "first named insured" is affected, the effective date of cancellation will be either the date we receive notice from the "first named insured" or the date specified in the notice whichever is later. However, upon receiving a written notice of cancellation from the "first named insured," we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the "first named insured."

(b) If by statute, regulation or contract this policy may not be canceled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the "first named insured" and the third party as soon as practicable after receiving the "first named insured's" request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

(i) 10 days from the date of mailing or delivering our notice, or

(ii) The effective date of cancellation stated in the "first named insured's" notice to us.

B. Paragraph e. of the CANCELLATION Policy Condition is replaced by the following:

e. Premium Refund

(1) If this policy is cancelled, we will send the "first named insured" any premium refund due.

(2) If we cancel, the refund will be pro rata, except as provided in (3) below.

(3) If the cancellation results from failure of the "first named insured" to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

(4) If the "first named insured" cancels, the refund may be less than pro rata.

(5) The cancellation will be effective even if we have not made or offered a refund.

C. The following is added to the CANCELLATION Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

1. Cancel or nonrenew this policy; or

2. Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3. Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the "first named insured" and lienholder, if any, at the last mailing address known to us. We will mail or deliver notice at least:

© 2015, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

**Exhibit 5**
**Page 36 of 39**

1. 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for a reason other than nonpayment of premium; or

2. 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

3. 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

D. With respect to a policy that is written to permit an audit, the following is added to the CANCELLATION Policy Condition:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

1. We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

2. If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

**Named Insured and Address:** LDX SOLUTIONS
60 CHASTAIN CENTER BLVD NW SUITE 60
KENNESAW, GA 30144



**Endt. No.** 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

Exclusion **2.m.** of **Section I – Coverages** is replaced by the following:

2. **Exclusions**

   This policy does not apply to:

   m. **Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

      Damages arising out of:

      **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

      **(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PUBLIC OR LIVERY PASSENGER CONVEYANCE EXCLUSION

**A.** The following exclusion is added:

This insurance does not apply to:

**Public Or Livery Passenger Conveyance**

"Bodily injury" or "property damage" arising out of any "auto" while being used as a public or livery conveyance for passengers. This includes, but it not limited to, any period of time an "auto" is being used by an insured who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the "auto".

**B.** **Additional Definitions**

As used in this endorsement:

**1.** "Occupying" means in, upon, getting in, on, out or off.

**2.** "Transportation network platform" means an online-enables application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

© 2017, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)

**Exhibit 5**
**Page 39 of 39**