**THE HONORABLE JOHN C. COUGHENOUR**
**NOTING DATE: OCTOBER 29, 2021**

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| TWIN CITY FIRE INSURANCE COMPANY, | NO.  2:20-cv-01623-JCC |
| Plaintiff, | TWIN CITY FIRE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. |  |
| LUNDBERG, LLC, | NOTE ON MOTION CALENDAR: FRIDAY OCTOBER 29, 2021 |
| Defendant. | *ORAL ARGUMENT REQUESTED* |

Pursuant to Fed. R. Civ. P. 56, plaintiff Twin City Fire Insurance Company ("Twin City") respectfully requests an award of partial summary judgment declaring that it has no obligation to defend Lundberg, LLC ("Lundberg") against an underlying lawsuit filed by Packaging Corporation of America ("PCA").

## I.      INTRODUCTION

In the underlying lawsuit, PCA alleges that flame arresters provided with the "Lundberg Systems" it purchased for its paper mills were defective and had to be replaced at great expense. Twin City is defending Lundberg against the underlying lawsuit but believes – and brings this motion to confirm – that no defense obligation exists.

In short, while PCA contends that Lundberg supplied it with defective products, there are

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 1

GORDON & POLSCER, L.L.C.
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1   no allegations of an accident or "occurrence" in the manufacturing process or at any other time.

2   Or, if the underlying complaint does allege an "occurrence," it is the improper design and

3   engineering of the Lundberg flame arresters, thereby triggering the Engineers Professional

4   Liability Exclusion.

5       Further, the only damage alleged is for lost use of the paper mills while the Lundberg

6   flame arresters were removed and replaced.  Coverage for lost use is barred by the Impaired

7   Property Exclusion.

8       Lundberg points to extrinsic evidence suggesting it may have been necessary to cut (*i.e.*,

9   physically injure) gas piping in order to remove and replace the allegedly defective flame

10  arresters at one or more of the paper mills.  However, *even if* it is proper to consult extrinsic

11  evidence *and* we assume there was damage to piping, there is still no coverage because (a) the

12  piping is part of Lundberg's product and, therefore, subject to the Your Product Exclusion; or,

13  alternatively, (b) the piping is "impaired property" and, therefore, subject to the Impaired

14  Property Exclusion.  Either way, there is no potential for coverage.  Accordingly, Twin City

15  respectfully requests an award of summary judgment.

16                    II.       STATEMENT OF FACTS

17      A.       The Underlying Lawsuit

18      On or about October 31, 2019, PCA commenced the underlying lawsuit in the Superior

19  Court of the State of Washington for the County of King, Case Number 19-2-28930-9 SEA. The

20  First Amended Complaint is the "operative complaint" and asserts claims for product liability –

21  negligence; product liability – strict liability; negligence; breach of implied warranty – fitness for

22  a particular purpose; breach of express warranty; fraud; and unfair and deceptive business

23  practices. Dkt. 1-1.  By summarizing the relevant allegations below, Twin City does not agree or

24  concede that any of those allegations are true.

25      In the simplest terms, PCA alleges that the Lundberg Flame Arresters were sold to PCA

26  as part of several "Lundberg Systems" and "did not work." Dkt. 1-1, ¶ 3.  PCA alleges that "[i]n

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 2

certain of [its mills], PCA hired Lundberg to design, manufacture, assemble, and install the Lundberg Systems" to, among other things, "remove[] highly combustible NCGs [non-condensable gases] from the paper and pulp manufacturing processes and transport[] them to be destroyed in an on-site incinerator." *Id*., ¶s 23, 24.

"As part of the Lundberg System, the Lundberg Defendants[1] designed, marketed, sold, installed, serviced, and maintained Lundberg Flame Arresters" which are "devices installed in a gas piping system, such as a Lundberg System, that are intended to prevent passage of flames through the device in the event that the gas stream is ignited." *Id.*, ¶ 36.

PCA alleges that, as a result of an internal safety review, it became concerned about the Lundberg Flame Arresters and requested information about design and manufacturing specifications, as well as certifications, from the Lundberg Defendants. *Id.*, ¶s 57-62. Eventually, PCA learned that the Lundberg Defendants "had never tested or certified the Lundberg Flame Arresters to applicable U.S. and international standards, including applicable ISO and U.S. Coast Guard protocols and/or standards." *Id*., ¶ 67.

