THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TWIN CITY FIRE INSURANCE CO.,

          Plaintiff,

   v.

LUNDBERG, LLC,

          Defendant.

Case No.  2:20-cv-01623-JCC

**DEFENDANT LUNDBERG LLC'S RESPONSE TO PLAINTIFF TWIN CITY FIRE INSURANCE CO.'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. 24]**

251608.0079/8760238.1
DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(2:20-cv-01623-JCC) -

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................1

FACTUAL CLARIFICATIONS ...................................................................3

    I.       PCA's Complaint is Replete with Allegations That Lundberg Sold PCA Mismanufactured Flame Arresters. .........................................3

    II.     PCA's Complaint is Ambiguous and Inadequate With Respect to Damages; PCA's Invoices Clarify That PCA Seeks to Recover Costs Associated With Damage to Non-Lundberg Products (Like Piping) Sustained During the "Rip and Tear" Process. ..................4

    III.    There is No Evidence Suggesting That PCA's Damaged Piping Could be or Was Restored to Use; The Only Available Evidence Suggests the Opposite. ...........................................................7

    IV.    Knowing That Insurers Must Consider Extrinsic Evidence to Assess Their Duty to Defend, Lundberg Provides Twin City With Discovery Served in the Underlying Action, Including the Invoices That Show Damage to Non-Lundberg Piping. ..............................8

ARGUMENT .....................................................................................9

    I.       Applicable Legal Standards Support the Denial of Twin City's Motion. .......................................................................................9

    II.     PCA Alleges An "Occurrence" by Alleging That Lundberg Mismanufactured Certain Flame Arresters. ....................................10

    III.    Twin City Cannot Meet its Burden of Establishing That Any Exclusions Wholly Bar Coverage for the PCA Action; Thus, Twin City Has a Continued Duty to Defend. ........................................12

        A.    The Engineers Liability Exclusion Does Not Apply Because the PCA Action Does Not Solely Arise Out of Engineering Activities. .........13

        B.    The Impaired Property Exclusion Does Not Apply Because PCA's Damaged Piping is Not "Impaired Property." ..............................14

        C.    The "Your Product" Exclusion Does Not Apply Because the Damaged Piping was Not Lundberg's Product. ...........................17

CONCLUSION ...................................................................................19

251608.0079/8760238.1

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(2:20-cv-01623-JCC) - i

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

*Aetna Cas. & Sur. Co. v. M & S Indus., Inc.*,
   64 Wn. App. 916, 827 P.2d 321 (1992) ...................................................................18

6

*Dewitt Const. Inc. v. Charter Oak Fire Ins.*,
   307 F.3d 1127 (9th Cir. 2002) ...............................................................................12

7

8

*Hayden* v. *Mutual of Enumclaw Ins. Co.*,
   141 Wn. 2d 55, 1 P.3d 1167 (2000) ..........................................................10, 12, 13

9

*Kent Farms, Inc. v. Zurich Ins.*,
   93 Wn. App. 414, 969 P.2d 109 (1998), *aff'd*, 140 Wn.2d 396, 998 P.2d 292
   (2000) .............................................................................................................12, 16, 17

10

11

*McGreevy v. Oregon Mut. Ins. Co.*,
   74 Wn. App. 858, 876 P.2d 463 (1994), *aff'd*, 128 Wn. 2d 26, 904 P.2d 731
   (1995) .......................................................................................................................13

12

13

*Mid-Continent Cas. Co. v. Titan Const. Corp.*,
   281 F. App'x 766 (9th Cir. 2008) .....................................................................11, 12

14

15

*Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*,
   164 Wn. 2d 411, 191 P.3d 866 (2008) ...............................................................12, 13

16

17

*Phoenix Insurance v. Diamond Plastics Corp.*,
   No. 19-cv-1983-JCC, 2020 WL 5993909 (W.D. Wash. Oct. 9, 2020) ........................ *passim*

18

*Riverfront Landing Phase II Owners' Ass'n v. Assurance Co. of Am.*,
   No. 08-cv-0656, 2009 WL 1952002 (W.D. Wash. July 6, 2009) ...........................18

19

20

*T-Mobile USA Inc. v. Selective Ins. Co. of Am.*,
   No. 15-cv-1739, 2021 WL 1222666 (W.D. Wash. Apr. 1, 2021) ......................1, 13

21

22

*Terminal Freezers Inc. v. U.S. Fire Ins.*,
   345 F. App'x 305 (9th Cir. 2009) ...........................................................................15

23

*Travelers Prop. Cas. Co. of Am. v. Nw. Pipe Co.*,
   No. 17-cv-5098, 2017 WL 2687652 (W.D. Wash. June 22, 2017) ..............14, 18, 19

24

25

*Truck Ins. Exchange v. Vanport Homes, Inc.*,
   147 Wn. 2d 751, 58 P.3d 276 (2002) .................................................................10, 13

26

27

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

*Webb v. USAA Cas. Ins.*,
    12 Wn. App. 2d 433, 445–46, 457 P.3d 1258 (2020) ....................................................2, 12, 13

*Weyerhaeuser Co. v. Ins. Co. of State of Pennsylvania*,
    No. 08-cv-1037, 2009 WL 2461163 (W.D. Wash. Aug. 10, 2009).........................................12

*Woo v. Fireman's Fund Insurance Co.*,
    161 Wn.2d 43, 164 P.3d 454 (2007) ............................................................................9, 10, 14

*Yakima Cement Products Co. v. Great Am. Ins. Co.*,
    93 Wn. 2d 210, 608 P.2d 254 (1980) ........................................................................10, 11, 12

**Other Authorities**

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1985) ........................................................15

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1    Defendant Lundberg, LLC ("Lundberg") submits this Response to Plaintiff Twin City Fire

2  Insurance Co.'s ("Twin City") Motion for Partial Summary Judgment (the "Motion") [Dkt. 24].

3                              **PRELIMINARY STATEMENT**

4    Twin City's Motion on its duty to defend fails because it is built upon Twin City's *selective*

5  reading of the underlying complaint when Washington law requires it to consider the *entire*

6  underlying complaint *and* extrinsic evidence.

7    Indeed, under Washington law—as articulated by Twin City in its Motion—an insurer has

8  a duty to defend unless *all* the underlying allegations are "clearly not covered by the policy." And,

9  if the underlying allegations are ambiguous, then the insurer must consider whether extrinsic

10 evidence triggers its duty to defend.

