THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TWIN CITY FIRE INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> LUNDBERG, LLC, <br><br> Defendant. | Case No. 2:20-cv-01623-JCC <br><br> **DECLARATION OF GREG VAN HOUTEN IN SUPPORT OF DEFENDANT LUNDBERG LLC'S RESPONSE TO PLAINTIFF TWIN CITY FIRE INSURANCE CO.'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. 24]** |

I, Greg Van Houten, being duly sworn, upon oath state as follows:

1. My name is Greg Van Houten. I am over twenty-one years of age, have never been convicted of a felony, and am fully competent to make this declaration. All the statements in this declaration are based on my personal knowledge and are true and correct.

2. I am an Associate with the law firm of Haynes and Boone, LLP, attorneys for Defendant Lundberg, LLC ("Lundberg") in the instant insurance coverage action.

3. During March 2021, Lundberg provided Twin City with invoices produced by Packaging Corporation of America ("PCA") in its action against Lundberg (the "PCA Action").

4. Lundberg sent Twin City those invoices because Twin City acknowledged at the time that extrinsic evidence can be relevant to an insurer's duty to defend under Washington law.

5. On March 26, 2021, Lundberg summarized the relevant extrinsic evidence in a PowerPoint presentation that it shared with Twin City during a Zoom meeting. A true and correct

251608.0079/8760237.1
DECL. OF GREG VAN HOUTEN IN SUPP. OF DEF.
LUNDBERG, LLC'S RESP. TO PL. TWIN CITY'S
MOT. FOR PARTIAL SUMM. J.
(2:20-cv-01623-JCC) - 1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1  copy of that PowerPoint presentation, which it later e-mailed to Twin City's outside counsel, is
2  attached hereto as Exhibit **A-1.**
3        6.      During the Zoom meeting, Lundberg noted and emphasized that courts considering
4  very similar factual records have found a duty to defend under Washington law.

6        I declare under penalty of perjury that the foregoing is true and correct.

8  Dated:  November 2, 2021
              Washington, D.C.

10                                           /s/ Greg Van Houten
11                                           Greg Van Houten

251608.0079/8760237.1
DECL. OF GREG VAN HOUTEN IN SUPP. OF DEF.
LUNDBERG, LLC'S RESP. TO PL. TWIN CITY'S
MOT. FOR PARTIAL SUMM. J.
(2:20-cv-01623-JCC) - 2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

# EXHIBIT A-1

3/26/2021



1

## The Duty to Defend Standard in Washington

- "[T]he duty to defend arises when the policy could **conceivably** cover allegations in a complaint." *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wash. 2d 171, 182 (2017) (emphasis in original).
- "[A]n insurer must defend a complaint against its insured until it is clear that the claim is not covered." *Id.*
- "If there is **any reasonable interpretation** of the facts or the law that could result in coverage, the insurer must defend." *Id.* (emphasis added).
- "An insurer acts in bad faith if the refusal to defend was unreasonable, frivolous, or unfounded." *Id.*
- "[A]n insurer takes a great risk when it refuses to defend on the basis that there is no reasonable interpretation of the facts or the law that could result in coverage." *Id.*

haynesboone

© 2019 Haynes and Boone, LLP

2

1

3/26/2021

## The Underlying Amended Complaint



3

## The Consideration of Extrinsic Evidence

- "There are two exceptions to the rule that the duty to defend must be determined only from the complaint, and both the exceptions favor the insured." *Woo v. Fireman's Fund*, 161 Wash. 2d 43, 53–54 (2007).

  1. "First, if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer **must** investigate and give the insured the benefit of the doubt that the insurer has a duty to defend." *Id.* (emphasis in original).

  2. "Second, if the allegations in the complaint conflict with facts known to or readily ascertainable by the insurer, or if the allegations are ambiguous or inadequate, facts outside the complaint may be considered." *Id.* (cleaned up).

4

2

## PCA's First Document Production: Background

- 323 documents and 5,376 pages
- Mostly invoices from (a) original installations, and (b) replacement.
  - PCA alleges the replacement process began in early 2018.

