1

2

THE HONORABLE JOHN C. COUGHENOUR
NOTING DATE: NOVEMBER 12, 2021

3

4

5

6

7

8

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

TWIN CITY FIRE INSURANCE
COMPANY,

                Plaintiff,

    v.

LUNDBERG, LLC,

                Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

NO.  2:20-cv-01623-JCC

TWIN CITY FIRE INSURANCE
COMPANY'S RESPONSE TO
DEFENDANT'S CROSS-MOTION
FOR PARTIAL SUMMARY
JUDGMENT

***ORAL ARGUMENT REQUESTED***

16

17

18

19

20

21

22

23

24

25

26

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC

GORDON & POLSCER, L.L.C.
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1

**TABLE OF CONTENTS**

2

**Page**

3

TABLE OF AUTHORITIES .................................................................................................ii

4

A.  Introduction....................................................................................................................1

5

B.  Clarifications.................................................................................................................2

6

C.  The extrinsic evidence offered by Lundberg is unreliable and inadmissible.....................2

7

    1.  The evidence offered is unreliable and should be stricken ...........................................3

8

        a.   The Declaration of Andrew Gabel and associated exhibits ...............................3

9

        b.   The Declaration of Mr. Greg Wass.................................................................7

10

    2.  The evidence offered is not admissible to evaluate the duty to defend .......................8

11

D.  There are no allegations or evidence of an "occurrence" ...................................................8

12

E.  The Engineers Professional Liability exclusion bars all coverage ...................................11

13

F.  The "Your Product" exclusion bars all coverage.............................................................12

14

G.  The "Impaired Property" exclusion bars all coverage .....................................................16

15
16

    1.  The exclusion applies because the flame arresters caused no actual damage and their replacement was purely preventative...........................................................................17

17

    2.  "Incorporation" is not required, but the flame arresters *were* incorporated into the piping .......................................................................................................................18

18
19

    3.  The piping was restored to use after replacement of the allegedly defective flame arresters ....................................................................................................................20

20

H.  Conclusion ...................................................................................................................21

21

22

23

24

25

26

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page i

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page**

*Am. Hallmark Ins. Co. v. Jireh Asphalt & Concrete, Inc.*,
2021 U.S. Dist. LEXIS 195227 (W.D. Wash. Oct. 8, 2021) ........................................17-18

*DeWitt Const. Inc. v. Charter Oak Fire Ins. Co.*,
307 F.3d 1127 (9th Cir. 2002) ...................................................................................9, 15

*D.I.C.E., Inc. v. State Farm Ins. Co.*,
2012-Ohio-1563 (Ct. App. 2012) .................................................................................. 12

*Federated Serv. Ins. Co. v. R.E.W., Inc.*,
53 Wn. App. 730, 770 P.2d 654 (1989) ........................................................................ 14

*Hanson v. Mass. Bay Ins. Co.*,
2003 WI App 244, 268 Wis. 2d 294, 671 N.W.2d 864 (2003) ........................................ 12

*Harbor Ins. Co. v. Omni Constr., Inc.*,
286 U.S. App. D.C. 166, 912 F.2d 1520 (1990) ............................................................. 12

*Hayden v. Mut. of Enumclaw Ins. Co.*,
141 Wn.2d 55, 1 P.3d 1167 (2000) ............................................................................... 11

*Indian Harbor Ins. Co. v. Transform LLC*,
2010 U.S. Dist. LEXIS 94080 (W.D. Wash. Sep. 8, 2010) .............................................. 14

*Mass. Bay Ins. Co. v. Walflor Indus., Inc.*,
383 F. Supp. 3d 1148 (W.D. Wash. 2019) ....................................................................... 5

*Mut. of Enumclaw v. Archer Constr.*,
123 Wn. App. 728, 97 P.3d 751 (2004) .................................................................... 14, 15

*Phoenix Ins. v. Diamond Plastics Corp.*,
2020 WL 5993909 (W.D. Wash. Oct. 9, 2020) ............................................................... 15

*Romero v. Nev. Dep't of Corr.*,
673 F. App'x 641 (9th Cir. 2016) .................................................................................... 3

*Stewart Interior Contractors, L.L.C. v. MetalPro Indus., L.L.C.*,
2007-0251, 969 So. 2d 653 (La. App. 4 Cir Oct. 10, 2007) ............................................ 17

*St. Paul Fire & Marine Ins. Co. v. Futura Coatings*,
993 F. Supp. 1258 (D. Minn. 1998) ..........................................................................17-18

*Truck Ins. Exch. v. VanPort Homes*,
147 Wn.2d 751, 58 P.3d 276 (2002) .......................................................................... 8, 11

*United Steel Fabricators, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.*,
No. 92AP-1171, 1993 Ohio App. LEXIS 1422 (Ct. App. Mar. 11, 1993) ....................... 17

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

*Wellman & Zuck, Inc. v. Hartford Fire Ins. Co.*,
170 Wn. App. 666, 285 P.3d 892 (2012) ............................................................................ 11

*Westman Indus. Co. v. Hartford Ins. Grp.*,
51 Wn. App. 72, 751 P.2d 1242 (1988) ............................................................................ 14

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page iii

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1    Pursuant to Fed. R. Civ. P. 56, plaintiff Twin City Fire Insurance Company ("Twin

2    City") respectfully submits the following response to Lundberg, LLC's Cross-Motion for Partial

3    Summary Judgment ("Lundberg's Motion"):

4

5    **A.  Introduction**

6    Lundberg seeks coverage under Twin City policies for an underlying lawsuit filed by

7    Packaging Corporation of American ("PCA").  The lawsuit is premised on PCA's belief that

8    flame arresters, supplied by Lundberg as part of Lundberg non-condensable gas (NCG)

9    collection systems installed at several PCA paper mills, were defectively designed and

10   inadequate to stop the spread of flames.  There is no allegation of any mistake or "occurrence,"

11   and no allegations that the flame arresters ever failed to work properly or ever caused any

12   damage.  The only "property damage" alleged is for lost use of PCA's mills, and this lost use

13   arose from PCA's decision to remove and replace the flame arresters in order to prevent future

14   damage.

