THE HONORABLE JOHN C. COUGHENOUR
NOTING DATE: NOVEMBER 12, 2021

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |  |
|---|---|---|
| TWIN CITY FIRE INSURANCE COMPANY, | ) ) ) | NO.  2:20-cv-01623-JCC |
|  | ) ) | TWIN CITY FIRE INSURANCE COMPANY'S REPLY IN SUPPORT OF |
| Plaintiff, | ) ) | MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | ) ) |  |
| LUNDBERG, LLC, | ) ) | ***ORAL ARGUMENT REQUESTED*** |
| Defendant. | ) ) ) |  |

TWIN CITY'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1

**TABLE OF CONTENTS**

2

**Page**

3
TABLE OF AUTHORITIES ................................................................................................ii

4
A.  Introduction ................................................................................................................1

5
B.  Lundberg's extrinsic evidence should be excluded .........................................2

6
C.  There is no allegation or evidence of an "occurrence" ...................................2

7
D.  Alternatively, the Engineers' Professional Liability Exclusion bars all coverage..............4

8
E.  The "your product" exclusion bars all coverage for damage to the system piping ............5

9
F.  Alternatively, the "impaired property" exclusion bars coverage for any damage to the

10
system piping ..............................................................................................................7

11
1.  The system piping qualifies as property "that has not been physically injured" .........8

12
2.  The system piping also qualifies as "impaired property." .........................................10

13
G.  Conclusion ...............................................................................................................12

14

15

16

17

18

19

20

21

22

23

24

25

26

TWIN CITY'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page i

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page**

*Am. Hallmark Ins. Co. v. Jireh Asphalt & Concrete, Inc.*,
2021 U.S. Dist. LEXIS 195227 (W.D. Wash. Oct. 8, 2021) ........................................ 10, 11

*Indian Harbor Ins. Co. v. Transform LLC*,
2010 U.S. Dist. LEXIS 94080 (W.D. Wash. Sep. 8, 2010) ............................................. 6, 7

*Mut. of Enumclaw v. Archer Constr.*,
123 Wn. App. 728, 97 P.3d 751 (2004) ...................................................................... 6

*Stewart Interior Contractors, L.L.C. v. MetalPro Indus., L.L.C.*,
2007-0251, 969 So. 2d 653 (La. App. 4 Cir Oct. 10, 2007) ............................................. 10

*Yakima Cement Prods. Co. v. Great Am. Ins. Co.*,
93 Wn.2d 210, 608 P.2d 254 (1980) ......................................................................... 4

TWIN CITY'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page ii

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1    Twin City Fire Insurance Company ("Twin City") respectfully submits the following

2    Reply in Support of its Motion for Partial Summary Judgment, Dkt. 24:

3

4    **A. Introduction**

5    Lundberg seeks coverage for an underlying lawsuit by Packaging Corporation of

6    America ("PCA"). However, PCA's complaint alleges neither an occurrence nor any potentially

7    covered property damage. Accordingly, Twin City's Motion requested an award of summary

8    judgment confirming it has no duty to defend Lundberg against PCA's complaint. In response,

9    Lundberg has fought strenuously, attacking every legal argument and submitting extrinsic

10   evidence to suggest that, despite the lack of any allegations of physical damage, physical damage

11   indeed occurred.

12   Unfortunately for Lundberg, the evidence it submitted is neither reliable nor admissible.

13   Twin City respectfully requests that it be stricken.

14   Regardless of whether the evidence is admitted, Lundberg has a bigger problem. The

15   extrinsic evidence it submitted suggests only one type of physical damage: the cutting of system

16   piping during the replacement of the flame arresters. That damage, *even if it happened,* is clearly

17   barred from coverage.

18   First and most importantly, we know from PCA's complaint that the piping is part of the

19   Lundberg Systems, which are explicitly a Lundberg product. The extrinsic evidence is

20   consistent. Because the piping is part of Lundberg's product, the "your product" exclusion

21   applies, and all damage to that piping – if any – is barred from coverage. Accordingly, there can

22   be no duty to defend *even if* extrinsic evidence is considered.