PCA then hired an independent engineering firm to test a Lundberg Flame Arrester and found "that the 6" Test Flame Arrester was completely ineffective." *Id*, ¶s 69-78.

"Luckily, the PCA Mills never experienced an explosion caused by the Lundberg Flame Arresters. Therefore, it was not until consultants for PCA tested the 6" Test Flame Arrester—in January 2018—that PCA had an opportunity to learn that the Lundberg Flame Arresters were possibly defective and unlikely to prevent the propagation of flames." *Id*, ¶ 81.

PCA proceeded to "remove[] all Lundberg Flame Arresters from the PCA Mills." *Id*, ¶ 83.  It alleges that the process of removing and replacing the defective Lundberg Flame Arresters "required the PCA Mills to be intermittently shut down, required new parts to be acquired, and

---

[1] PCA brought claims against Lundberg and A.H. Lundberg Systems Ltd. ("A.H. Lundberg") and refers collectively to those parties as the "Lundberg Defendants." Dkt. 1-1, p. 1.  This motion and coverage action only concern Lundberg because A H. Lundberg does not qualify as an insured.

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 3

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1   required significant labor costs and time." *Id.*, ¶ 85.

2          PCA alleges that it "spent millions of dollars to purchase the Lundberg Systems, to test

3   the Lundberg Flame Arresters that were defective as designed, manufactured, sold, and installed

4   by the Lundberg [Defendants], to purchase replacements for the defective Lundberg Flame

5   Arresters, and to stop manufacturing to complete the labor needed to install the new certified

6   flame arresters in the Lundberg Systems." *Id.*, ¶ 94.  PCA contends that "[a]ll of these costs

7   were brought about by the safety risks posed by the defective Lundberg Systems and concealed

8   by Lundberg," and it states that it "seeks to recover all these costs and fees." *Id.*

9          As stated in the Prayer of the operative complaint, "PCA requests the following relief:

10          A. All damages associated with purchasing and maintaining the

11          defective Lundberg Systems and Lundberg Flame Arresters, the exact

12          amount to be determined at trial;

13          B. All damages associated with testing the defective Lundberg

14          Systems and Lundberg Flame Arresters, the exact amount to be

15          determined at trial;

16          C. All damages associated with replacing the defective Lundberg

17          Flame Arresters, the exact amount to be determined at trial;

18          D. All damages associated with Lundberg's fraudulent statements and

19          fraudulent concealment of the defective nature of the Lundberg Systems

20          and Lundberg Flame Arresters;

21          E. All damages associated with Lundberg's unfair and deceptive

22          business practices, including treble damages pursuant to RCW

23          19.86.090;

24          F. All attorneys' fees, court costs, and other associated expenses; and

25          G. All other damages deemed suitable by this Court.

26   *Id.,* p. 36, Prayer for Relief.

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 4

**B.      Extrinsic Evidence**

As will be discussed further below, Lundberg contends that extrinsic evidence is relevant to the question of whether Twin City owes it a defense.  In particular, Lundberg points to documents suggesting that in one or more of PCA's plants, the replacement of the Lundberg flame arresters involved the cutting of piping that was part of the larger Lundberg Systems but had not been supplied by Lundberg itself.  Twin City is not aware of any allegations, documents or other evidence suggesting that there was any physical damage beyond the Lundberg Systems.

**C.      The Twin City Insurance Policies**

Twin City issued three, consecutive commercial general liability insurance policies ("Primary Policies") to Lundberg from June 30, 2017 to June 30, 2020. Dkt. 1-2, 1-3; 1-4.  Twin City also issued three, consecutive excess liability insurance policies ("Excess Policies") to Lundberg over the same period. Dkt. 1-5, 1-6; 1-7.

The Commercial General Liability Coverage Form for each Primary Policy contains an Insuring Agreement and certain exclusions in Section I – Coverages, and states in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.   Insuring Agreement**

    **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  * * *

    **b.**   This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and….

* * * * *

**2. Exclusions**

This insurance does not apply to:

\* \* \* \* \*

**k.  Damage To Your Products**

"Property damage" to "your product" arising out of it or any part of it.