11   Here, the underlying allegations are ambiguous and inadequate, particularly with respect

12 to the damages PCA seeks. For example, PCA seeks "[a]ll damages associated with replacing the

13 defective Lundberg flame arresters," but then does not itemize or further describe those damages.

14 Therefore, under Washington law, Twin City must consider not only the allegations in PCA's

15 complaint, but relevant extrinsic evidence, which here is discovery produced in the PCA Action

16 that Lundberg provided Twin City this past spring.

17   Instead of moving upon that entire body of information, Twin City puts before the Court a

18 cherry-picked assortment of underlying allegations that, conveniently, may trigger exclusions. For

19 example, Twin City lists the several instances where PCA uses the word "engineer" in its

20 complaint to suggest that the Engineers Liability exclusion applies. But PCA's complaint is not

21 only about engineering—PCA also alleges, extensively, that its damages were caused by

22 mismanufacturing. Because mismanufacturing allegations do not trigger the Engineers Liability

23 exclusion, Twin City ignores them in its motion. That is not how the duty to defend framework

24 operates in Washington.

25   Rather, under Washington law, an insurer has a duty to defend if "*any* allegation . . . may

26 result in a covered liability, even if other claims in the complaint are clearly outside the scope of

27

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(2:20-cv-01623-JCC) - 1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

coverage." *Webb v. USAA Cas. Ins.*, 12 Wn. App. 2d 433, 445–46, 457 P.3d 1258 (2020) (emphasis added).  Meaning, Twin City should be searching for coverage, not searching for ways to trigger exclusions.

If Twin City were searching for coverage, it would see that PCA's allegations and the available extrinsic evidence nullify its four coverage defenses and provide for a duty to defend.

As to Twin City's *first defense*—that there is no "occurrence" under the policy—Twin City expressly acknowledges that under Washington law there is an "occurrence" where there are allegations of mismanufacturing.  Twin City then asserts, strikingly, that PCA does not allege that its damages were caused by mismanufacturing.  That is incorrect.  A quick search of PCA's complaint shows that a major component of PCA's complaint are its allegations that Lundberg sold it mismanufactured flame arresters.  This coverage defense therefore fails.

Twin City's *second defense*—that the Engineer's Liability exclusion applies—fails because that exclusion bars coverage for claims arising out of professional engineering services, and many of PCA's allegations have nothing to do with such services (*e.g.*, its allegations regarding mismanufacturing issues).  It is irrelevant that the Engineer's Liability exclusion may apply to *some* of PCA's allegations because, under Washington law, insurers have a duty to defend if "*any* allegation" may result in a covered liability.  Here the mismanufacturing allegations may result in a covered liability, and so Twin City has a continued duty to defend.

Twin City's *third defense*—that the Impaired Property exclusion applies—fails because PCA alleges damage to property that is *not* "impaired property."  Indeed, invoices show that PCA seeks to recover costs associated with "rip and tear" damage sustained to piping supplied, designed, manufactured, procured, and installed by a third-party.  Cases like *Phoenix Insurance v. Diamond Plastics Corp.*, No. 19-cv-1983-JCC, 2020 WL 5993909 (W.D. Wash. Oct. 9, 2020) make it clear that such third-party property is not "impaired property" and so the exclusion does not apply.

251608.0079/8760238.1
DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(2:20-cv-01623-JCC) - 2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Twin City's last defense, its *fourth defense*—that the Your Product exclusion applies—fails because, as noted above, PCA seeks to recover costs associated with "rip and tear" damage sustained to piping supplied, designed, procured, and installed by a third-party—*i.e.*, piping that was *not* Lundberg's "product" for purposes of triggering the exclusion. Thus, this exclusion also does not apply.

In sum, Twin City's four coverage defenses fail upon consideration of PCA's allegations and the relevant and admissible extrinsic evidence. It follows that Twin City has a continued duty to defend Lundberg against the PCA Action and that Twin City's Motion must fail.

## FACTUAL CLARIFICATIONS

### I.   PCA's Complaint is Replete with Allegations That Lundberg Sold PCA Mismanufactured Flame Arresters.

PCA's complaint is extensive. *See generally* First Am. Compl. in PCA Action [Dkt. 1-1]. It includes 206 paragraphs of allegations and, with exhibits, spans 113 pages. *See id.* PCA's strategy seems to have been "throw everything at the wall and see what sticks." *See id.*

In its Motion, Twin City conveniently focuses on PCA's engineering-related allegations—convenient for Twin City given the policy's Engineering Liability exclusion—and asserts that "there is no allegation of mistake or inadvertence in the *manufacture* of the flame arresters." *See* Pl.'s Mot. for Summ. J. at 11 [Dkt. 24] (emphasis added). Twin City's assertion is wrong. A major component of PCA's theory, and its complaint, are its allegations that Lundberg's flame arresters were mismanufactured. *Id.* ¶¶ 17, 139. Those allegations include the following:

- "[N]one of the Lundberg Flame Arresters worked as designed, **manufactured**, and/or marketed by the Lundberg Defendants . . . ." *Id.* ¶ 5 (emphasis added).

- "[I]nternal components of the Lundberg Flame Arresters **did not appear to be manufactured to appropriate tolerances** . . . ." *Id.* ¶ 60 (emphasis added).

- "[T]he 6" Test Flame Arrester failed to . . . serve the basic purpose for which it was designed, **manufactured**, purchased, and installed." *Id.* ¶ 82 (emphasis added).

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

- "PCA spent millions [to] test the Lundberg Flame Arresters that were defective as designed, **manufactured**, sold, and installed . . . ." *Id.* ¶ 94 (emphasis added).

- "[The] Lundberg Flame Arresters are defectively designed, **defectively manufactured**, unsafe, and unfit for use." *Id.* ¶ 97 (emphasis added).