> 81. Luckily, the PCA Mills never experienced an explosion caused by the Lundberg Flame Arresters. Therefore, it was not until consultants for PCA tested the 6" Test Flame Arrester—in January 2018—that PCA had an opportunity to learn that the Lundberg Flame Arresters were possibly defective and unlikely to prevent the propagation of flames.
>
> 82. As confirmed during the 2018 Test at Aber Shock, the 6" Test Flame Arrester failed to provide any protection against flame propagation, failed to serve as a flame arrester, failed to perform as a safety device, and failed to serve the basic purpose for which it was designed, manufactured, purchased, and installed. Instead, it accelerated propagation of the flame through the system, which is directly contrary to the intended purpose of the flame arrester.
>
> 83. After the independent test results were known, PCA worked diligently to evaluate replacement flame arresters manufactured and produced by other companies, hired a new engineering and design firm to provide effective workarounds and changes in existing systems, and removed all Lundberg Flame Arresters from the PCA Mills.

haynesboone
© 2019 Haynes and Boone, LLP

5

5

## Focus on Wallula and International Falls

> 15. PCA is engaged in processing raw materials to manufacture paper, containerboard, and corrugated products. PCA completes the necessary chemical processes at various mills across the country. Pertinent to this lawsuit, PCA manufactures products at mills located in Counce, Tennessee ("Counce Mill"), International Falls, Minnesota ("I'Falls Mill"), Jackson, Alabama ("Jackson Mill"), Valdosta, Georgia ("Valdosta Mill"), and Wallula, Washington ("Wallula

FIRST AMENDED COMPLAINT – 6 of 37

ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-3004
(213) 576-1000

haynesboone
© 2019 Haynes and Boone, LLP

6

6

3/26/2021



7



8

4

3/26/2021



3/26/2021



11



12

3/26/2021

## Lundberg Did Not Provide Piping at International Falls

7.2   Shipping Instructions:

**DELIVERY ADDRESS - TRUCK**

Boise Cascade Corporation
International Falls Expansion Project
Second Street
International Falls, MN  56649-2387

Attention:  Mr. Ernie Clifton

**DELIVERY ADDRESS - RAIL**

Boise Cascade Corporation
International Falls Expansion Project
International Falls, MN  56649

Attention:  Mr. Ernie Clifton

The railroad serving the International Falls Mill is the:

Minnesota, Dakota, & Western (MD&W) via:

   Burlington-Northern or
   Duluth, Winnipeg and Pacific (DW&P) railroads.

PCA-Lundberg_0000001008

haynesboone
© 2019 Haynes and Boone, LLP

13

## Lundberg Did Not Provide Piping at International Falls

ATTACHMENT "A"

NONCONDENSIBLE GAS SYSTEM
INDIRECT BLACK LIQUOR HEATER
TURPENTINE RECOVERY SYSTEM

**INTRODUCTION**

This document describes the engineering and equipment required to operate the Noncondensible Gas Collection and Incineration System, Indirect Black Liquor Heater, Turpentine Recovery System at the Boise Cascade Corporation mill at International Falls, Minnesota.

PCA-Lundberg_0000001013

haynesboone
© 2019 Haynes and Boone, LLP

14

14

7



15

16

3/26/2021

### *Indian Harbor Ins. Co. v. Transform LLC,*
**No. 09-cv-1120, 2010 WL 3584412 (W.D. Wash Sept. 8, 2010)**

- Policyholder supplied condominium modules to developer.
- Developer knit piping and electrical through the modules.
- The modules were defective. To repair and replace them, the developer had to tear out its own work, including the piping/electrical.
- Developer sued the policyholder for the costs to repair and replace.
- Insurer filed a DJ, raising the impaired property exclusion.
- Court refused to apply the exclusion because the developer's "rip and tear damages caused physical injury to tangible property."
- Court stated that "[s]ince physical damage to [the developer's] work resulted from [the policyholder's] faulty workmanship, the exclusion is not applicable."

haynesboone
© 2019 Haynes and Boone, LLP

17

### *Phoenix Ins. Co. v. Diamond Plastics Corp.*,
**No. 19-cv-1983, 2020 WL 5993909 (W.D. Wash Oct. 9, 2020)**

- Judge Coughenour.
- Policyholder supplied pipe for construction job.
- Piping failed. In the process of removing the defective pipe, "other property at the site was physically damaged."
- Insurer filed DJ, raising the impaired property exclusion.
- Judge Coughenour refused to apply the exclusion because "the project site was physically damaged during the rip and tear process used to remove the pipe."
- Although insurer raised several arguments, Judge Coughenour concluded that a "reasonable interpretation could result in coverage" and therefore found the insurer had a duty to defend.

haynesboone
© 2019 Haynes and Boone, LLP

18

18

9

## Conclusion and Questions

- PCA seeks damages for replacing the allegedly defective flame arresters.
- Those damages include the costs of cutting piping at Wallula and International Falls.
- Lundberg did not provide piping at Wallula and International Falls (neither were "turnkey" installations).
- Thus, like in *Indian Harbor* and *Diamond Plastics*, the underlying plaintiff (here, PCA) seeks redress for rip and tear damages to tangible property *not* supplied by the policyholder (here, Lundberg).
- It follows that, like in those cases, there is a continued duty to defend.

haynes*boone*

© 2019 Haynes and Boone, LLP

19



haynes*boone*

© 2019 Haynes and Boone, LLP

20