15   Under these allegations, there is clearly no coverage.  Accordingly, Lundberg resorts to

16   extrinsic evidence to conjure up a duty to defend.  Lundberg argues that the extrinsic evidence

17   shows that some piping may have been provided or installed by third parties and also had to be

18   cut during the replacement of the flame arresters.  The evidence being offered is neither reliable

19   nor admissible.  Nevertheless, *even if* the court considers extrinsic evidence *and* deems it

20   sufficient to establish physical damage to the piping, that damage is *still* not covered because the

21   piping is part of the Lundberg Systems and, therefore, is both "your product" and subject to the

22   "your product" exclusion.  Alternatively, and for the reasons explained further below, coverage

23   for any damage to the piping is barred by the "impaired property" exclusion.

24   Twin City incorporates into this response the arguments contained in Twin City's Motion

25   for Partial Summary Judgment ("Twin City's Motion"), Dkt. 24.  For the reasons explained in

26

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 1

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1   that motion and this response, Twin City respectfully submits that there is no duty to defend and,

2   accordingly, the court should grant Twin City's Motion and deny Lundberg's.

3

4   **B. Clarifications**

5       Before addressing the legal arguments, two clarifications are in order.  First, Lundberg

6   repeatedly claims that the underlying complaint alleges physical damage to piping supplied by

7   third parties.  *See, e.g.*, Dkt. 27, p. 7:19-20 ("PCA alleges that it had to cut through and demolish

8   piping that was installed, supplied, and designed by a third-party…"); *id.*, p. 15:2-3 ("…it alleges

9   rip and tear damages…").  In fact, the underlying complaint <u>never</u> alleges physical damage, let

10  alone physical damage to materials supplied by others.

11      Second, Lundberg implies that Twin City agrees the underlying complaint alleges

12  physical damage.  *Id.*, p. 15:6-8 ("Twin City seemingly concedes … that PCA alleges 'property

13  damage,' which is defined by the policies as, in pertinent part, '[p]hysical damage to tangible

14  property.'").  Twin City does not so "concede."  In fact, the underlying complaint contains <u>zero</u>

15  allegations of physical damage.  Rather, the complaint alleges that Lundberg's flame arresters

16  were poorly designed, seeking reimbursement for the replacement of such flame arresters to

17  *prevent future damage*.

18

19  **C. The extrinsic evidence offered by Lundberg is unreliable and inadmissible.**

20      Although the duty to defend is normally determined by looking exclusively at the

21  insurance policy and underlying complaint, Lundberg asks the court to consider extrinsic

22  evidence.  Lundberg claims the evidence establishes that: (1) PCA is pursuing Lundberg for the

23  "unintentional mismanufacturing" of flame arresters; (2) some of the piping connected to the

24  flame arresters was supplied and installed by third parties; and (3) some of this piping was cut

25  and/or discarded during the replacement of the allegedly defective flame arresters. Lundberg

26  argues that the first point satisfies the "occurrence" requirement and avoids the Engineers

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 2

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

Professional Liability exclusion.  The second and third points, it contends, avoid application of the "your product" and "impaired property" exclusions.

As shown below, the evidence being offered is not reliable.  It also fails to actually establish any of the points being asserted.  Therefore, the evidence should be stricken, and the duty to defend analysis should focus on what is actually alleged in the complaint and the policy provisions.

## 1.   The evidence offered is unreliable and should be stricken.

As discussed below, the extrinsic evidence offered by Lundberg is neither reliable nor relevant.  Accordingly, and pursuant to Fed. R. Civ. P. 56(c)(2) and (4), Twin City objects to, and moves to strike, the Declaration of Andrew Gabel and all documents attached thereto, plus the final, substantive sentence from the Declaration of Greg Wass.

The law is clear:  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) ("…the amended Rule still requires that such evidence 'would be admissible in evidence' at trial.").  Further, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Lundberg offers extrinsic evidence for the principal purpose of supporting an argument that some piping supplied and installed by others was cut and discarded during the replacement of the flame arresters.  However, as shown below, the evidence submitted is neither reliable nor probative.  Accordingly, it should be stricken.

### a.   The Declaration of Andrew Gabel and associated exhibits

Lundberg uses Mr. Gabel's declaration to submit seven exhibits, consisting of responses to discovery requests in the underlying lawsuit (Ex. A-1), plus six exhibits (Exs. A-2 – A-7) that Mr. Gabel describes as "invoices associated with its alleged replacement work."  However, the

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 3

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

discovery responses are unverified, and, with one exception,[1] the "invoices" are not invoices at all.  Further, several of the "invoices" are specifically marked "**Unauthorized**."  Dkt. 28, pp. 32-35, 37-38, 41 (emphasis in original).  The exhibits, as well as the declaration as a whole, are both unreliable and unhelpful to establish the points argued by Lundberg.  Accordingly, the declaration and exhibits should be stricken from the record.

According to Mr. Gabel, Exhibit A-1 consists of discovery responses from the underlying lawsuit.  However, the responses are not verified by Lundberg, as required.  *Compare* Dkt. 28, p. 23 (unsigned "CERTIFICATION OF RESPONDING PARTY") *with* Washington Superior Court CR 33(a) (requiring verification), *and* Fed. R. Civ. P. 33(b)(3) and (5).  Substantively, Lundberg relies on Ex. A-1 to show that PCA sought information about the flame arresters' manufacturing specifications, as well as the identity of individuals involved in the manufacturing.  This is offered to prove that PCA's lawsuit is about an "unintentional mismanufacture" rather than, as alleged in the underlying complaint, a design defect.  However, because discovery is inherently broad, the fact that PCA may have sought the identities of persons involved in the manufacture of the flame arresters in a lawsuit alleging a design defect does not prove anything, nor can it be used to contradict or supersede the allegations PCA makes in the complaint, which is that the flame arresters, as designed, do not provide any protection against flame propagation, and instead, accelerated propagation of flame through the Lundberg Systems.  Dkt. 1-1, p. 22-23, ¶ 84, *see also id*. at pp. 23-24, ¶ 93, and p. 24, ¶ 94.  Lundberg's attempt to craft an alternative theory through the use of PCA's broad discovery requests in order to circumvent the allegations in the underlying complaint, the insuring agreement, and application of the policy's exclusions is unavailing.  Indeed, the fact that the request may have been made has no tendency to make Lundberg's "unintentional mismanufacture" theory more or

---

[1] An actual invoice appears at pages 43-44 of Dkt. 28.  The invoice uses the term "DEMO" several times, but details are not provided.  There is no indication on the invoice that any piping was cut or discarded.