23   Second, we also know from the allegations (and all available evidence) that the piping

24   had not been injured prior to the replacement of the flame arresters, a fact which Lundberg does

25   not dispute. Moreover, after the flame arresters were replaced, the systems and their piping were

26   restored to use. Thus, if the "your product" exclusion somehow does not apply, then the

TWIN CITY'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 1

1  "impaired property" exclusion does apply.  Accordingly, there is no potential coverage for any

2  damage that may have occurred to the piping, and summary judgment should be awarded in

3  Twin City's favor.

4        Twin City incorporates into this Reply all arguments presented in its Motion for Partial

5  Summary Judgment, Dkt. 24, and Response to Lundberg's Cross-Motion, Dkt. 32.

6

7  **B.  Lundberg's extrinsic evidence should be excluded.**

8        For the reasons set forth in Twin City's Response, Dkt. 32, the extrinsic evidence

9  submitted by Lundberg is neither reliable nor relevant.  Accordingly, it should be stricken from

10  the record and should not be considered as part of the duty to defend analysis.

11        The remainder of this Reply addresses the fact that *even if* the Court admits Lundberg's

12  extrinsic evidence *and* considers it sufficient to establish that some piping was physically

13  damaged during the replacement of the flame arresters, no coverage exists.

14

15  **C.  There is no allegation or evidence of an "occurrence."**

16        In order to fulfill the initial requirement of an "occurrence," Lundberg continues to rely

17  on the argument that the underlying complaint alleges "inadvertent mismanufacturing."  The

18  primary difficulty with this argument is that Lundberg cannot identify the alleged

19  mismanufacture, either through PCA's allegations or through extrinsic evidence.  After two years

20  of litigating the underlying matter, Lundberg cannot even point to *any* arguments or statements

21  by PCA suggesting that a manufacturing error has been alleged.

22        As pointed out in Twin City's Motion, Dkt. 30, pp. 12-14, and Response, Dkt. 32, pp. 13-

23  16, the underlying complaint alleges *design defects*, and contends that the design problem

24  impacted *every* flame arrester purchased from Lundberg.  In contrast, there is no suggestion that

25  there was a mistake in the manufacturing process.

26        Lundberg points to allegations that the flame arresters were, *e.g.*, "defective as designed,

TWIN CITY'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 2

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1   manufactured, sold, and installed" or "failed to … serve the basic purpose for which [they]

2   w[ere] designed, manufactured, purchased, and installed." *See* Dkt. 30, pp. 7-8 (quoting Dkt. 1-

3   1, ¶s 5, 60, 82, 94, 97 and 139).  However, every time such "manufacturing" allegations appear,

4   they follow an allegation of defective design.

5           As an example, Lundberg selectively quotes from paragraph 60 of the underlying

6   complaint, Dkt. 1-1, p. 18.  That paragraph alleges, in full:

> "When engineers not associated with Lundberg performed a more detailed
> inspection, they noted that **the Lundberg Flame Arresters had an
> atypical internal design** and that *internal components of the Lundberg
> Flame Arresters did not appear to be manufactured to appropriate
> tolerances (e.g., the gaps were much larger than anticipated)*. As a result,
> PCA began to gather more information on the design, manufacturing,
> testing, and certification of the Lundberg Flame Arresters."

11   (emphasis added).  Lundberg relies on the italicized portion of this paragraph to support its

12   "inadvertent mismanufacturing" theory, but it ignores the prior, bolded portion which links the

13   "manufactured to appropriate tolerances" phrase with "atypical internal design."