\* \* \* \* \*

**m. Damage To Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The Primary Policies include the following definitions:

**SECTION V - DEFINITIONS**

\* \* \* \* \*

**11.** "Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

**a.**  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**  You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

\* \* \* \* \*

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 6

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

\* \* \* \* \*

**20.** "Property damage" means:

    **a.**  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \* \* \*

**24.** "Your product":

    **a.**  Means:

        **(1)**  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**  You;

            **(b)**  Others trading under your name; or

            **(c)**  A person or organization whose business or assets you have acquired; and

        **(2)**  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**  Includes

        **(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)**  The providing of or failure to provide warnings or instructions.

    **c.**  Does not include vending machines or other property rented to or located for the use of others but not sold.

Dkt. 1-2, pp. 11, 12-15, 11-24.[2]  Each Primary Policy also includes an endorsement entitled,

"Exclusion – Engineers, Architects or Surveyors Professional Liability" that states:

    This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

---

[2] Because each Primary Policy contains this policy language, all references are to Dkt. 1-2.

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 7

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

Professional services include:

**1.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

**2.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offence which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

*Id.*, p. 57.

Each Excess Policy provides in relevant part:

**SECTION I – COVERAGES**

**1. Insuring Agreement**

    **a.** We will pay on behalf of the insured those sums that the insured shall become legally obligated to pay as damages which are:

        **(1)** Because of any injury or damage for which insurance is afforded by the "controlling underlying insurance policy"; and

        **(2)** Not excluded or modified by the Exclusions, Conditions, Definitions, or any other term of this policy;

    But only to the extent that such damages are in excess of the total limits of "underlying insurance" that have been reduced or exhausted solely by payment of that portion of judgments or settlements to which this insurance applies.

    **b.** We may at our discretion investigate any "occurrence" or "offense" in a. above, and settle any "claim" or "suit" that may result.

    But:

        **(1)** We shall not be obligated to assume charge of, participate in, or pay for the defense of any insured, or investigation or settlement of any "claim" or "suit".

\* \* \* \* \*

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 8

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1    Dkt. 1-5, p. 13.[3]

2    ### III.    ARGUMENT & AUTHORITY

3    As shown further below, the language of the Primary Policies and Excess Policies

4    unambiguously precludes any coverage for Lundberg against the claims made in the operative

5    complaint.  Accordingly, Twin City respectfully requests an award of summary judgment in its

6    favor confirming that it is not obligated to defend Lundberg.

7    ### A.    Summary Judgment Standard

8    An award of summary judgment is appropriate "if the movant shows that there is no

9    genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

10   law." Fed. R. Civ. P. 56(a).  Motions for summary judgment are particularly appropriate with

11   respect to legal issues that turn on the interpretation of an insurance policy, as "[i]nterpretation of

12   insurance policies is a question of law" in Washington. *Overton v. Consol. Ins. Co.*, 145 Wn.2d

13   417, 424, 38 P.3d 322 (2002).

14   ### B.    Duty to Defend Standard

15   "The duty to defend arises when a complaint against the insured, construed liberally,

16   alleges facts which could, if proven, impose liability upon the insured within the policy's

17   coverage." *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002).

18   An insurer is relieved of its duty to defend where the claim in the complaint is "clearly not

19   covered by the policy." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53, 164 P.3d 454

20   (2007). The existence of a duty to defend is a question of law for the court that is generally based

21   solely on the allegations of the underlying complaint and the language of the insurance policy.

22   *United Servs. Auto. Ass'n v. Speed*, 179 Wn. App. 184, 194, 317 P.3d 532 (2014).  There is an

23   exception, and extrinsic evidence may be considered (but only to confirm, and not to disprove,

24   coverage) where "(a) the allegations are in conflict with facts known to or readily ascertainable

25

26   _____

[3] Because each Excess Policy contains this policy language, all references are to Dkt. 1-5.

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 9

by the insurer or (b) the allegations of the complaint are ambiguous or inadequate." *Truck Ins.*

*Exch. v. VanPort Homes*, 147 Wn.2d at 761 (internal citations and quotations omitted).