- "[T]he Lundberg Defendants breached their duty to PCA by designing, **manufacturing**, assembling, and installing defective Lundberg Systems with defective Lundberg Flame Arresters." *Id.* ¶ 139 (emphasis added).[1]

Further suggesting that its mismanufacturing allegations are a critical component of its case, PCA has since requested through discovery that Lundberg "[i]dentify all person(s) who participated in any manner in the **manufacture** of the Lundberg Flame Arresters." *See* Gabel Decl. at Ex. A at 5 (response to Interrogatory No. 3) (Oct. 19, 2021) [Dkt. 28] (emphasis added). PCA has also requested that Lundberg "[p]roduce . . . [a]ll design and **manufacturing specifications**, drawings, engineering, materials, and information for the Lundberg Flame Arresters." *See id.* at 11 (response to Request for Production No. 2) (emphasis added). Against this backdrop, it is disingenuous and simply incorrect for Twin City to suggest PCA makes "no allegation of mistake or inadvertence in the manufacture of the flame arresters."

## II. PCA's Complaint is Ambiguous and Inadequate With Respect to Damages; PCA's Invoices Clarify That PCA Seeks to Recover Costs Associated With Damage to Non-Lundberg Products (Like Piping) Sustained During the "Rip and Tear" Process.

In line with its inexact pleading approach, PCA does not articulate with precision its alleged damages but instead simply alleges that it is entitled to five broad and ambiguous categories of relief. *See* First Am. Compl. in PCA Action at ¶ 148, 36:23-37:02 [Dkt. 1-1]. One such category is "[a]ll damages associated with replacing the defective Lundberg Flame Arresters." *See id.* at

---

[1] This allegation is nested within PCA's "negligence" claim. PCA does *not* solely allege that Lundberg's alleged mismanufacturing was intentional. *See* First Am. Compl. in PCA Action at 28 [Dkt. 1-1].

251608.0079/8760238.1
DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(2:20-cv-01623-JCC) - 4

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

36:23-24.  That is the extent of the detail PCA provides regarding that category—PCA does not itemize or explain what damages it allegedly incurred replacing the flame arresters.  *See id.*

Twin City takes PCA's broad and ambiguous damages allegations and concludes, somehow, that PCA alleges only "loss of use" of its mills and not physical damage to non-Lundberg property.  *See* Pl.'s Mot. for Summ. J. at 14 [Dkt. 24].  But PCA's complaint doesn't say that, and discovery in the PCA Action has since clarified that PCA seeks to recover the costs associated with damage to non-Lundberg property sustained while PCA was replacing the flame arresters.  *See* First Am. Compl. in PCA Action at 36:23-24 [Dkt. 1-1].

Indeed, invoices PCA has produced in discovery make two pertinent facts clear:  (1) non-Lundberg third parties designed, procured, manufactured, erected, and installed components of at least some of PCA's NCG systems (including the piping that is a major component of those systems), and (2) some of those third-party components were physically damaged during the replacement of Lundberg's allegedly mismanufactured flame arresters.  *Compare* Gabel Decl. at Ex. A-2 (Oct. 19, 2021) [Dkt. 28] (providing that "work by others" at the International Falls mill site includes "[s]upply of process piping" and "[f]ield erection and installation of all equipment and piping") *with id.* at Ex. A-3 (providing for the "[c]utting of existing piping" to facilitate the replacement of the Lundberg flame arresters at the International Fall mill).

The following excerpt from a Lundberg invoice for a flame arrester installed at PCA's International Falls site exemplifies the fact that third parties were responsible for, among other things, procuring and installing certain critical components of at least some of PCA's NCG systems, including piping:

WORK BY OTHERS

    Receipt and safe storage of all material and equipment at the job site.
    Preparation of all equipment foundations.
    Supply of instruments and control valves.
    Installation of instruments and connections.
    Supply of process piping and hand valves.
    Supply of service, steam, condensate piping, and valves.
    Supply of electric motors and starters except as noted.
    Supply of all thermal insulation.
    Field erection and installation of all equipment and piping.
    All electrical work and wiring.

251608.0079/8760238.1
DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(2:20-cv-01623-JCC) - 5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

*See* Gabel Decl. at Ex. A-2; *see also* Gabel Decl. at A-3 (similar but at Wallula site); Gabel Decl. at Ex. A-7 (regarding the Counce site).

The following excerpt from a replacement invoice, for work done at the International Falls site, establishes that the same third-party piping described above was cut during the process of replacing the Lundberg flame arresters:

Our proposal is based on furnishing the following:

A. Demo, Fabrication and Installation of FA 1 through 12 per IFC drawings [D221-7100 thru -7115]

B. Material Procurement for Piping, small bore valves, gaskets, Teflon bolts, lokring fittings, steel platform, misc steel hangers.

*          *          *

J. Cutting of Existing piping to be done with pipe cutters and pneumatic reciprocating saws.

Similar invoices are found throughout PCA's production:

A. Installation of Piping Spools at Flame Arrestor Locations: 1,2,3,5,6,7,8,10
B. Material Procurement & Fabrication of Piping Spools and Steel Platforms for FA 1,2,3,5,6,7,8,10
C. Cutting of Existing piping to be done with pipe cutters and pneumatic reciprocating saws.

*See* Gabel Decl. at Ex. A-5 (regarding the Wallula site).

The above invoices belie Twin City's conclusory and unsupported statement that "the gas piping that Lundberg contends may have been damaged is part of the Lundberg System." *See* Pl.'s Mot. for Summ. J. at 16 (Oct. 7, 2021) [Dkt. 24].  Further belying that statement is the declaration of Mr. Greg Wass, which supports the documentary record set forth by the invoices.  *See* Decl. of Greg Wass (Oct. 19, 2021) [Dkt. 29].

Mr. Wass, a Technical Director with Lundberg who has been with the company thirty-two years, states that "the flame arrester and surrounding piping are separate components." *Id.* ¶ 6.[2]

---

[2] Twin City asserts, in one sentence with no citation, that the piping in PCA's NCG systems "incorporates" the flame arresters. *See* Pl.'s Mot. for Summ. J. at 17 (Oct. 7, 2021) [Dkt. 24]. That assertion is belied by Mr. Wass's statements that:

> "[f]lame arresters arrive from the fabricator without the surrounding piping. Mills purchase flame arresters separately from surrounding

251608.0079/8760238.1

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(2:20-cv-01623-JCC) - 6

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Mr. Wass also states that the contracts at the PCA International Falls and Wallula sites were not "turnkey" contracts. *Id.* ¶¶ 8–9. Meaning:

> "Lundberg was not responsible for providing detailed designs about the piping such as lengths, angles, and physical routing specific to the layout and characteristics of the mill. Lundberg also did not procure or install the piping. To the extent any such work was completed, it was completed by a third-party and not Lundberg."