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 4

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1   less probable than it would be without the evidence.  Accordingly, the proffered evidence is

2   neither relevant nor admissible.  Fed. R. Evid. 401.

3   Mr. Gabel describes <u>Exhibit A-2</u> as an "invoice regard[ing] work Lundberg allegedly

4   contracted to complete at PCA's International Falls site." Dkt. 28., p. 2, ¶ 5.  Despite this

5   representation, the document is not an invoice.  "Merriam-Webster's Dictionary defines an

6   'invoice' as 'an itemized list of goods usu[ally] specifying the price and the terms of sale: Bill.'

7   Merriam-Webster's Collegiate Dictionary, 659 (11th ed. 2004).  Thus, an invoice, by definition,

8   is sent to a customer to secure payment for goods supplied . . . .".  *Mass. Bay Ins. Co. v. Walflor*

9   *Indus., Inc.*, 383 F. Supp. 3d 1148, 1164 (W.D. Wash. 2019).  None of the documents included in

10  Ex. A-2 match this description.

11  According to Mr. Gabel, Ex. A-2 "provides that third parties—*i.e.*, not Lundberg—were

12  responsible for, among other things, procuring and installing certain critical components of

13  PCA's NCG systems, including piping."  Dkt. 28., p. 2, ¶ 5.  The exhibit does not support this

14  conclusion.  The exhibit contains three pages, but notably the PCA production numbers – 1019,

15  1023, and 1030 – show PCA did not produce them as consecutive pages.  *Id*., pp. 26-28.  None

16  of the pages contains a date or identifies a location, although Lundberg represents without

17  evidence that the exhibit pertains to PCA's International Falls site.  Dkt. 27, p. 10:10-11.  Page

18  1019 is titled "Scope of Supply"; 1023 lists "Equipment Specifications"; and 1030 lists "Work

19  by Others."  There is no indication that 1030 "Work by Others" relates to 1019 "Scope of

20  Supply."  Dkt. 28, pp. 26-28.  Nor does any page indicate that any materials were actually

21  supplied or work actually performed.

22  As to <u>Exhibit A-3</u>, Mr. Gabel represents that "[t]he invoice provides that Lundberg was

23  responsible for providing flame arresters. The invoice does not discuss piping."  Dkt. 28, p. 2, ¶

24  6.  In conflict with this representation, Lundberg's motion cites to Ex. A-3 as follows: "Ex. A-3

25  (providing for the '[c]utting of existing piping' to facilitate the replacement of the Lundberg

26

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 5

1    flame arresters at the International Fall [*sic*] site)."  Dkt. 27, p. 10:12-14.  Thus, it appears, at the

2    very least, that Lundberg is not even certain about the document's nature.

3         Exhibit A-3 is not an invoice but is a single page that includes a recommendation for

4    spare parts.  Dkt. 28, p, 30.  It identifies vendor A. H. Lundberg, but it is undated and identifies

5    no location.[2]  There is no indication in the document that PCA accepted the recommendation and

6    purchased any of the spare parts listed.  More importantly, Ex. A-3 does not contain the language

7    Lundberg cites to in its motion, and it does not tend to establish the truth or falsity of any fact on

8    which Lundberg relies.  Being unreliable and irrelevant, it should be stricken from the record.

9         Lundberg's Motion represents that Exhibit A-4 is "a replacement invoice, for work done

10   at the International Falls site, [that] establishes that the same third-party piping described above

11   was cut and replaced, and that materials were demolished."  Dkt. 27, p. 11:7-9.  However, this is

12   a purchase order rather than an invoice, and it is plainly stamped "**Unauthorized**."  Dkt. 28, pp.

13   32-35 (emphasis in original).  Further, nothing in Ex. A-4 connects the work described in the

14   purchase order, *if* it was performed, with "the same third-party piping described above."  The

15   dots have not been connected.  Regardless, because Lundberg's proffered "invoice" is not an

16   invoice and was specifically marked "**Unauthorized**," it is not reliable or relevant and should be

17   stricken from the record.

18        Likewise, Lundberg relies on Exhibit A-5 to establish that "the same third-party piping

19   described above was cut and replaced, and that materials were demolished."  Dkt. 27, p. 11:8-9.

20   However, Ex. A-5, like A-4; is not an invoice and is specifically marked "**Unauthorized**."  Dkt.

21   28, pp. 37-38 (emphasis in original).  As with Ex. A-4, nothing in Ex. A-5 indicates that this

22   purchase order was ever authorized or that work was ever performed; and nothing in Ex. A-5

23   connects the work described in that purchase order to "the same third-party piping described

24

25   [2] A stamp on Ex. A-3 can be read to say "Wallula."  Dkt. 28, p. 30.  However, there is no location listed

26   on the document itself, and Lundberg claims this pertains to the International Falls site, not Wallula.  Dkt 27, p. 10:12-14.

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 6

above," as claimed by Lundberg.  Because it is unreliable and irrelevant, Ex. A-5 should be stricken from the record.

Lundberg appears to rely on Exhibit A-6 for the same purpose as it relies on Exs. A-4 and A-5.  Dkt. 27, p. 12:1-2.  However, like those exhibits, Ex A-6 is a purchase order rather than an invoice, it is specifically marked "**Unauthorized**," Dkt. 28, p. 41, there is no indication that any work described in the purchase order was actually performed, and nothing contained in the document connects it to third-party piping discussed in Lundberg's motion.  Ex. A-6 is unreliable and irrelevant, so it should be stricken from the record.

Finally, Lundberg appears to rely on Exhibit A-7 for the same purpose as it relies on Exs. A-4 – A-6, to establish that third-party piping was cut during the process of replacing the Lundberg flame arresters.  The first page of the exhibit is self-described as a "change order," not an invoice.  Dkt. 28, p. 46.  And, the document contains a signature line to indicate the change order has been "accepted and approved," but the document is unsigned.  There is no indication that any work described in Ex. A-7 was actually performed or that the work relates to the same third-party piping discussed in Lundberg's motion.  Yet while Lundberg relies on this exhibit to support the notion that the pipes were replaced or demolished, this exhibit expressly states otherwise, providing on the last page in the description of work – "and relocate, modify existing piping."  Dkt. 28, p. 49.  Again, Lundberg mischaracterizes an exhibit to support the notion that piping was replaced and/or demolished, despite no such allegation in the underlying complaint.  Because the exhibit, like all the other "invoices" submitted by Lundberg, is both unreliable and ineffective to establish any point in contention, it should be stricken from the record.