14          We know that paragraph 60 (like all others) alleges a defective design rather than a

15   "mismanufacture" because paragraph 63 of the underlying complaint, which is incorporated into

16   every claim for relief, makes clear that Lundberg "refused to provide any actual design and

17   manufacturing specifications." Dkt. 1-1, pp. 18-19.  Accordingly, the statement that internal

18   components of the flame arresters "did not appear to be manufactured to appropriate tolerances,"

19   cannot be a reference to a discrepancy between the design of the flame arresters and their as-built

20   conditions.  PCA did not have Lundberg's design to make this comparison.  Rather, as made

21   clear by the context, PCA is referring to "appropriate tolerances" as suggested by other

22   competitor's designs. *See also* Dkt. 1-1, p. 21, ¶ 74 ("The internal cylindrical device also had

23   larger openings than competitors' designs.").

24          Naturally, a product that is defectively designed is also going to be defective when

25   manufactured.  In fact, if you have a defective design, *every* product you manufacture will be

26   defective.  That is exactly what has been alleged here. Dkt. 1-1, p. 22, ¶s 83-84.

TWIN CITY'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 3

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

In contrast, a "mismanufacture" occurs when the product as-built does not match the product as-designed. Perhaps equipment failed to operate properly, or someone skipped a step or accidentally used the wrong materials; some error occurred in the manufacturing process such that a defective product resulted even though the design was proper. We do not have any allegations (or evidence) like that here.

*Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 93 Wn.2d 210, 608 P.2d 254 (1980), illustrates the point neatly. In that case, the insured contracted "to manufacture and deliver 81 precast concrete panels." 93 Wn.2d at 211. "After 63 panels had been manufactured, delivered, and incorporated into the Army's operations building, it was discovered that 38 had been manufactured in a negligent and defective manner." *Id.* The negligence arose in the manufacturing and, as a result, the panels did not conform to their design:

> "They were not uniform in size, they varied in thickness, the exterior exposed aggregate *did not conform to specifications* and several window openings were inaccurate both in size and location…. The Army rejected them for *failure to meet the requisite architectural specifications*."

*Id.* at 211-12 (emphasis added). Thus, 38 of 63 panels did not match their specifications; they had been "mismanufactured." There is no contention that the specifications were improper.

Here, PCA alleges that the *design* was bad. Every single Lundberg flame arrester installed over a period of years in Lundberg Systems at different PCA paper mills was manufactured to meet Lundberg's design specifications. However, because the design was defective, so was each and every flame arrester. That is a design error, not a "mismanufacturing." Accordingly, there is no "occurrence" and no potential for coverage.

**D. Alternatively, the Engineers' Professional Liability Exclusion bars all coverage.**

An "occurrence" is defined by the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. 1-2, p. 30. As discussed above, the allegations and evidence here indicate that *if* there was any "accident" by

TWIN CITY'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 4

1  Lundberg, then it was in designing defective flame arresters and defective Lundberg Systems.

2  *See* Dkt. 1-1, p. 25, ¶ 99 ("PCA was harmed by the negligence of the Lundberg Defendants in

3  that the Lundberg Systems and Lundberg Flame Arresters were not reasonably safe as

4  designed.").  As previously noted, PCA's complaint repeatedly emphasizes Lundberg's status as

5  an engineering firm and specifically describes the Lundberg Systems as "engineered systems."

6  Dkt. 1-1, p. 10, ¶24; *see also* Dkt. 24, p. 12-14 (discussing exclusion and allegations).

7        The Engineers Professional Liability Exclusion bars coverage for damages "arising out of

8  the rendering of or failure to render any professional services by you or any engineer … who is

9  either employed by you or performing work on your behalf in such capacity." Dkt. 1-2, p. 57.

10  Accordingly, even if the Court determines that there is an "occurrence," the "occurrence" is the

11  improper design of the flame arresters and the Lundberg Systems, which is excluded by the

12  Professional Services Exclusion.  Accordingly, summary judgment should be awarded in Twin

13  City's favor.

14

15  **E.  The "your product" exclusion bars all coverage for damage to the system piping.**

16        Twin City and Lundberg agree on the law:  "With the 'your product' exclusion, the

17  appropriate test is whether the damaged property was the policyholder's product *or a part of the*

18  *policyholder's product*—if it was, then the exclusion applies; if it was not, then the exclusion

19  does not apply." Dkt. 30, p. 21:10-12; *see also id.,* p. 23:7-8 ("The dispositive question is

20  whether the damaged piping was Lundberg's product *or a part of Lundberg's product*.")