### C.    Interpretation of Policy Provisions

The overarching policy interpretation rules in Washington require the policy to be

considered as a whole, and where policy language is clear and unambiguous, the court must

enforce it as written; a court may not modify policy terms or create ambiguity where none exists.

*Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005).

If a contract term is undefined, courts "look to the 'plain, ordinary, and popular meaning'

afforded in similar circumstances," *City of Spokane v. United Nat. Ins. Co.*, 190 F.Supp.2d 1209,

1217 (E.D. Wash. 2002) (quoting *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 576, 964

P2d 1173 (1998)), and give policies a "practical and reasonable interpretation," not "a strained or

forced construction that would lead to absurd results." *McMahan & Baker, Inc. v. Cont'l Cas.*,

68 Wn. App. 573, 578, 843 P.2d 1133 (1993).

### D.    Coverage is barred because the operative complaint either does not allege an "occurrence" or, instead, alleges an engineering and design error subject to the Engineers Professional Liability Exclusion.

#### 1.    The "occurrence" requirement.

Pursuant to the Insuring Agreement of each Primary Policy, coverage for "bodily injury"

or "property damage"[4] only potentially applies if the damage is "caused by an 'occurrence'." *Id.*

The term "occurrence" is defined as "an accident, including continuous or repeated exposure to

substantially the same general harmful conditions." Dkt. 1-2, p. 30. An "accident" has been

defined by Washington case law according to its "popular and ordinary meaning" as an "unusual,

unexpected and unforeseen event." *W. Nat'l Assurance Co. v. Hecker*, 43 Wn. App. 816, 822,

719 P.3d 954 (1986). "An accident is never present when a deliberate act is performed, unless

---

[4] The Primary Policies also provide coverage for "personal and advertising injury," but there is no allegation or evidence of this type of injury.  Likewise, there is no evidence or allegation of any "bodily injury."  Accordingly, the remainder of this motion focuses exclusively on the potential coverage for "property damage."

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 10

1  some additional, unexpected, independent and unforeseen happening occurs which produces or

2  brings about the result of injury or death." *Unigard Mut. Ins. Co., v. Spokane Sch. Dist. 81*, 20

3  Wn. App. 261, 263-64, 579 P.2d 1015 (1978).

4        Here, there is no allegation of any "accidental" conduct by Lundberg. PCA alleges that

5  "[t]he Lundberg Defendants have placed hundreds, if not thousands, of Lundberg Flame

6  Arresters into commerce and installed and maintained them at pulp and paper mills . . . including

7  at PCA's mills." Dkt. 1-1, ¶2.  However, the operative complaint contains no allegation that

8  Lundberg's conduct was accidental.

9        There is no allegation of any "unusual, unexpected and unforeseen event" per *Hecker*.

10  Nor does PCA allege "some additional, unexpected, independent and unforeseen happening," per

11  *Spokane Sch. Dist. 81*.  Accordingly, there is no allegation of an "occurrence" and no possibility

12  of coverage.

13        While the underlying complaint alleges that the flame arresters supplied by Lundberg do

14  not work properly, it is well established that "[p]ure workmanship defects are not considered

15  accidents or 'occurrences,' since CGL policies are not meant to be performance bonds or product

16  liability insurance," *Indian Harbor Ins. Co. v. Transform LLC*, 2010 U.S. Dist. LEXIS 94080, at

17  *14 (W.D. Wash. Sep. 8, 2010) *citing Mutual of Enumclaw Ins. Co. v. Patrick Archer Const.,*

18  *Inc.*, 123 Wn. App. 728, 733, 97 P.3d 751 (2004).

19        Coverage for defective products *may* exist where a product is "mismanufactured,"

20  leading to damage to some other property. *See Yakima Cement Prods. Co. v. Great Am. Ins. Co.*,

21  93 Wn.2d 210, 211, 215, 608 P.2d 254 (1980) (recognizing coverage for "the deliberate

22  manufacture of a product which inadvertently is mismanufactured, and thereafter results in

23  property damage").  Here, in contrast, there is no allegation of mistake or inadvertence in the

24  manufacture of the flame arresters.  Accordingly, *Yakima Cement Prods. Co.* does not apply, and

25  there is no allegation of an "occurrence."