*Id.* In sum, Mr. Wass states exactly what the invoices demonstrate—that, contrary to Twin City's assertions, Lundberg did not design, supply, or install at least some of the piping that was allegedly damaged during PCA's replacement of Lundberg's flame arresters.[3]

## III. There is No Evidence Suggesting That PCA's Damaged Piping Could be or Was Restored to Use; The Only Available Evidence Suggests the Opposite.

Twin City further asserts that, even if some non-Lundberg products like piping were damaged during the replacement process, "[t]he only reasonable conclusion is that the gas piping was restored to use, or could have been, after the flame arresters were replaced." *See* Pl.'s Mot. for Summ. J. at 17 [Dkt. 24]. Twin City's "only reasonable conclusion" is demonstrably unreasonable given the fact that the same PCA invoices calling for the "cutting of piping" call for extensive demolition work. For example, the replacement invoice associated with the Wallula site includes the following line item:

---

> piping. The surrounding piping is not a feature of the flame arrester and does not cause the flame arrester to serve its primary function. Accordingly, the flame arrester and surrounding piping are separate components."

Wass. Decl. ¶ 6 (Oct. 19, 2021) [Dkt. 29].

[3] Twin City asserts in its Motion that it "is not aware of any allegations, documents or other evidence suggesting that there was any physical damage beyond the Lundberg Systems." *See* Pl.'s Mot. for Summ. J. at 5 (Oct. 7, 2021) [Dkt. 24]. Notably, and as explained further below, the invoices described in this section, which definitively establish that there *was* physical damage beyond the Lundberg Systems, were provided to Twin City in March 2021. Twin City ignores these invoices in its motion.

251608.0079/8760238.1
DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(2:20-cv-01623-JCC) - 7

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

| | Replenishment Option: | Standard | | | | |
|---|---|---|---|---|---|---|
| Ln-Sch Item/Description | | Quantity | UOM | PO Price | Extended Amt | Due Date |
| 1 - 1 | | 1.00 | LOT | 303,484.00000 | 303,484.00 | 08/24/2018 |
| DEMO required to insall flame arrestor sets 1 - 12 | | | | | | |
| | | Item Total | | | 303,484.00 | |

*See* Gabel Decl. at Ex. A-6 (regarding the Wallula site).  The replacement invoice associated with the International Falls site includes a similar line item:

A. Demo, Fabrication and Installation of FA 1 through 12 per IFC drawings [D221-7100 thru -7115]

*See* Gabel Decl. at Ex. A-4 (regarding the International Falls site).

Supporting the proposition that the cut piping was demolished and not restored to use, Mr. Wass states in his declaration that, during September and October 2021 visits to the International Falls, Wallula, and Counce sites, he "observed discarded Lundberg flame arresters and non-Lundberg piping that was cut to remove the Lundberg flame arresters."  *See* Decl. of Greg Wass ¶ 10 (Oct. 19, 2021) [Dkt. 29].  Cementing that PCA did not restore the old piping to use, Mr. Wass also states that, during those same site visits, he "observed at each mill new piping, fittings, and instruments at each of the locations of the previously installed Lundberg flame arresters," as well as "new support and access platforms."  *See id.*

In sum, there is no support in PCA's complaint, PCA's invoices, Mr. Wass's declaration, or otherwise for Twin City's assertion that the piping cut by PCA could have been or was restored to use.

**IV.    Knowing That Insurers Must Consider Extrinsic Evidence to Assess Their Duty to Defend, Lundberg Provides Twin City With Discovery Served in the Underlying Action, Including the Invoices That Show Damage to Non-Lundberg Piping.**

In March 2021, Lundberg provided Twin City with the invoices described above and other key discovery from the PCA Action.  *See* Decl. of G. Van Houten ¶ 3 (Nov. 2, 2021).  Lundberg did so because, as Twin City acknowledged at the time and now concedes, extrinsic evidence can be relevant to an insurer's duty to defend under Washington law.  *See id.* ¶ 4; Pl.'s Mot. for Summ. J. at 9–10 [Dkt. 24].

251608.0079/8760238.1
DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(2:20-cv-01623-JCC) - 8

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

On March 26, 2021, Lundberg summarized the relevant extrinsic evidence in a PowerPoint presentation that it shared with Twin City. *See* Decl. of G. Van Houten ¶ 5, Ex. A-1 (Nov. 2, 2021). Lundberg also noted and emphasized in its presentation that courts considering very similar factual records have found a duty to defend under Washington law. *See id.* ¶ 6.

Undeterred by that case law, Twin City now asserts that it has no duty to defend because: (1) the PCA Action does not allege an "occurrence," or, alternatively, may trigger (2) the "Engineers, Architects or Surveyors Professional Liability" exclusion (the "Engineers Liability exclusion"), (3) the "Impaired Property" exclusion, or (4) the "Your Product" exclusion. As explained further below, those defenses fail as a matter of law and therefore Twin City's motion should be denied.

## ARGUMENT

### I.   Applicable Legal Standards Support the Denial of Twin City's Motion.

*The Duty to Defend Standard.*   Twin City and Lundberg appear to agree on the legal standards and rules that govern whether an insurer has a duty to defend under Washington law. *Compare* Pl.'s Mot. for Summ. J. at 9 (Oct. 7, 2021) [Dkt. 24] *with* Def.'s Cross-Motion for Summ. J. at 8 (Oct. 19, 2021) [Dkt. 27]. That is, an insurer's "duty to defend arises when a complaint against the insured, *construed liberally*, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Woo v. Fireman's Fund Insurance Co.*, 161 Wn.2d 43, 52–53, 164 P.3d 454 (2007) (emphasis added). Indeed, it is only when the claims alleged in the complaint are "*clearly* not covered by the policy" that an insurer is relieved of its duty to defend. *Id.* at 53 (emphasis added). Put slightly differently, if "it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer must . . . give the insured the benefit of the doubt that the insurer has a duty to defend." *Id.*

*The Consideration of Extrinsic Evidence.*   Twin City and Lundberg also agree on the legal standards and rules that govern when insurers are required to consider extrinsic evidence to determine whether they have a duty to defend. *Compare* Pl.'s Mot. for Summ. J. at 9–10

(Oct. 7, 2021) [Dkt. 24] *with* Def.'s Cross-Motion for Summ. J. at 8–9 (Oct. 19, 2021) [Dkt. 27]. Specifically, Twin City and Lundberg agree that extrinsic evidence may be used to trigger the duty to defend in two scenarios: (1) when "the allegations in the complaint conflict with facts known to or readily ascertainable by the insurer," or (2) when "the allegations are ambiguous or inadequate." *Woo*, 161 Wn.2d at 53 –54.