### b.   The Declaration of Mr. Greg Wass

As an initial matter, while Lundberg refers to Mr. Wass as a "Lundberg product expert," Dkt. 27, p. 25:4, Mr. Wass states he bases the declaration on his personal knowledge.  Dkt. 29, p. 1, ¶ 1.  Accordingly, it appears then that Mr. Wass is not providing expert or lay opinion testimony but claims to be testifying as to facts within his knowledge.

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 7

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

Twin City moves to strike the last substantive sentence from Mr. Wass's declaration.  It states: "At the I'Falls, Wallula, and Counce mills, I also observed discarded Lundberg flame arresters and non-Lundberg piping that was cut to remove the Lundberg flame arresters."  Dkt. 29, p. 3, ¶ 10.  Mr. Wass fails to explain how he knows that the piping he saw was "non-Lundberg" or how he knows it "was cut to remove the Lundberg flame arresters."  Is he relying on undisclosed hearsay?  Clearly, a simple observation of cut piping would not provide the observer with knowledge of *why* the piping was cut, or *who* supplied or originally installed the same (if it ever was installed).  Because Mr. Wass's statement appears to be based on either speculation or undisclosed, inadmissible hearsay, it should be stricken from the record.

>2.   The evidence offered is not admissible to evaluate the duty to defend.

Under established Washington law, extrinsic evidence is admissible to create a duty to defend (but not to eliminate the duty) if "(a) the allegations are in conflict with facts known to or readily ascertainable by the insurer or (b) the allegations of the complaint are ambiguous or inadequate."  *Truck Ins. Exch. v. VanPort Homes*, 147 Wn.2d 751, 761, 58 P.3d 276 (2002).  Here, both doors remain locked.  PCA's complaint is clear – and the extrinsic evidence is consistent – on two, individually dispositive points:  (1) the claims are based on an alleged design defect; and (2) the flame arresters and the piping are both part of the Lundberg Systems, which are Lundberg products pursuant to the policy terms.  Absent ambiguity or conflict on these points, there is no possibility of coverage, and no basis to consider extrinsic evidence.

**D.  There are no allegations or evidence of an "occurrence."**

To satisfy the initial requirement of an "occurrence," Lundberg relies entirely on the argument that PCA is pursuing claims for the "unintentional mismanufacture of a product."  Dkt. 27, p. 17:1-8.  Lundberg insists that the underlying complaint is "replete with mismanufacturing allegations."  *Id.*, p. 17:9-10.  In fact, PCA's complaint never uses the terms

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 8

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1  "mismanufacturing," "mismanufactured," or any iteration thereof.  Rather, it presents a dispute

2  over whether the Lundberg flame arresters were properly *designed*.

3      While the underlying complaint repeatedly and specifically identifies alleged defects in

4  the design of the flame arresters,[3] not once does it identify a manufacturing error.  The complaint

5  describes the flame arresters as "not reasonably safe as designed," Dkt. 1-1, p. 25, ¶ 101, and

6  "*inherently* unsafe."  *Id.*, p. 26, ¶ 108 (emphasis added).  These are design allegations; there is <u>no</u>

7  suggestion that the flame arresters were unsafe because of a manufacturing mistake.

8      There are multiple allegations that Lundberg manufactured the flame arresters and that

9  the flame arresters were defective as manufactured.  However, this is insufficient to establish an

10  "unintentional mismanufacture," as both parties agree is required under *DeWitt Const. Inc. v.*

11  *Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1133 (9th Cir. 2002).  PCA clearly alleges a design

12  flaw.  Naturally, manufacturing any product according to a defective design will result in a

13  defective manufactured product.

14      PCA's complaint concerns 57 flame arresters supplied by Lundberg over a period of

15  "decades" for Lundberg Systems installed at five different PCA mills across the United States.[4]

16  Lundberg concluded, based on multiple tests[5] which "<u>each and every Lundberg Flame Arrester</u>

17  <u>failed</u>," Dkt. 1-1, p. 23, ¶ 91 (emphasis in original), that all of the flame arresters were defective

18

19  [3] *See, e.g.*, Dkt. 1-1, p. 21, ¶ 74 (an inspection found "an unanticipated gap between the external housing
and the internal cylindrical device … a larger than anticipated gap around the 6" Test Flame Arrester's

20  internal cylindrical device … larger openings than competitors' designs."); pp. 23-24, ¶93 ("Lundberg
Flame Arresters act as flame accelerators, not flame arresters, and are the exact opposite in performance

21  and efficacy from a safety device. The results of the testing are stark and demonstrate the unreasonably
dangerous nature of the Lundberg Flame Arresters.").

22  [4] Dkt. 1-1, p. 15; ¶ 47 (identifying mills, locations and number of flame arresters); p. 16, ¶ 53 ("Lundberg
represented to PCA for decades that Lundberg Flame Arresters were well-designed safety devices, were

23  both safe and effective, met the highest standards in the industry, and would perform their intended
purpose: to stop the propagation of flames in the Lundberg Systems…."); p. 19, ¶ 68 (confirming that

24  PCA periodically purchased "new or replacement Lundberg Flame Arresters."); p. 22, ¶ 84 ("Each of the
57 Lundberg Flame Arresters that had been installed at the PCA Mills were promptly disassembled and

25  removed from the PCA Mills….").

26  [5] Dkt. 1-1, p. 20, ¶ 72 (one new flame arrester tested in 2018); p. 23, ¶ 88 (in 2019, Lundberg "test[ed]
multiple Lundberg Flame Arresters of various sizes that had been in service.").

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 9

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

and had to be removed.  *Id.*, p. 22, ¶s 83-84.  The only fair reading of the complaint is that the flame arresters were removed due to a perceived, systemic design problem; not because, *e.g.*, these 57 flame arresters had manufacturing aberrations,[6] deviated from the flame arresters' design,[7] or had defective materials.  There are no such allegations.  The underlying complaint does not allege an "unintentional mismanufacture"; it describes the repetitive, intentional manufacture of a product that had been defectively designed.