21  (emphasis added).

22        Lundberg argues throughout most of its briefing that the piping is not Lundberg property.

23  However, the effort proves too much, as Lundberg finally admits, at Dkt. 30, p. 21:7-8, that "the

24  damaged piping was not *exclusively* Lundberg's product." (emphasis added); *see also id.,* p.

25  22:18-19 ("Here, quite simply, the damaged piping was not exclusively (or even perhaps

26  primarily) Lundberg's product or work.").

TWIN CITY'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 5

**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922

1    Of course, to argue that the piping was not "exclusively" Lundberg's product is to admit

2    that the piping was, indeed, Lundberg's product, even if not "exclusively" or "primarily" so.[1]

3    With this admission, and the parties' agreement on the law, this case can easily be resolved at the

4    summary judgment stage on the basis of the "your product" exclusion.  *See, e.g.*, Dkt. 30, p.

5    21:15-18 ("…the *Indian Harbor* court found that the exclusion applied to damage to condo

6    modules made by the policyholder notwithstanding the fact that another entity had supplied some

7    of the parts the policyholder had used to make the modules.").

8    The fact of the matter is that the underlying complaint repeatedly identifies the Lundberg

9    Systems as Lundberg's property and describes those systems as containing the very piping which

10   Lundberg contends was damaged during the replacement process.[2]  Lundberg cannot change

11   these allegations by ignoring them, and it cannot supplant the allegations with an alternative

12   theory that PCA is pursuing it solely for defective flame arresters.  Based on the allegations, the

13   piping is clearly Lundberg's product, and any damage to the piping is barred from coverage by

14   the "your product" exclusion.

15

16   [1] If a general contractor constructs a home, the finished product is still the contractor's "product" even
     though it contains materials supplied and installed by others. *See, e.g.*, *Indian Harbor Ins. Co. v.*
17   *Transform LLC*, 2010 U.S. Dist. LEXIS 94080, at *18 (W.D. Wash. Sep. 8, 2010) ("… both the finished
     modules and the materials supplied to Transform for manufacture are the 'product' of Transform."); *Mut.*
18   *of Enumclaw v. Archer Constr.*, 123 Wn. App. 728, 733-34, 97 P.3d 751, 755 (2004) ("A building
     constructed by a builder is its product" even when work is performed by others).  The materials supplied
19   by others would *also* be the product of the supplier and the subcontractor who installed them.  In that
     fashion, the materials would be the general contractor's product but not "exclusively" so.  That appears to
20   be what Lundberg is suggesting here.  *Or*, Lundberg may be suggesting that some of the piping (*i.e.*, the
     piping it supplied or installed) was its "product," but other piping (*i.e.*, the piping supplied and installed
21   by others) is not. If *this* is Lundberg's position, then it is an admission that the piping is indeed part of the
     Lundberg Systems, as why else would Lundberg be supplying or installing piping?  PCA's complaint
22   clearly identifies the Lundberg Systems as a Lundberg product. *E.g.*, Dkt. 1-1, p. 10, ¶ 24.  The piping is
     part of those systems, and, by Lundberg's own admission, the piping is Lundberg's product *regardless* of
23   who supplied or installed it.  Dkt. p. 23:7-8 ("The dispositive question is whether the damaged piping was
     Lundberg's product or a part of Lundberg's product").
24   [2] *See, e.g.*, Dkt. 1-1, ¶ 48 (PCA alleges that it "hired Lundberg to design, manufacture, assemble, install,
     and maintain Lundberg Systems with Lundberg Flame Arresters" at all five mills at issue); *see also id.*, ¶s
25   24, 25, 36, 51; 96; Dkt. 30, p. 9:11-12 (Lundberg describes "the piping" as a "major component of those
     systems.").
26

TWIN CITY'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 6

1     Based on the allegations, the "your product" exclusion clearly applies, and there is no

2     potential for coverage.  To avoid this result, Lundberg *needs* extrinsic evidence that contradicts

3     the allegations and demonstrates that the piping is <u>not</u> part of the Lundberg Systems.  Lundberg

4     has not presented any such evidence.  Accordingly, coverage is barred.