26  ///

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 11

1

2.  The Engineers Professional Liability Exclusion.

2       Alternatively, if the Court determines that there is an allegation of an accident or

3  "occurrence," it can only be that Lundberg, "an expert engineering and design firm," Dkt. 1-1, ¶

4  61, improperly designed the flame arresters. Specifically:

5
        "Aber Shock's inspection showed that the 6" Test Flame Arrester had
6        more internal space than anticipated – *i.e.,* an unanticipated gap between
         the external housing and the internal cylindrical device. Aber Shock's
7        inspection also found that there was a larger than anticipated gap around
         the 6" Test Flame Arrester's internal cylindrical device that could allow
8        gases and a flame to bypass the internal cylindrical device that was in
         place to provide the heat sink. The internal cylindrical device also had
9        larger openings that competitors' designs."

10  *Id.*, ¶ 74. Rather than slowing the flame down, it is alleged that this design "accelerated

11  propagation of the flame through the system, which is directly contrary to the intended purpose

12  of the flame arrester." *Id.*, ¶ 82.

13       PCA alleges in its First Cause of Action (and then incorporates those allegations into

14  every other cause of action) that PCA "was harmed by the negligence of the Lundberg

15  Defendants in that the Lundberg Systems and Lundberg Flame Arresters were not reasonably

16  safe as designed." *Id.*, ¶ 99. PCA further alleges:

17
        "At the time of manufacture, an alternative design was practical,
18       feasible, and already in existence…. Indeed, best practices for designing
         and manufacturing NCG evacuation systems (like the Lundberg System)
19       and flame arresters (like the Lundberg Flame Arresters) demonstrate that
         the Lundberg Defendants' proprietary design is unreasonably unsafe and
20       defective."

21  *Id.*, ¶ 102. PCA does not single out specific flame arresters that failed testing and may have been

22  mismanufactured. Rather, PCA alleges that "each and every Lundberg Flame Arrester failed

23  each test." *Id.*, ¶ 91 (emphasis in original).

24       Thus, PCA alleges a design flaw. To the extent that improperly designing a flame

25

26

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 12

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

arrester can be considered an "occurrence,"[5] the Engineers Professional Liability Exclusion bars

all coverage.  That exclusion applies to all property damage "arising out of the rendering of or

failure to render any professional services by you or any engineer … who is either employed by

you or performing work on your behalf in such capacity." Dkt. 1-2, p. 57. "Professional services

include:

> **1.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>
> **2.**  Supervisory, inspection, architectural or engineering activities."

*Id.*

PCA's complaint incorporates paragraph 24 into every claim for relief, and that

paragraph specifically identifies the Lundberg System as an "engineered system." Dkt. 1-1, ¶ 24

("…since the 1950s, the Lundberg Defendants have been the industry leader for designing and

installing engineered systems, including Lundberg Systems, for use in paper and pulp mills.");

*see also* Dkt. 1-1, ¶ 27 ("Lundberg recognizes that it is an industry leader in providing

engineered systems for the paper and pulp industry.").

Consistent with these allegations, PCA's complaint repeatedly emphasizes Lundberg's

status as an "engineering" firm. *See, e.g.*, Dkt. 1-1, ¶ 9 ("Lundberg is a leading engineering and

equipment supplier in the pulp and paper industry…"); ¶ 20 ("The Lundberg Defendants

advertise and hold themselves out as experts in engineering…"); ¶ 61 ("PCA knew and had

worked for years with Lundberg's engineers and experts…"); ¶ 134 ("The Lundberg Defendants

are expert engineering firms…"); ¶ 152 ("PCA was relying on the Lundberg Defendants'

engineering expertise…"); ¶ 159 ("Lundberg knew that PCA was relying on the Lundberg

Defendants' status as an expert engineering firm…"); ¶ 185 ("Lundberg knew that PCA was

relying on the Lundberg Defendants' engineering expertise…"); and ¶ 192 ("Lundberg held itself

---

[5] It should not be, as "CGL policies are not meant to be performance bonds or product liability insurance." *Indian Harbor Ins. Co. v. Transform LLC*, 2010 U.S. Dist. LEXIS 94080, at *14.