As explained further below, although Twin City recites the above legal standards and rules, it largely ignores their proper application in its Motion.  Indeed, instead of giving Lundberg "the benefit of the doubt," Twin City overlooks allegations, extrinsic evidence, and case law that support coverage and Twin City's continued duty to defend to concoct its denial.[4]

## II.    PCA Alleges An "Occurrence" by Alleging That Lundberg Mismanufactured Certain Flame Arresters.

Twin City acknowledges that, under Washington law as articulated in *Yakima Cement Products Co. v. Great American Insurance Co.*, an "occurrence" exists where there are allegations of inadvertent mismanufacturing.[5]  In *Yakima*, the Washington Supreme Court concluded that the policyholder's "negligent and defective manufacture of . . . concrete panels, necessitating their removal, refabrication, and repair constitutes an 'accident' and thus an 'occurrence' within the terms of the policy." *Yakima Cement Products Co. v. Great Am. Ins. Co.*, 93 Wn.2d 210, 217, 608 P.2d 254, (1980).  Subsequent decisions applying Washington law confirm *Yakima's* holding. *See,*

---

[4] To support its argument that there is no coverage for the PCA Action, Twin City argues that "CGL policies are not meant to be performance bonds or product liability insurance."  *See* Pl.'s Mot. for Summ. J. at 11 (Oct. 7, 2021) [Dkt. 24].  The insurer in *Truck Insurance Exchange v. Vanport Homes, Inc.* made a similar appeal, citing *Hayden* v. *Mutual of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000), but the Washington Supreme Court shut that argument down, stating that the insurer's "citation is not well taken." *Truck Ins. Exchange v. Vanport Homes, Inc.*, 147 Wn.2d 751, 762, 58 P.3d 276 (2002).  The reason for shutting that argument down is simple: an insurer's duty to defend does not hinge on superficial arguments regarding the purported purpose of an insurance policy, but whether the underlying complaint triggers the policy and any exclusions.

[5] *See* Pl.'s Mot. for Summ. J. at 11 (Oct. 7, 2021) [Dkt. 24] (citing *Yakima Cement Products Co. v. Great Am. Ins. Co.*, 93 Wn.2d 210, 217, 608 P.2d 254 (1980)).

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

*e.g.*, *Phoenix Ins. v. Diamond Plastics Corp.*, No. 19-cv-1983-JCC, 2020 WL 5993909 (W.D. Wash. Oct. 9, 2020) (holding that "the mismanufacture of a product is an 'occurrence' under Washington law"); *Mid-Continent Cas. Co. v. Titan Const. Corp.*, 281 F. App'x 766, 768 (9th Cir. 2008) (holding that "[u]nder Washington law, an 'occurrence' includes the deliberate manufacture of a product which inadvertently is mismanufactured").

Strikingly, after acknowledging *Yakima* and Washington law on this issue, Twin City asserts that, here, "there is no allegation of mistake or inadvertence in the manufacture of the flame arresters."[6]  That is simply incorrect.  A major component of PCA's complaint are its allegations that Lundberg sold it negligently mismanufactured flame arresters.  *Id.* ¶¶ 17, 139.[7]  Those allegations include but are not limited to the following:

- "[I]nternal components of the Lundberg Flame Arresters **did not appear to be manufactured to appropriate tolerances** (*e.g.*, the gaps were much larger than anticipated)."  *Id.* ¶ 60 (emphasis added).

- "PCA spent millions [to] test the Lundberg Flame Arresters that were defective as designed, **manufactured**, sold, and installed . . . ."  *Id.* ¶ 94 (emphasis added).

- "[T]he Lundberg Defendants breached their duty to PCA by designing, **manufacturing**, assembling, and installing defective Lundberg Systems with defective Lundberg Flame Arresters."  *Id.* ¶ 139 (emphasis added).[8]

The fact that PCA's complaint includes non-mismanufacturing allegations, such as allegations related to negligence in engineering, is beside the point.  That is because an insurer has a duty to defend if "*any* allegation . . . may result in a covered liability, even if other claims in the

---

[6] *See* Pl.'s Mot. for Summ. J. at 11 (Oct. 7, 2021) [Dkt. 24].

[7] PCA has also served discovery in support of its mismanufacturing theory.  *See supra* 4:08-16.

[8] This allegation is nested within PCA's "negligence" claim.  PCA therefore alleges that Lundberg's alleged mismanufacturing was *not* intentional but accidental or negligent.  *See* First Am. Compl. in PCA Action at 28 [Dkt. 1-1].

251608.0079/8760238.1
DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(2:20-cv-01623-JCC) - 11

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

complaint are clearly outside the scope of coverage." *Webb v. USAA Cas. Ins.*, 12 Wn. App. 2d 433, 445–46, 457 P.3d 1258 (2020) (emphasis added); *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 421, 191 P.3d 866 (2008) ("[T]he duty to defend arises when a complaint contains *any allegations* that could make an insurer liable to an insured under the policy . . . .") (emphasis added); *Weyerhaeuser Co. v. Ins. Co. of State of Pennsylvania*, No. 08-cv-1037, 2009 WL 2461163, at *3 (W.D. Wash. Aug. 10, 2009) (same).

In sum, as in *Yakima*, *Phoenix*, and *Titan*, there is an "occurrence" here because PCA alleges that its damages arise out of, at least in part, an alleged inadvertent and negligent mismanufacturing issue.[9]

### III. Twin City Cannot Meet its Burden of Establishing That Any Exclusions Wholly Bar Coverage for the PCA Action; Thus, Twin City Has a Continued Duty to Defend.