Lundberg points to discovery requests in the underlying matter asking Lundberg to identify individuals involved in the manufacturing of the flame arresters.  However, discovery is inherently broad.  A request to identify persons involved with the manufacture of the flame arresters is perfectly permissible in a case, like PCA's, alleging a defective design.  Accordingly, the fact that the request was made tells us virtually nothing.  It certainly does not contradict the underlying complaint's focus on the design.

Perhaps more importantly, if the complaint is about an "unintentional mismanufacture," then why do we have no idea – two years after the underlying lawsuit was filed – about the nature of the alleged mismanufacture?  What allegedly went wrong in the manufacturing process?  Were the designs inadvertently not followed in some or all cases?  Did a machine malfunction?  Was a step skipped?  Where is *that* extrinsic evidence?  After all, if we were going to look toward extrinsic evidence, we must consider its context, and we should also consider the implications of the *lack* of evidence two years into the underlying lawsuit.

Absent an allegation or evidence suggesting a mistake in the manufacturing process, a duty to defend could only be based on speculation.  The clear essence of the complaint is a

---

[6] Consider, *e.g.*, Dkt. 1-1, p. 23, ¶ 93: "The 2019 Test showed that it is more dangerous to install a Lundberg Flame Arrester in a Lundberg System than it is to simply install a straight pipe of the same size." *Id.*  If PCA was alleging an "unintentional mismanufacture," then this paragraph would read, "… more dangerous to install a defectively manufactured Lundberg Flame Arrester…".  There are <u>zero</u> allegations like this in the underlying complaint.

[7] Paragraph 63 of the underlying complaint, Dkt. 1-1, pp. 18-19, rule outs this possibility, alleging that "Lundberg… refused to provide any actual design and manufacturing specifications."

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 10

design defect, and all allegations, discovery requests, and evidence is consistent with this focus. Accordingly, there can be no duty to defend. *Compare Truck Ins. Exch. v. VanPort Homes*, 147 Wn.2d at 774 ("In *Hayden* [*v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 66, 1 P.3d 1167, 1173 (2000)], this court held that the loss of use exclusion clearly and unambiguously applied and supported a denial of the duty to defend where the gravamen of the complaint was the failure of the 'grafts or grafting work to live up to the parties' expectations.'") *with Wellman & Zuck, Inc. v. Hartford Fire Ins. Co.*, 170 Wn. App. 666, 676, 285 P.3d 892, 898 (2012) ("The reading that [appellant] urges us to adopt—that general allegations of water damage and construction defects implicates Otis's elevator installation—lies beyond the range of conceivable reasonable interpretations and is simply speculative.").

The *only* damage at issue – alleged or otherwise – arose from PCA's conscious decision to remove intentionally manufactured flame arresters because of a perceived design flaw.  There is no accident to speak of, no occurrence, and no potential for coverage.

### E.  The Engineers Professional Liability exclusion bars all coverage.

The Engineers Professional Liability exclusion bars coverage for damages "arising out of the rendering of or failure to render any professional services by you or any engineer … who is either employed by you or performing work on your behalf in such capacity."  Dkt. 1-2, p. 57. PCA's Complaint specifically identifies the Lundberg System as an "engineered system," Dkt. 1-1, p. 10, ¶ 24, and repeatedly emphasizes Lundberg's status as an "engineering" firm. *See, e.g.*, *id.*, ¶s 9, 20, 61, 134, 152, 159, 185, and 192.  Most importantly, the central allegation of PCA's complaint is that the flame arresters, an engineered product, were improperly designed.

Lundberg argues that the Engineers Professional Liability exclusion does not defeat the duty to defend because it does not apply to "non-professional services such as assembly, installation, and manufacturing."  Dkt. 27, p. 19:14-16.  However, despite a 206-paragraph complaint and underlying litigation spanning two years, there are no allegations or evidence of a mistake in the assembly, installation or manufacture of the flame arresters.  PCA's suit is

1    exclusively about a design defect.  Accordingly, the Engineers Professional Liability exclusion

2    applies to bar the duty to defend.  *See, e.g.*, *D.I.C.E., Inc. v. State Farm Ins. Co.*, 2012-Ohio-

3    1563, ¶ 43 (Ct. App. 2012) ("…the professional services exclusion applied to any claim for the

4    design of a coke oven battery, and therefore, INA had no duty to defend."); *Harbor Ins. Co. v.*

5    *Omni Constr., Inc.*, 286 U.S. App. D.C. 166, 912 F.2d 1520, 1525 (1990) (holding that similar

6    exclusion "unambiguously excludes coverage of a loss caused by the rendering of a professional

7    engineering service, regardless of whether it is performed by a firm in the course of providing

8    related non-professional work."); *Hanson v. Mass. Bay Ins. Co.*, 2003 WI App 244, ¶14, 268

9    Wis. 2d 294, 671 N.W.2d 864 (2003) (unpublished) ("The only reasonable reading of Hanson's

10   complaint is that the alleged negligence of Ruekert pertained to its role as engineer on the

11   Waterville Road project….  Contrary to Ruekert's arguments, Hanson's complaint cannot

12   reasonably be understood to allege that Ruekert negligently performed actual construction work.

13   The allegations therefore fall within the specific exclusions for professional services.").

14

15       **F.  The "Your Product" exclusion bars all coverage.**

16       Lundberg's sole argument to avoid the "your product" exclusion is *Lundberg's* assertion

17   that some piping supplied and installed by third parties may have been cut during the

18   replacement of the flame arresters.  However, *even if* this occurred, the exclusion still applies

19   because the piping qualifies as "your product" under the policy, regardless of who supplied or

20   installed it, because it was incorporated into the larger "Lundberg Systems" designed by

21   Lundberg and purchased by PCA.  Lundberg's attempt to limit Lundberg's "product" to the

22   flame arresters to support its assertion that piping was not part of its product fails to acknowledge

23   numerous allegations in the underlying complaint that detail the fact that the flame arresters were

24   part of the larger Lundberg Systems, a non-condensable gas collection system, which included

25   piping.  Dkt. 1-1, p. 10, ¶ 25; p. 16, ¶ 51; Dkt. 29, pp. 1-2, ¶ 4.

26

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 12

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

The parties agree on the applicable law:  the "your product" exclusion defeats all coverage if the piping was incorporated into Lundberg's product.  Dkt. 27, p. 23:7-10 ("Under Washington law, the 'Your Product' exclusion applies to instances of damage to third-party products *only* when the third-party work or products are incorporated into, or become components of, the policyholder's work or products.") (emphasis by Lundberg).