5     In footnote 24 to its Response, Dkt. 30, p. 23, Lundberg relies on this court's decision in

6     *Indian Harbor Ins. Co. v. Transform LLC*, No. C09-1120 RSM, 2010 U.S. Dist. LEXIS 94080,

7     at *19 n.4 (W.D. Wash. Sep. 8, 2010) to not apply the "your work" exclusion (<u>not</u> the "your

8     product" exclusion) because "there is a dispute whether Transform used subcontractors to

9     perform its contract obligations, which would make the exclusion inapplicable."  Lundberg's

10    argument is misplaced, as the decision in *Indian Harbor* likely turned on the fact that standard

11    "your work" exclusions have subcontractor work exceptions, whereas standard "your product"

12    exclusions do not.  *See* Dkt. 1-2, pp. 11, 15 (the Twin City policy is based on a standard "ISO"

13    form and includes both exclusions, one with a subcontractor exclusion and one without).

14    The fact that the "your work" exclusion contains a subcontractor work exception but the

15    "your product" exclusion does not contain a subcontractor materials exception reinforces the

16    undisputed point that the "your product" exclusion applies to materials supplied by others so

17    long as those materials are incorporated into the insured's product.  Dkt. 30, p. 21:10-12

18    (Lundberg wrote: "…the appropriate test is whether the damaged property was the

19    policyholder's product or a part of the policyholder's product—if it was, then the exclusion

20    applies...."). Both the allegations and all known evidence clearly indicate that the piping was

21    part of the Lundberg Systems.  Therefore, damage to the piping is barred by the "your product"

22    exclusion regardless of who supplied or installed the piping.

23

24    **F.  Alternatively, the "impaired property" exclusion bars coverage for any damage to
      the system piping.**

25    To avoid the impaired property exclusion, Lundberg argues that the system piping is not

26    "impaired property" because it is not incorporated into Lundberg's product and portions of

TWIN CITY'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 7

1  piping may have been discarded during the replacement of the flame arresters.  As previously

2  briefed, the documents provided by Lundberg as extrinsic evidence does not support the notion

3  that the piping was discarded, and further, is inadmissible.  Regardless, as shown below,

4  Lundberg's arguments fail because they:  (1) ignore the fact that the exclusion also applies to

5  "property that has not been physically injured"; and (2) focus solely on the flame arresters,

6  ignoring repeated allegations that the Lundberg Systems, which were restored to use, incorporate

7  both the piping and the flame arresters.[3]

8       For reference, and subject to an exception not applicable here, the "impaired property"

9  exclusion bars coverage for:

> "Property damage" to *"impaired property"* <u>or</u> *property that has not been physically injured*, arising out of:
> **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

14  Dkt. 1-2, p. 15 (emphasis added).  The term "impaired property" is defined to mean "tangible

15  property, other than 'your product' or 'your work' that cannot be used or is less useful because:

> **a.** It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> **b.** You have failed to fulfill the terms of a contract or agreement; if such property <u>*can be restored to use*</u> by the repair, replacement, adjustment or removal of 'your product' or 'your work', or your fulfilling the terms of the contract or agreement."