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 13

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

out to be an expert engineering firm with a specific emphasis in the paper and pulp mill industry.").

All of PCA's claims are based on an allegation that Lundberg, an "expert engineering firm," improperly designed and engineered the Lundberg flame arresters.  Accordingly, the Engineers Professional Liability Exclusion bars all coverage, and Twin City respectfully requests an award of summary judgment.

**E.     All coverage is barred by the Impaired Property and Your Product Exclusions.**

The underlying complaint alleges loss of use of PCA's mills during the removal and replacement of the Lundberg Flame Arresters but, as shown immediately below, coverage for the lost use of the mills is barred by the Impaired Property Exclusion.  In response, Lundberg points to discovery exchanged in the underlying lawsuit to suggest that there was also physical injury to some gas piping during the removal process.  However, it is neither proper nor necessary to consider this extrinsic evidence because coverage is barred for any physical injury to the piping by the Your Product Exclusion or, alternatively, the Impaired Property Exclusion.

1.   Coverage is barred for the alleged lost use of the PCA mills.

The Impaired Property Exclusion bars coverage for all damages associated with the lost use of PCA's mills during the removal and replacement of the flame arresters.  The Exclusion bars coverage for:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 14

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1   Dkt. 1-2, p. 15.[6]

2        As can be seen, the exclusion applies to damage to two types of property: "impaired

3   property" and "property that has not been physically injured." PCA's mills qualify as "property

4   that has not been physically injured" because there is no allegation, nor any extrinsic evidence,

5   suggesting physical injury to the mills. Accordingly, there is no need to consider the definition

6   of "impaired property" at this stage, and coverage is barred if the lost use arose out of a "defect,

7   deficiency, inadequacy or dangerous condition" in the flame arresters. Because that is exactly

8   what is alleged, *see, e.g.*, Dkt. 1-1, ¶s 84 and 85, all coverage is barred.

9                    2.   Coverage is barred for any physical injury to the gas piping.

10        Lundberg contends that, even though the underlying complaint lacks any allegation of

11   physical injury, extrinsic evidence reveals that physical damage (*i.e.*, the cutting of gas piping)

12   occurred during the removal and replacement of the Lundberg flame arresters. However, the gas

13   piping qualifies as Lundberg's product and, therefore, coverage is barred for such damage under

14   the Your Product Exclusion. Alternatively, if the gas piping does not qualify as Lundberg's

15   product, then it qualifies as "impaired property," and the Impaired Property Exclusion bars

16   coverage for potential piping damage. Either way, coverage is barred and there is no need to

17   consider the extrinsic evidence.[7]

18                    *a.*   *Coverage for any damage to the gas piping is barred by the Your Product*
19                            *Exclusion.*

20        The Your Product Exclusion bars coverage for "'[p]roperty damage' to 'your product'

21   arising out of it or any part of it." Dkt. 1-2, p. 15, Exclusion k. "[Y]our product" is defined as

22

23   ———————————————
     [6] The exclusion includes a limited exception that has no relevance here, so it has been omitted.
24   [7] Extrinsic evidence may be considered when evaluating the duty to defend if "(a) the allegations are in
     conflict with facts known to or readily ascertainable by the insurer or (b) the allegations of the complaint
25   are ambiguous or inadequate." *Truck Ins. Exch. v. VanPort Homes*, 147 Wn.2d at 761. Here, the
     allegations are adequate, unambiguous, and uncontradicted: there is no allegation or suggestion of any
26   physical damage, and no suggestion of any possibility of physical damage beyond the insured's own
     product. The extrinsic evidence that has been referenced by Lundberg is not in conflict.

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 15

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

"[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by" Lundberg, and includes "materials, parts or equipment furnished in connection with such goods or products." Dkt. 1-2, p. 31.  Washington courts have interpreted this broad definition to mean "goods which are processed or assembled in the ordinary channels of commerce" and those "in which the insured trades or deals." *Mut. of Enumclaw v. Archer Constr.*, 123 Wn. App. 728, 733, 97 P.3d 751 (2004); *Olympic S.S. Co., Inc. v. Centennial Ins. Co.*, 117 Wn.2d 37, 49-50, 811 P.2d 673 (1991).