Once a policyholder establishes that a claim triggers coverage—which Lundberg has done here by pointing to PCA's mismanufacturing allegations—the burden shifts to the insurer to show that an exclusion applies. *Mutual of Enumclaw*, 165 Wn.2d at 268; *Phoenix*, No. 19-cv-1983-JCC, 2020 WL 5993909, at *2 ("the insurer bears the burden of establishing an exclusion to coverage"). Courts applying Washington law strictly construe exclusions "against the insurer because they are contrary to the protective purpose of insurance." *Dewitt Const. Inc. v. Charter Oak Fire Ins.*, 307 F.3d 1127, 1134 (9th Cir. 2002). Accordingly, an exclusion applies to bar coverage *only if* the insurer's interpretation of that exclusion is the *only* reasonable interpretation; if an exclusion is "susceptible to two different but reasonable interpretations" it is deemed "ambiguous" and is "strictly construed against the insurer" and in favor of coverage. *Kent Farms, Inc. v. Zurich Ins.*, 93 Wn. App. 414, 418, 969 P.2d 109 (1998), *aff'd*, 140 Wn.2d 396, 998 P.2d 292 (2000); *Webb*,

---

[9] Twin City asserts that because "PCA does not single out specific flame arresters that failed testing and may have been Mismanufactured," that PCA really "alleges a design flaw." *See* Pl.'s Mot. for Summ. J. at 12 [Dkt. 24]. Not only is that assertion a logical fallacy (*i.e.*, if all products are mismanufactured then no products are mismanufactured), but it asks the Court to ignore what PCA says—that there was a mismanufacturing issue—and instead impose what Twin City wishes PCA had said—that there was only a design flaw. Twin City's assertion therefore fails at every level.

251608.0079/8760238.1
DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(2:20-cv-01623-JCC) - 12

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

12 Wn. App. 2d at 446 (same); *see also McGreevy v. Oregon Mut. Ins. Co.*, 74 Wn. App. 858, 865, 876 P.2d 463 (1994), *aff'd*, 128 Wn.2d 26, 904 P.2d 731 (1995) (stating that the "purpose of insurance is to insure and exclusionary clauses are to be interpreted to make policy operative rather than inoperative").

Because insurers have a duty to defend if any allegations fall within coverage, they cannot avoid their duty to defend upon an exclusion unless the exclusion bars coverage for *every* underlying allegation; put differently, if just one allegation is *potentially* covered, the insurer has a duty to defend the entire action.  *See Truck*, 147 Wn.2d at 760–61.

Here, Twin City argues that three exclusions bar coverage: (1) the Engineers Liability exclusion, (2) the Impaired Property exclusion, and (3) the Your Product exclusion.  However, and as explained further below, none of those exclusions apply to situations like this one where the process of ripping and tearing out the insured's allegedly mismanufactured product damaged materials supplied and installed by a third party.  Thus, Twin City has a continued duty to defend.

### A.   The Engineers Liability Exclusion Does Not Apply Because the PCA Action Does Not Solely Arise Out of Engineering Activities.

To advance its argument that the Engineers Liability exclusion applies, Twin City conveniently focuses on each time PCA uses the word "engineer" in its complaint.[10]  But, under *Webb* and *Mutual of Enumclaw*, Twin City must examine the whole complaint and assess whether there is "*any* allegation [that] may result in a covered liability."  *Webb*, 12 Wn. App. 2d at 445–46 (emphasis added); *Mut. of Enumclaw*, 164 Wn.2d at 421.  Upon review, there are many allegations in PCA's complaint that fall outside of the Engineer's Liability exclusion and into coverage—for example, the very mismanufacturing allegations that are outlined at-length in the preceding section.  Such allegations have nothing to do with preparing drawings or conducting other engineering activities, and thus Twin City cannot satisfy its burden of proving that the Engineers Liability exclusion completely bars coverage.  *See T-Mobile USA Inc. v. Selective Ins. Co. of Am.*,

---

[10] *See* Pl.'s Mot. for Summ. J. at 12–13 (Oct. 7, 2021) [Dkt. 24].

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

No. 15-cv-1739, 2021 WL 1222666, at *8 (W.D. Wash. Apr. 1, 2021) (refusing to apply a very similar exclusion even though policyholder was "retained to perform architectural and engineering activities" because the underlying complaint also included allegations of "faulty construction" falling outside the exclusion).

**B.    The Impaired Property Exclusion Does Not Apply Because PCA's Damaged Piping is Not "Impaired Property."**

Twin City asserts that the "impaired property" exclusion applies because PCA alleges only "loss of use" and no physical damage to its mills, or, alternatively, because any physical damage was to "impaired property" subject to the "impaired property" exclusion.

As a preliminary matter, PCA does not only seek "loss of use" damages, but "*[a]ll damages* associated with replacing the defective Lundberg Flame Arresters"—whatever that means.[11]  Such a broad and ambiguous allegation could at least "conceivably" include "physical damage" as opposed to only "loss of use" damages.  *See Travelers Prop. Cas. Co. of Am. v. Nw. Pipe Co.*, No. 17-cv-5098, 2017 WL 2687652, at *8 (W.D. Wash. June 22, 2017) (describing the underlying complaint as "somewhat unclear" with respect to what the underlying plaintiff "actually seeks to recover" and therefore holding that it was "conceivable" that one or more allegations fell within coverage).  Erasing any doubt, however, is the discovery that PCA has produced in the PCA Action and that Lundberg has also shared with Twin City.  That discovery, which is admissible in this case under *Woo* given that "the allegations [regarding PCA's damages] are ambiguous or inadequate,"[12] makes clear that PCA seeks to recover costs associated with physical damage PCA sustained while it was replacing Lundberg's allegedly mismanufactured flame arresters.[13]

That same discovery makes clear that the subject physical damage was *not* to "impaired property."  That is because "impaired property" is property that (a) "incorporates" Lundberg's

---

[11] *See* First Am. Compl. in PCA Action at 36:23-24 [Dkt. 1-1] (emphasis added).

[12] 161 Wn.2d at 54.

[13] *See supra* 5:05-7:08.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

product, and (b) "can be restored to use."  As explained above and below, there is no evidence suggesting that the damaged piping "incorporated" Lundberg's product or that it was or could have been "restored to use."  In fact, the only available evidence suggests that the subject piping did *not* "incorporate" Lundberg's product and was *not* "restored to use."  Thus, Twin City cannot meet its burden of establishing that the "impaired property" exclusion applies.