The allegations could not be clearer.  As shown by the following excerpts from the underlying complaint, the piping is indisputably part of, and incorporated into, the Lundberg Systems, which are expressly Lundberg's "product":

- "… the Lundberg System removes harmful and dangerous byproducts from the manufacturing processes of the pulp mill system through *a series of connected pipes* that ultimately lead to an incinerator." Dkt. 1-1, p. 10, ¶ 25 (emphasis added).

- "Flame arresters are devices *installed in a gas piping system,* such as a Lundberg System…". *Id.*, p. 12, ¶ 36 (emphasis added).

- "The Lundberg Flame Arresters' external housing is installed directly into *the Lundberg System piping*." *Id.*, p. 16, ¶ 51 (emphasis added).

- "PCA was harmed by the negligence of the Lundberg Defendants in that the *Lundberg Systems and Lundberg Flame Arresters* were not reasonably safe as designed." *Id.*, p. 25, ¶. 99 (emphasis added).

- "PCA now seeks to recover all costs associated with the Lundberg Defendants' *defective products, including the Lundberg Systems* and Lundberg Flame Arresters." *Id.*, p. 24, ¶ 96 (emphasis added).

All known evidence[8] and case law[9] supports the conclusion that, in every instance, the piping was a component of a larger Lundberg System and, therefore, qualifies as "your product."

---

[8] *See, e.g.*:

- Dkt. 29, Declaration of Mr. Greg Wass, pp. 1-2, ¶ 4: "One of Lundberg's products is a flame arrester, which is used in and is a component of non-condensable gas collection ('NCG') systems. *NCG systems are intricate networks of pipes* and other materials designed to collect, transport, and safely treat or dispose of gases that are often created during manufacturing process….". (emphasis added).
- *Id.*, p. 2, ¶ 5: "Flame arresters are often welded into NCG systems; *i.e.,* welded to surrounding pipes affixed to either end of the flame arrester."
- Dkt. 28, Declaration of Gabel, p. 26: the first item on the list is "*System* Engineering" (emphasis added).

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1    Lundberg submits extrinsic evidence – the Declaration of Mr. Greg Wass – to contend

2  that the International Falls and Wallula systems were not "turnkey" projects and "detailed

3  designs about the piping" were not provided.  Of course, to argue that "detailed designs" were

4  not provided is to admit that "designs" were provided, consistent with PCA's numerous

5  allegations that, in all cases, the flame arresters were provided as part of Lundberg-designed

6  "Lundberg Systems."  *See, e.g.*, Dkt. 1-1, p. 15, ¶ 48 ("PCA hired Lundberg to design,

7  manufacture, assemble, install, and maintain Lundberg Systems with Lundberg Flame

8  Arresters…").  There is no indication, anywhere, that PCA's claim includes flame arresters sold

9  for non-Lundberg systems.

10

11

- Dkt. 1-1, p. 40: "Lundberg Associates has been instrumental in the design and supply of LVHC NCG systems for U.S. mills…. Each system was individually tailored…".
- *Id*., p. 41: "By arranging the piping such that the elevation differential between the firing nozzle and the rupture disc is in excess of the rupture disc burst pressure, a minimum safety factor is built into the system."
- *Id.*, p. 52: "Piping systems must be further designed so that condensate is not allowed to collect in the piping."
- *Id.*, p. 54: "The fan …. allowed the vast majority of the ***system piping*** to remain under vacuum conditions so that any leaks would further dilute the already low concentration gases…". (emphasis added).
- *Id.*, p. 85: "The flammability of many of these gases presents the possibility of flame propagation in the collection ***system's pipe lines***." (emphasis added).
- *Id.*, p. 105:  An industry paper by Lundberg contains an entire section devoted to "Piping Design and Layout."

[9]  *See Indian Harbor Ins. Co. v. Transform LLC*, 2010 U.S. Dist. LEXIS 94080, at *18 (W.D. Wash. Sep. 8, 2010) ("… both the finished modules and the materials supplied to Transform for manufacture are the 'product' of Transform."); *see also Mut. of Enumclaw v. Archer Constr.*, 123 Wn. App. 728, 733-34, 97 P.3d 751, 755 (2004) ("A building constructed by a builder is its product" even when work is performed by others); *Federated Serv. Ins. Co. v. R.E.W., Inc.*, 53 Wn. App. 730, 735, 770 P.2d 654, 657 (1989) ("…the insured's product was the entire building…").

The fact that the system piping and the flame arresters may constitute separate components is irrelevant. *See, e.g.*, *Westman Indus. Co. v. Hartford Ins. Grp.*, 51 Wn. App. 72, 79-80, 751 P.2d 1242, 1247 (1988) ("…insurance companies around the nation revised the standard products exclusionary language to ensure that coverage was excluded for property damage to the insured's entire product, not just the component out of which the damages arose.").  It also does not matter that Lundberg's principle product was the engineering and design of the NCG systems or that Lundberg provided PCA with services in addition to products.  *Id.*at 81 ("…a products exclusion applies to damages to an insured's product regardless of whether the insured's business also involves the provision of services.")

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 14

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

In arguing that the "your product" exclusion somehow does not apply to the Lundberg System piping, Lundberg relies on cases where the work of one subcontractor damaged the work of another subcontractor, or the construction site.[10]  These cases are distinguishable as each involved allegations of damage to property or work of another, where here, PCA's underlying complaint does not allege any third-party damage whatsoever, either from the use of the Lundberg Systems nor in the process of replacing the Lundberg flame arresters.  PCA does not allege that that piping was cut, replaced, or demolished as part of the process to replace the flame arresters.  Rather, Lundberg relies on extrinsic evidence to support its assertion that piping was damaged.  However, as discussed *supra* in Section C, even such extrinsic does not support the proposition that piping was damaged.  In addition, and more importantly, the replacement of the allegedly defectively designed flame arresters did <u>not</u> damage the PCA Mills or the work of a different subcontractor; rather, any alleged damage (which is only alleged *by Lundberg* not PCA) is to the very Lundberg Systems which PCA had purchased.  The whole system is Lundberg's product, regardless of who supplied or installed each individual component.  Accordingly, absent any allegations or evidence of physical damage beyond the Lundberg Systems themselves, the cases cited by Lundberg do not apply, and the "your product" exclusion bars all coverage.  *See, e.g.*, *Mut. of Enumclaw v. Archer Constr.*, 123 Wn. App. 728, 736, 97 P.3d 751 (2004) ("…the alleged defective product--the building--falls within the policy exclusion for products of the insured.").