20  Dkt. 1-2, p. 28 (emphasis added).

21      1.  <u>The system piping qualifies as property "that has not been physically injured."</u>

22       By its plain language, the exclusion applies both to "impaired property" and "property

23  that has not been physically injured."  Here, it is undisputed that the system piping had never

---

[3] *See, e.g.*, Dkt. 1-1, p. 12, ¶ 36 ("…"Flame arresters are devices installed in a gas piping system, such as a Lundberg System…".); p. 24, ¶ 96 ("PCA now seeks to recover all costs associated with the Lundberg Defendants' defective products, including the Lundberg Systems and Lundberg Flame Arresters.").

TWIN CITY'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 8

1    been physically injured by the allegedly defective flame arresters.  Accordingly, the piping

2    qualifies as "property that has not been physically injured," and coverage is barred for any

3    "property damage" that may have occurred to the piping during the replacement project.

4          Lundberg argues that the piping does not qualify as "property that has not been physically

5    injured" because it was damaged during the replacement process.  However, the phrase "property

6    that has not been physically injured" employs the "past perfect" tense, which is "used to talk

7    about actions that were completed before some point in the past."[4]  Similarly, the definition of

8    "impaired property" refers to property that "can be" "restored to use by the repair, adjustment or

9    removal of 'your product'."  We are not directed to consider whether property "will be" injured

10   or "has been" restored to use.

11         Thus, in evaluating whether the impaired property exclusion applies, we must focus on

12   the time *prior* to any preventative repair work.  If that work, rather than the defective product

13   itself, causes damage to property (*i.e.*, system piping) that "has not been physically injured," then

14   the impaired property exclusion applies, and the damage is not covered.

15         To consider this from another angle, imagine PCA brought its suit against Lundberg *prior*

16   to undertaking repairs.  Also imagine that the suit alleged that system piping *would be* damaged

17   during the replacement project.  The coverage issue would be an easy one:  the piping would

18   qualify as property that "has not been physically injured" and, therefore, all "property damage"

19   to that piping would be subject to the exclusion.  The fact that PCA pursued repairs prior to

20   bringing suit cannot change the coverage result.

21         When property that "has not been physically injured" is damaged during a purely

22   preventative[5] repair or replacement process, coverage is barred by the impaired property

23

24   [4]  https://www.grammarly.com/blog/past-perfect/; *see also* https://www.grammar-
25   monster.com/glossary/past_perfect_tense.htm.  ("The past perfect tense describes a completed activity in
     the past. It is used to emphasize that an action was completed before another action took place.").
26   [5]The impaired property exclusion would not likely apply if the repairs were not just preventative but also
     addressed physical damage caused prior to the repairs.

TWIN CITY'S REPLY IN SUPPORT OF MOTION                    **GORDON & POLSCER, L.L.C.**
FOR PARTIAL SUMMARY JUDGMENT                              9020 SW Washington Square Rd., Suite 560
2:20-cv-01623-JCC - Page 9                                Tigard, OR 97223
                                                          (503) 242-2922

exclusion.  *See, e.g.*, *Am. Hallmark Ins. Co. v. Jireh Asphalt & Concrete, Inc.*, No. C21-0365-JCC, 2021 U.S. Dist. LEXIS 195227, at *8 (W.D. Wash. Oct. 8, 2021) ("[T]he 'impaired property exclusion' excludes from coverage claimed damages based on loss of use, or repair work, resulting from Jireh's faulty work that did not actually damage the property."); *Stewart Interior Contractors, L.L.C. v. MetalPro Indus., L.L.C.*, 2007-0251, 969 So. 2d 653, 664-65 (La. App. 4 Cir Oct. 10, 2007) ("[W]e hold that, to the extent the evidence shows damages arising out of, or solely incidental to, the removal and/or repair of the allegedly defective steel studs, the Nautilus policy clearly excludes coverage for these damages under the 'impaired property' exclusion.").  That is exactly what occurred here.  Accordingly, the "impaired property" exclusion applies, and coverage is barred for any damage to the system piping.