PCA's complaint is unambiguous:  the Lundberg Flame Arresters were part of larger "Lundberg Systems" designed to "remove[] highly combustible NCGs [non-condensable gases] from the paper and pulp manufacturing processes and transport[] them to be destroyed in an on-site incinerator." Dkt. 1-1, ¶s 23, 24.  Flame arresters are "devices installed in a gas piping system" and, in this case, were sold "[a]s part of the Lundberg System." *Id.*, ¶ 36; *see also* ¶ 40 ("Lundberg Flame Arresters were incorporated directly into the Lundberg Systems…").  "The Lundberg Flame Arresters' external housing is installed directly into the Lundberg System piping." *Id.*, ¶ 51.  Thus, the gas piping that Lundberg contends may have been damaged is part of the Lundberg System.

Lundberg designed and sold entire systems to PCA consisting of gas piping, flame arresters and many other components.  The systems are Lundberg's product, and damage to any component of the system is damage to Lundberg's product.  Accordingly, and regardless of who originally supplied the gas piping, the gas piping qualifies as "your product," and the Your Product Exclusion bars all coverage.

> **b.**  *Alternatively, the Impaired Property Exclusion bars all coverage for any physical damage to the gas piping.*

Alternatively, should the court determine that the gas piping does not qualify as "your product," then it qualifies as "impaired property," and coverage is barred by the Impaired Property Exclusion.

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 16

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

The policy defines "impaired property" to mean:

> "tangible property, _other than 'your product'_ or 'your work' that cannot be used or is less useful because:
>
> **a.** It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> **b.** You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by the repair, replacement, adjustment or removal of 'your product' or 'your work', or your fulfilling the terms of the contract or agreement."

Dkt. 1-2 p. 28 (emphasis added).  As the emphasized language shows, the gas piping cannot qualify as "impaired property" if it qualifies as "your product."  As set forth above, the gas piping is part of the larger Lundberg Systems and, therefore, qualifies as Lundberg's product.

However, should the court disagree, then the piping qualifies as "impaired property," and the Impaired Property Exclusion applies.  Consistent with the plain language of the "impaired property" definition, the gas piping "cannot be used or is less useful" because it "incorporates" the Lundberg Flame Arresters that are "thought to be defective, deficient, inadequate or dangerous."  The PCA Mills were "intermittently shut down" while the flame arresters were "removed from the PCA Mills" and "replaced." Dkt. 1-1, ¶ 84 – 86.  However, there is no suggestion – in the underlying allegations _or_ in extrinsic evidence – that the gas piping was also defective or had to be removed.  The only reasonable conclusion is that the gas piping was restored to use, or could have been, after the flame arresters were replaced and the paper mills restarted.  Therefore, the gas piping qualifies as "impaired property."

The Impaired Property Exclusion bars coverage for "'[p]roperty damage' to 'impaired property' … arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in 'your product'." Dkt. 1-2, p. 15.  Any damage to the gas piping during the removal and replacement of the allegedly defective flame arresters fits squarely within the terms of the exclusion.

Lundberg will very likely argue that the Impaired Property Exclusion never applies when there is physical damage, such as the cutting of pipes.  Lundberg has pointed Twin City to two

1   decisions from this Court to support that proposition:  *Indian Harbor Ins. Co. v. Transform, LLC*,

2   No. C09-1120 RSM, 2010 U.S. Dist. LEXIS 94080, 2010 WL 3584412 (W.D. Wash. Sept. 8

3   2010) and *The Phoenix Ins. Co. v. Diamond Plastics Corp.*, No. C19-1983-JCC, 2020 U.S. Dist.

4   LEXIS 188222, 2020 WL 5993909 (W.D. Wash. Oct. 9, 2020).

5        While there is no language in the Impaired Property Exclusion that suggests it is

6   restricted to "lost use" type "property damages," the court in *Indian Harbor* did write: "Impaired

7   property exclusions do not apply when there is physical injury to tangible property." 2010 U.S.

8   Dist. LEXIS 94080, *21.  To support this proposition, the decision cites to *Hayden v. Mut. of

9   Enumclaw Ins. Co.*, 141 Wn.2d 55 (2000), and *Truck Ins. Exch. v. VanPort Homes*, 147 Wn.2d

10  751 (2002).