> 1.   **The Non-Lundberg Piping Did Not Incorporate Lundberg's Product.**

Twin City asserts, in one conclusory sentence with no citation or support, that PCA's cut and damaged piping "incorporated" Lundberg's flame arresters and is therefore "impaired property."[14]  That statement does not satisfy Twin City's heavy burden of establishing that the piping is "impaired property" such that the "impaired property" exclusion applies.  *Phoenix*, No. 19-cv-1983-JCC, 2020 WL 5993909, at *2 ("the insurer bears the burden of establishing an exclusion to coverage").  That is especially the case when the available extrinsic evidence establishes that the damaged piping did *not* "incorporate" Lundberg's flame arresters.

"Incorporate" means to "form an indistinguishable whole."[15]  For example, in *Anthem Electronics v. Pacific Employers*, desktop document scanners were said to "incorporate" circuit boards and many other *internal* electronic parts.[16]  Here, the available extrinsic evidence provides that PCA's piping and Lundberg's flame arresters were "separate components."[17]  Indeed, unlike

---

[14] *See* Pl.'s Mot. for Summ. J. at 17 (Oct. 7, 2021) [Dkt. 24].

[15] The policies do not define the word "incorporate."  Dictionaries, which may be consulted to discern the plain, ordinary, and popular meaning of a term, define "incorporate" as "to unite or work into something already existent so as *to form an indistinguishable whole*." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1985) (emphasis added); *see also Terminal Freezers Inc. v. U.S. Fire Ins.*, 345 F. App'x 305, 307 (9th Cir. 2009) ("To determine the ordinary meaning of undefined terms, courts may look to standard English dictionaries.").

[16] In *Anthem Elecs., Inc. v. Pac. Employers Ins. Co.*, the Ninth Circuit stated that defective circuit boards were incorporated into desktop scanners; yet the Ninth Circuit still denied the insurer's motion for summary judgment on the applicability of the impaired property exclusion.  302 F.3d 1049, 1052, 1058–60 (9th Cir. 2002).

[17] *See* Decl. of Greg Wass ¶¶ 5, 6 (Oct. 19, 2021) [Dkt.  29].

251608.0079/8760238.1
DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(2:20-cv-01623-JCC) - 15

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

with the scanners in *Anthem Electronics*, PCA's piping was not encapsulated within the flame arresters or vice versa "to form an indistinguishable whole."[18]  Rather, the piping was merely attached to each end of the flame arresters.

Twin City may argue on reply that the word "incorporate" means something different or applies in a different way, but such would not change the conclusion.  That is because for Twin City to establish that the "impaired property" exclusion applies, it would have to prove that its interpretation of the word "incorporate" is the *only* reasonable interpretation.  *See Kent Farms*, 93 Wn. App. at 418.  Lundberg's interpretation is reasonable, and thus Twin City cannot satisfy its burden of proving that the "impaired property" exclusion applies, especially when it must be "strictly construed" against Twin City.

### 2.    The Non-Lundberg Piping Was Destroyed and Not Restored to Use.

Twin City also asserts that, even if some non-Lundberg products like piping were damaged during the replacement process, "[t]he only reasonable conclusion is that the gas piping was restored to use, or could have been, after the flame arresters were replaced."[19]  That conclusion is unfounded because the same PCA invoices for the "cutting of piping" provide for extensive demolition work.  Moreover, Mr. Wass states in his declaration that:

> "During September 2021 visits to the I'Falls [and] Wallula . . . PCA mill sites, I observed at each mill new piping, fittings, and instruments at each of the locations of the previously installed Lundberg flame arresters.  I also observed new support steel and access platforms at several locations.  At the I'Falls [and] Wallula . . . mills, **I also observed discarded Lundberg flame arresters and non-Lundberg piping that was cut to remove the Lundberg flame arresters**."

*See* Wass Decl. ¶ 10 (Oct. 19, 2021) [Dkt.  29] (emphasis added).

Upon that record, Twin City cannot meet its burden of proving that the non-Lundberg piping was or could have been "restored to use," and therefore Twin City similarly cannot meet its

---

[18] *See id.*

[19] *See* Pl.'s Mot. for Summ. J. at 17 [Dkt. 24].

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

heavy burden of proving that the "impaired property" exclusion, which must be "strictly construed against [it]," applies to bar coverage. *Kent Farms*, 93 Wn. App. at 418.

### C. The "Your Product" Exclusion Does Not Apply Because the Damaged Piping was Not Lundberg's Product.

Twin City asserts, again with no citations or evidentiary support, that PCA's damaged piping was, in all instances, "designed and sold" as a part of larger "Lundberg Systems," and, therefore, the piping constitutes Lundberg's "product" for purposes of triggering the "Your Product" exclusion.[20] That assertion is factually incorrect. Here, the damaged piping was not exclusively Lundberg's product—in at least some instances it was procured, designed, fabricated, and installed by a third party—and thus the "your product" exclusion does not apply.[21]

With the "your product" exclusion, the appropriate test is whether the damaged property was the policyholder's product or a part of the policyholder's product—if it was, then the exclusion applies; if it was not, then the exclusion does not apply. *See Indian Harbor*, 2010 WL 3584412, at *7; *Phoenix*, No. 19-cv-1983-JCC, 2020 WL 5993909, at *3 (refusing to apply the exclusion when the complaint alleged injury to "other property" and "not damage to [the policyholder's] property"). In line with that test, the *Indian Harbor* court found that the exclusion applied to damage to condo modules made by the policyholder notwithstanding the fact that another entity had supplied some of the parts the policyholder had used to make the modules. 2010 WL 3584412, at *6–7. Those facts, however, are distinguishable, and that is because, at the end of the day, those other parts were a "part" of the policyholder's product, and so the exclusion applied to that damage. *See id.* Contrarily, though, and at the same time, the *Indian Harbor* court did *not* apply the exclusion to damage to plumbing, heating, water and electrical components that were woven through the condo modules by a third party—the reason being that those components were not the

---

[20] *See* Pl.'s Mot. for Summ. J. at 15–16 (Oct. 7, 2021) [Dkt. 24].