---

[10] *See, e.g.*, Dkt. 27, p. 16:13-17 ("In *Phoenix*, a non-specific allegation that '***other*** property at the Project site was physically damaged during [the] rip and tear' of defective piping was enough. No. 19-cv-1983-JCC, 2020 WL 5993909, at *1–3. In *Dewitt*, the court found property damage upon a record that the 'work of ***other*** subcontractors . . . had to be removed and destroyed as a result of [the] installation of defective piles.' 307 F.3d at 1134.") (emphasis added).

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 15

**Gordon & Polscer, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

**G.  The "Impaired Property" exclusion bars all coverage.**

If the court concludes that (1) there is admissible evidence of damage to system piping and (2) that piping does not qualify as "your product," then the court must consider whether coverage is barred by the Damage to Impaired Property Or Property Not Physically Injured exclusion.

Subject to an exception not applicable here, the "impaired property" exclusion bars coverage for:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

The term "impaired property" is defined to mean "tangible property, other than 'your product' or 'your work' that cannot be used or is less useful because:

> **a.**  It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or
> **b.**  You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by the repair, replacement, adjustment or removal of 'your product' or 'your work', or your fulfilling the terms of the contract or agreement."

Dkt. 1-2, pp. 15, 28.

Lundberg argues that the "impaired property" exclusion does not apply to the piping because it does not qualify as "impaired property."  Lundberg contends that: (a) the flame arresters were not incorporated into the piping; and (b) the piping could not be restored to use. As shown below, both contentions fail on their individual merits.  Further, the argument fails because the "impaired property" exclusion applies to more than just "impaired property"; it also applies to "property that has not been physically injured."

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 16

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1

       1.  <u>The exclusion applies because the flame arresters caused no actual damage and their</u>
<u>replacement was purely preventative.</u>

2

     The analysis begins from the undisputed point that there are no allegations or evidence

3

that the allegedly defectively designed flame arresters caused *any* physical damage to anything.

4

The only "property damage" alleged in the underlying complaint is the lost use of the PCA mills

5

during the replacement of the flame arresters, not because of the use of Lundberg's flame

6

arresters or the Lundberg System.  Even accepting as true Lundberg's assertion that piping was

7

cut despite the lack of any allegation to that effect in the underlying complaint, Lundberg

8

acknowledges that such alleged cut piping occurred solely as a result of PCA's decision to

9

replace Lundberg's flame arresters, and Lundberg does not dispute that PCA's replacement of

10

the flame arresters was *purely* preventative.  There is no allegation or evidence that the allegedly

11

defectively designed flame arresters had themselves caused any actual damage.

12

     At the time of the replacement project, the piping was "property that has not been

13

physically injured."  Accordingly, the "impaired property" exclusion would bar coverage for *any*

14

"property damage," including physical damage, to that piping.  Coverage cannot then be created

15

by an intentional repair process.  Because the piping was not physically injured by the flame

16

arresters, but by their preventative replacement, the "impaired property" exclusion applies.

17

     This interpretation of the "impaired property" exclusion is confirmed by case law from

18

multiple jurisdictions[11] and was most recently confirmed by this court in *Am. Hallmark Ins. Co.*

19

20

---

21

[11] *See, e.g.*, *United Steel Fabricators, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.*, No. 92AP-1171, 1993
Ohio App. LEXIS 1422, at *8 (Ct. App. Mar. 11, 1993) ("This definition of impaired property and

22

exclusion (m) seems to exclude insurance coverage for the consequential damage which occurred when
Cianbro repaired the welds."); *Stewart Interior Contractors, L.L.C. v. MetalPro Indus., L.L.C.*, 2007-

23

0251, 969 So. 2d 653, 664-65 (La. App. 4 Cir Oct. 10, 2007) ("[W]e hold that, *to the extent the evidence*
*shows damages arising out of, or solely incidental to, the removal and/or repair of the allegedly defective*

24

*steel studs, the Nautilus policy clearly excludes coverage* for these damages under the 'impaired property'
exclusion. But, to the extent Stewart has alleged and can prove damages for loss of use, and property

25

damages caused by the steel studs that were occasioned to property other than the steel studs and
unrelated to their removal and/or repair, then the 'impaired property' exclusion does not apply to preclude

26

coverage for these specific items of damages.") (emphasis added); *St. Paul Fire & Marine Ins. Co. v.*
*Futura Coatings*, 993 F. Supp. 1258, 1262 (D. Minn. 1998) ("The 'impaired property' exclusion applies

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1   *v. Jireh Asphalt & Concrete, Inc.*, No. C21-0365-JCC, 2021 U.S. Dist. LEXIS 195227, at *8

2   (W.D. Wash. Oct. 8, 2021):

3

4       "[T]he 'impaired property exclusion' excludes from coverage claimed
        damages based on loss of use, **or repair work**, resulting from Jireh's

5       faulty work that did not actually damage the property. (Dkt. No. 13 at 4.)
        A significant portion of Esplanade's complaint appears to allege

6       damages for repairing and duplicating Jireh's work on the decks and
        landings—not any physical property damage from Jireh's work. Because

7       Esplanade's claims seek to recover costs of *preventing* physical damage
        that has not yet happened, rather than addressing damage that has, the

8       impaired property exclusion applies. American Hallmark thus has no
        duty to defend or indemnify Jireh against those claims."

9   (italics in original; bold and underlining added).  When a product does not "actually damage"

10  anything, the "impaired property" exclusion bars coverage for damages from purely preventative

11  repair work.  That is exactly what occurred here.  The Lundberg flame arresters, which are part

12  of the Lundberg Systems, did not cause any damage.  Rather, the underlying complaint is clear

13  that PCA learned that the Lundberg flame arresters were defectively designed because of a

14  Process Safety Management review at each of the PCA Mills to confirm, *inter alia*, the flame

15  arresters' effectiveness; it was not as a result of some accident, explosion, fire, or any other

16  damage to the PCA Mills caused by the flame arresters.  Dkt. 1-1, p. 17, ¶ 57; p. 22, ¶ 81.