     2.   The system piping also qualifies as "impaired property."

     To the extent, if any, the court determines that the "your product" exclusion does not apply *and* the system piping does not qualify as "property that has not been physically injured," then the court must consider whether the piping qualifies as "impaired property."  It does, as the system piping was rendered less useful by the presence of the flame arresters and was then restored to use after the flame arresters were replaced.  Accordingly, the impaired property exclusion applies, and coverage for any damage to the piping is barred.

     Lundberg argues that system piping does not qualify as "impaired property" because: (1) the flame arresters were not "incorporated" into system piping; and (2) some piping was discarded or replaced.

     As to the first argument, "incorporation" is not required.  As set forth in the definition quoted above, there are two categories of "impaired property."  Incorporation is required for the first category, but not for the second.  The second category is satisfied if property is rendered less useful because, as has been clearly alleged by PCA here, Lundberg "failed to fulfill the terms of a contract or agreement."

     Moreover, the underlying complaint *repeatedly* identifies the piping as part of the

1    Lundberg System and explains that the system piping surrounds and "incorporates" the flame

2    arresters.  *See, e.g.*, Dkt. 1-1, p. 10, ¶ 26 ("most importantly, the [Lundberg System] must

3    incorporate safety features which will allow easy operation of the system…."); p. 12, ¶ 36

4    ("…Flame arresters are devices installed in a gas piping system, such as a Lundberg

5    System…."); p. 14, ¶ 46 ("A single Lundberg System will typically have multiple Lundberg

6    Flame Arresters installed at various locations, and it is common for the single Lundberg System

7    to have multiple sized Lundberg Flame Arresters incorporated.").  Thus, Lundberg's

8    "incorporation" argument misses the mark for two reasons: "incorporation" is not required, but it

9    is also present.

10          As to Lundberg's second argument – that some system piping may have been discarded

11    or replaced, which Lundberg has failed to show and is not alleged anywhere in PCA's complaint

12    – PCA's complaint clearly indicates that the Lundberg Systems were restored to use.  *See, e.g.*,

13    Dkt. 1-1, pp. 22-23, ¶s 83-86 (describing replacement project and "intermittent[]" shutdowns).

14    Because the systems, and their piping, could be (and were) restored to use, the piping qualifies as

15    "impaired property."

16          Because the piping qualifies as "impaired property," damage to that piping – including

17    physical damage – is barred from coverage.  Thus, the proper question is not whether incidental

18    piping segments were damaged during the replacement process.  The proper question is whether

19    the piping system could be restored to use after replacement of the flame arresters.  It was, so the

20    piping qualifies as "impaired property," and damage (if any) to that piping during repairs is

21    barred from coverage.  *Am. Hallmark Ins. Co. v. Jireh Asphalt & Concrete, Inc.*, 2021 U.S. Dist.

22    LEXIS 195227, at *8 ("[T]he 'impaired property exclusion' excludes from coverage claimed

23    damages based on loss of use, or repair work, resulting from Jireh's faulty work that did not

24    actually damage the property.").

25          In conclusion, the system piping qualifies as both "impaired property" and "property that

26    has not been physically injured."  From both perspectives, the impaired property exclusion

TWIN CITY'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 11

applies, and coverage is barred for any damage that may have occurred to the piping during the replacement of the allegedly defective flame arresters.

**G.  Conclusion**

For all the reasons stated above, and in prior briefs, Twin City respectfully submits that its Motion for Partial Summary Judgment, Dkt. 24, should be granted, and Lundberg's Cross-Motion, Dkt. 27, should be denied.

DATED this 12th day of November, 2021.

Respectfully submitted,

GORDON & POLSCER, LLC

By: *s/ Brian C. Hickman*
Brian C. Hickman, WSBA No. 50089
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223

Attorneys for Plaintiff Twin City Fire Insurance Company

TWIN CITY'S REPLY IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT
2:20-cv-01623-JCC - Page 12

GORDON & POLSCER, L.L.C.
9020 SW Washington Square Rd., Suite 560
Tigard, OR 97223
(503) 242-2922