11       The exclusion in *Hayden*, however, was <u>not</u> an "impaired property exclusion."  It was a

12  "loss of use exclusion" and was explicitly limited to loss of use damages. 141 Wn.2d at 60.

13       In *Truck v. VanPort Homes*, the Supreme Court found it "unnecessary to fully analyze the

14  impaired property exclusion" and cited *Hayden* for the proposition that "the exclusion may apply

15  to claimed damages that do not result in physical damage." 147 Wn.2d at 762.  The Court did

16  not:  (a) discuss the language of the exclusion before it; (b) give any apparent consideration to

17  the language of the exclusion in *Hayden*; or (c) hold that the Impaired Property Exclusion cannot

18  apply to property that has been physically injured.

19       Here the Impaired Property Exclusion explicitly applies to two types of property: (1)

20  "impaired property"; and (2) "property that has not been physically injured." Dkt. 1-2, p. 15.  It

21  must be asked:  If the exclusion only applies to property that has not been physically injured,

22  then why is "impaired property" included?  Why is a detailed definition provided?

23       Per its plain language, the Impaired Property Exclusion is not limited to lost use-type

24  damages but applies <u>both</u> to "impaired property" and "property that has not been physically

25  injured."  Because the gas piping qualifies as "impaired property," the Impaired Property

26  Exclusion applies even if there is physical injury to the piping.

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 18

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1      Lundberg also points to *Diamond Plastics*, but that decision did not hold, or state, that the

2   Impaired Property Exclusion cannot apply where there is physical injury.  Rather, the court

3   found that "rip and tear" damages to other property during the removal of the insured's work

4   were outside of the exclusion because they were "analogous to [the damage at issue] in *DeWitt*,"

5   wherein the Ninth Circuit found that "the *destroyed* work of other contractors was not merely

6   impaired."  2020 U.S. Dist. LEXIS 188222, *8 (emphasis added).

7      *Diamond Plastics* and *DeWitt Const. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127,

8   1134 (9th Cir. 2002), highlight the distinction between (1) property that is physically injured but

9   can be restored to use when the insured's work is replaced and (2) property that is destroyed or

10  otherwise cannot be restored to use.  The first category of property is "impaired" and subject to

11  the exclusion.  The second category of property is more than "merely impaired."  It cannot be

12  restored to use and, therefore, is not subject to the exclusion.

13     Here, there is no allegation of *any* injury to the gas piping.  While extrinsic evidence

14  suggests the possibility that some piping may have been cut during the removal and replacement

15  of the allegedly defective flame arresters, there is no allegation or evidence suggesting that any

16  of this piping was destroyed or otherwise could not be re-used.  Accordingly, if coverage for

17  potential damage to the piping is not barred by the Your Product Exclusion, then coverage is

18  barred by the Impaired Property Exclusion.  Either way, there is no potential coverage, and Twin

19  City respectfully requests an award of summary judgment in its favor.

20     **F.      The Excess Policies do not afford coverage.**

21     The Excess Policies do not contain a duty to defend. Dkt. 1-5, p. 13. The Excess Policies

22  promised to pay on behalf of the insured those sums that the insured becomes legally obligated to

23  pay as damages because of any injury or damage for which insurance is afforded by the

24  "controlling underlying insurance policy" and which is  not otherwise excluded or limited by the

25  exclusions or any other term of the Excess Policies. Dkt. 1-5, p. 13. Because the Primary Policies

26  do not provide coverage for PCA's claims, nor do the Excess Policies.

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 19

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## IV.   CONCLUSION

For the reasons set forth above, Twin City respectfully requests an award of summary judgment confirming that it has no obligation to defend Lundberg against PCA's claims.

DATED this 7ᵗʰ Day of October, 2021.

Respectfully submitted,

GORDON & POLSCER, LLC

By: *s/ Brian C. Hickman*
Brian C. Hickman, WSBA No. 50089
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
Telephone Number: (503) 242-2922
Email: bhickman@gordon-poslcer.com

*Attorneys for Plaintiff Twin City Fire Insurance Company*

TWIN CITY FIRE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 20