[21] *See* Wass Decl. ¶¶ 8–9 (Oct. 19, 2021) [Dkt. 29]; Gabel Decl. ¶¶ 5–10; Exs. A-2 through A-7 (Oct. 19, 2021) [Dkt. 28].

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1   policyholder's product nor a "part" of the policyholder's product.  *Id.*  The court reached that

2   conclusion even though the condo modules were necessarily designed to work in conjunction with

3   the third-party components and work.  *Id.* at *1.

4          This Court reached a similar conclusion in *Phoenix*, where it held that the "your product"

5   exclusion did not apply when the underlying complaint alleged damage not only to the piping the

6   policyholder had supplied, but to other property at the subject construction site that was supplied

7   by third-parties.  No. 19-cv-1983-JCC, 2020 WL 5993909, at *3.

8          Likewise, the *Travelers* court held that the "your product" exclusion did not apply when

9   the underlying plaintiff alleged damage to "circumferential welds" that, despite being used to

10  attach the policyholder's defective products together, were not manufactured or installed by the

11  policyholder but a third-party.  No. 17-cv-5098, 2017 WL 2687652, at *1.  There, it was irrelevant

12  that the policyholder's products were designed to work with, and were physically connected to,

13  the welds—the fact that the welds were manufactured and installed by a third-party meant that the

14  exclusion did not apply.  *Id.* at *8; *see also Riverfront Landing Phase II Owners' Ass'n v.*

15  *Assurance Co. of Am.*, No. 08-cv-0656, 2009 WL 1952002, at *6 (W.D. Wash. July 6, 2009)

16  (holding that the insurer "is liable for any damage to the work of other subcontractors, which had

17  to be removed and destroyed as a result of [the policyholder's] defective work").[22]

18         Here, quite simply, the damaged piping was not exclusively (or even perhaps primarily)

19  Lundberg's product or work.  Invoices and testimony from a Lundberg product expert make clear

20  that, with respect to at least the International Falls and Wallua mill sites, another entity—an entity

21  completely unrelated to Lundberg—designed, measured, procured, fabricated, cut-to-size, erected,

22  and installed the piping.[23]  The damaged piping in this case is therefore akin to the third-party

---

[22] *See also Aetna Cas. & Sur. Co. v. M & S Indus., Inc.*, 64 Wn. App. 916, 922, 827 P.2d 321 (1992) (holding that "coverage is present where the defective product causes damage to another person's tangible property").

[23] *See* Wass Decl. ¶¶ 8–9 (Oct. 19, 2021) [Dkt. 29]; Gabel Decl. ¶¶ 5–10; Exs. A-2 through A-7 (Oct. 19, 2021) [Dkt. 28].

27  251608.0079/8760238.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

work in *Indian Harbor*, which knitted plumbing, heating, water and electrical components between and through the condo modules.  It is also akin to the circumferential welds in *Travelers* and the other construction materials at-issue in *Phoenix*.[24]

Twin City alleges that the flame arresters in this case may have been designed to work with the subject piping, but that is irrelevant for the same reason it was irrelevant in *Indian Harbor* that the condo modules were designed to work with the third-party work and in *Travelers* that the circumferential welds bonded the policyholder's products together. The dispositive question is whether the damaged piping was Lundberg's product or a part of Lundberg's product, which it was not—it was designed, procured, fabricated, cut-to-size, erected, and installed by a third-party.[25] Upon that factual predicate, Twin City cannot satisfy its burden of proving that the "your product" exclusion, which must be strictly construed against Twin City, applies.

## CONCLUSION

In sum, Twin City's four coverage defenses fail upon consideration of PCA's allegations and the relevant and admissible extrinsic evidence.  It follows that Twin City has a continued duty to defend Lundberg against the PCA Action and that Twin City's Motion fails as a matter of law.

---

[24] Notably, the *Indian Harbor* court also held that the analogous "your work" exclusion does not apply when the subject damage is to work of a subcontractor. No. 09-cv-1120, 2010 WL 3584412, at *7 (W.D. Wash. Sept. 8, 2010).  There the court refused to apply the exclusion at the summary judgment stage because it could not "determine as a matter of law whether subcontractors were used or not."  *Id.*  Here, even if all of the piping were somehow a part of the Lundberg System—which again it was not—then Twin City still cannot prevail at this stage because it cannot prove as a matter of law that the piping was *not* installed by a subcontractor.

[25] *See* Wass Decl. ¶¶ 8–9 (Oct. 19, 2021) [Dkt.  29]; Gabel Decl. ¶¶ 5–10; Exs. A-2 through A-7 (Oct. 19, 2021) [Dkt. 28].

251608.0079/8760238.1
DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(2:20-cv-01623-JCC) - 19

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1  DATED: November 2, 2021

2

3

4                                             By:    /s/ Andrew Gabel

5                                                   Andrew J. Gabel, WSBA No. 39310
                                                    Devon J. McCurdy, WSBA No. 52663
6                                                   LANE POWELL PC
                                                    1420 Fifth Avenue, Suite 4200
7                                                   P.O. Box 91302
                                                    Seattle, Washington 98111-9402
8                                                   Telephone:  206.223.7000
                                                    gabela@lanepowell.com
9                                                   mccurdyd@lanepowell.com

10
                                                    -and-
11
                                                    Ernest Martin, Jr.*
12                                                  Greg Van Houten*
                                                    S. Benjamin Schindler*
13                                                  HAYNES AND BOONE, LLP
                                                    2323 Victory Avenue, Suite 700
14                                                  Dallas, Texas 75219
                                                    Telephone:  214-651-5000
15                                                  ernest.martin@haynesboone.com
                                                    greg.vanhouten@haynesboone.com
16                                                  s.benjamin.schindler@haynesboone.com
                                                    *Admitted Pro Hac Vice
17

18                                                  **Attorneys for Defendant Lundberg LLC**

19

20

21

22

23

24

25

26

27  251608.0079/8760238.1
    DEFENDANT'S RESPONSE TO PLAINTIFF'S                           LANE POWELL PC
    MOTION FOR PARTIAL SUMMARY JUDGMENT                    1420 FIFTH AVENUE, SUITE 4200
    (2:20-cv-01623-JCC) - 20                                      P.O. BOX 91302
                                                         SEATTLE, WASHINGTON 98111-9402
                                                          206.223.7000 FAX: 206.223.7107