17  Accordingly, the recent decision by this Court and others is dispositive that the implied property

18  exclusion precludes coverage for the underlying complaint.

19      2.   "Incorporation" is not required, but the flame arresters *were* incorporated into the

20           piping.

21      Lundberg devotes significant ink, Dkt. 27, pp. 21:4-22:8, to the proposition that the

22  piping cannot qualify as "impaired property" because it does not "incorporate" the flame

23

24

25  _____

26  here, and precludes coverage for all allegations in the underlying action relating to the cost of removing
    and replacing the Futura products in Connecticut Light and Power's basins….").

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 18

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

arresters.  However, as discussed above with respect to the "your product" exclusion, the piping

very clearly *does* surround and "incorporate" the flame arresters.[12]

Moreover; "incorporation" is not required.  Per the policy's definition, there are two

categories of "impaired property":

> …tangible property, other than "your product" or "your work" that cannot be
> used or is less useful because:
>
> **a.**  It incorporates "your product" or "your work" that is known or thought to
> be defective, deficient, inadequate or dangerous; **or**
>
> **b.**  You have failed to fulfill the terms of a contract or agreement…;

Dkt. 1-2, p. 28 (emphasis added).  From this definition, it is readily apparent that "incorporation"

is not required.  Rather, "impaired property" also includes "tangible property … that cannot be

used or is less useful because … [y]ou have failed to fulfill the terms of a contract or agreement."

Here, PCA repeatedly alleges that Lundberg failed to fulfill its agreement to provide a working

Lundberg System with working flame arresters.  *See, e.g.*, Dkt. 1-1, p. 4, ¶ 5 ("none operated as a

safety component as represented by the Lundberg Defendants"); p. 10, ¶ 24 ("PCA hired

Lundberg to design, manufacture, assemble, and install Lundberg Systems that, among other

things, safely processed and removed NCGs from the PCA Mills.").

Because the piping meets the second definition of "impaired property," "incorporation" is

not required.  Even if it were, the piping was incorporated into Lundberg's product (*i.e.*, the

Lundberg Systems).  Accordingly, Lundberg's "incorporation" argument fails on both accounts,

and coverage is barred.

---

[12] *See also* Dkt. 1-1, p. 10, ¶ 26 ("most importantly, the [Lundberg System] must incorporate safety features which will allow easy operation of the system…."); p. 14, ¶ 46 ("A single Lundberg System will typically have multiple Lundberg Flame Arresters installed at various locations, and it is common for the single Lundberg System to have multiple sized Lundberg Flame Arresters incorporated."); p. 31, ¶ 155 ("At minimum, PCA justifiably and reasonably believed that the Lundberg Defendants had tested the Lundberg Flame Arresters prior to integrating them as a safeguard in the highly combustible Lundberg System given how many representations Lundberg made regarding the need for Lundberg Systems to incorporate properly operating flame arresters.").

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

3.   <u>The piping was restored to use after replacement of the allegedly defective flame arresters.</u>

Lundberg focuses its arguments on individual piping segments that *may* have been discarded during the replacement process.  However, as demonstrated throughout this brief and in Twin City's motion for summary judgment, the piping was part of larger Lundberg Systems. It is the Lundberg Systems that could not function properly due to the defectively designed flame arresters; not the piping.  The piping could still transport gas, but the *system* could not be operated safely.  PCA's complaint is perfectly clear:

- "Lundberg Systems are critical for the safe operation of paper and pulp mills." Dkt. 1-1, p. 9, ¶ 23.

- "In order to remove the heavy metal housings and physically remove the internal cylindrical devices, all manufacturing at the mill must be stopped and the *Lundberg System must be taken offline*." Dkt. 1-1, p. 16, ¶ 51 (emphasis added).

-  "PCA spent millions of dollars to purchase the Lundberg Systems, to test the Lundberg Flame Arresters that were defective as designed, manufactured, sold, and installed by the Lundberg, to purchase replacements for the defective Lundberg Flame Arresters, and to stop manufacturing to complete the labor needed to install the new certified flame arresters in the Lundberg Systems. *All of these costs were brought about by the safety risks posed by the defective Lundberg Systems* and concealed by Lundberg." *Id.*, p. 24, ¶ 94 (emphasis added).

PCA shut down its mills because it did not believe it could rely on the Lundberg Systems to safely eliminate dangerous gasses.  The proper question, then, is whether the Lundberg Systems could be restored to use, not whether some incidental piping may have been discarded in the process.

In summary, in the event the "your product" exclusion does not apply, the "impaired property" exclusion bars all coverage for potential damage to the Lundberg System piping because neither the Lundberg Systems nor the piping were actually injured by the flame arresters, and the systems were restored to use after the Lundberg flame arresters were removed.

1

**H.  Conclusion**

2      The underlying complaint does not allege any "occurrence" or any physical injury to

3   tangible property.  There are allegations of design errors but no allegations of manufacturing

4   mistakes.  There is an allegation of lost use, but the parties agree that coverage for lost use is

5   barred by the "impaired property" exclusion.  Without any allegation of an "occurrence" or

6   potentially covered "property damage," there is no duty to defend.

7      Should the court consider Lundberg's extrinsic evidence, and be persuaded by the same,

8   then the court must evaluate coverage for physical damage to system piping during preventative

9   repairs.  The underlying complaint alleges that the piping is part of the Lundberg System, and

10   that the Lundberg System is, unsurprisingly, Lundberg's product.  The extrinsic evidence is

11   consistent.  Accordingly, the "your product" exclusion applies, and coverage is barred.  If the

12   "your product" exclusion does not apply, then the "impaired property" exclusion applies.

13      In conclusion, there is no duty to defend based on the allegations alone, and the extrinsic

14   evidence that has been offered, even if admissible, does not change the result.  Accordingly,

15   Twin City respectfully requests that Lundberg's Cross-Motion for Partial Summary Judgment be

16   denied.

17

18      DATED this 2nd Day of November, 2021.

19                                     Respectfully submitted,

20                                     GORDON & POLSCER, LLC

21      By: *s/ Brian C. Hickman*
                                        Brian C. Hickman, WSBA No. 50089
22                                     9020 SW Washington Square Rd., Suite 560
                                        Tigard, OR 97223
23

24                                     *Attorneys for Plaintiff Twin City Fire Insurance*
                                        *Company*

25

26

TWIN CITY'S RESPONSE TO CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 21

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922