THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TWIN CITY FIRE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>LUNDBERG, LLC,<br><br>    Defendant. | CASE NO. C20-1623-JCC<br><br>ORDER |

This matter comes before the Court on the parties' cross-motions for partial summary judgment (Dkt. Nos. 24, 27). Having thoroughly considered the briefing and relevant record, and having taken oral argument under advisement, the Court hereby GRANTS Defendant's motion (Dkt. No. 27) and DENIES Plaintiff's motion (Dkt. No. 24) for the reasons explained herein.

I.   BACKGROUND

Packaging Corporation of America ("PCA"), a paper, containerboard, and corrugated product manufacturer, engaged Defendant Lundberg, LLC and related entities (collectively "Lundberg") to design and install fire and explosion mitigation systems in five of PCA's paper and pulp mills. (Dkt. No. 1 at 4–5; *see also* Dkt. No. 1-1 at 7–12, 15.) Part of Lundberg's system is a flame arrester, which Lundberg allegedly designed and manufactured. (Dkt. No. 1 at 4–5.) After Lundberg installed 57 of these devices, PCA independently tested them, revealing alleged defects. (*Id.* at 5–6.) "At great cost," PCA elected to remove and replace the devices. (*Id.* at 6–7.)

PCA brought suit against Lundberg, eventually filing an amended complaint with the King County Superior Court. (Dkt. No. 1 at 3–4.) That complaint seeks, among other things, damages to recoup the amounts PCA incurred in "purchasing . . . maintaining . . . testing . . . [and] replacing" Lundberg's allegedly defective flame arresters. (Dkt. No. 1-1 at 37.) Twin City Fire Insurance Company, who was Lundberg's commercial and general liability insurer at the time, defended Lundberg under a reservation of rights. (Dkt. No. 1 at 17.) PCA's suit remains ongoing, with trial scheduled for later this year. (*See generally* Dkt. Nos. 24, 27.)

Twin City filed a complaint with this Court seeking a declaratory judgment that any amounts Lundberg owes to PCA are either (a) not covered by its policies or (b) subject to a policy exclusion. (Dkt. No. 1 at 17–21.) The parties now cross-move for partial summary judgment solely on the issue of Twin City's duty to defend. (*See* Dkt. Nos. 24 at 20, 27 at 26.)

## II. DISCUSSION

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In deciding whether there is a genuine dispute of material fact, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.* at 255. It is prohibited from weighing the evidence or resolving disputed issues in the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

"The moving party bears the initial burden of establishing the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*

1  & *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But once the moving
2  party properly supports its motion, the nonmoving party "must come forward with 'specific facts
3  showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*
4  *Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Ultimately, summary judgment
5  is appropriate against a party who "fails to make a showing sufficient to establish the existence
6  of an element essential to that party's case, and on which that party will bear the burden of proof
7  at trial." *Celotex*, 477 U.S. at 322.

8  **B.     Duty to Defend**

9  Under Washington law,[1] an insurer's "duty to defend arises when a complaint against the
10 insured, construed liberally, alleges facts which could, if proven, impose liability upon the
11 insured within the policy's coverage." *Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 691
12 (Wash. 2013) (internal quotations omitted); *see Robbins v. Mason Cnty. Title Ins. Co.*, 462 P.3d
13 430, 435 (Wash. 2020); *see also Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 873
14 n.7 (Wash. 2008) ("[T]he duty to defend arises when a complaint contains any allegations that
15 could make an insurer liable to an insured under the policy."). "The party seeking to establish
16 coverage bears the initial burden of proving coverage under the policy has been triggered," while
17 "[t]he insurer bears the burden of establishing an exclusion to coverage." *Pleasant v. Regence*
18 *BlueShield*, 325 P.3d 237, 243 (Wash. Ct. App. 2014) (citing *Diamaco, Inc. v. Aetna Cas. & Sur.*
19 *Co.*, 983 P.2d 707, 709 (Wash. Ct. App. 1999)).

20 Ordinarily, to determine whether a claim is covered, an insurer must look to the "eight
21 cor[n]ers" of the policy and the complaint against the insured. *Xia v. ProBuilders Specialty Ins.*
22 *Co.*, 400 P.3d 1234, 1240 (Wash. 2017). If neither document raises an issue of fact or law that
23 could conceivably result in coverage, then the insurer need not defend. *Id.* But "if there is any
24 reasonable interpretation of the facts or law that could result in coverage, the insurer must
25 defend." *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 696 (Wash. 2010). And if the

---

[1] It is undisputed that Washington law controls. (*See generally* Dkt. Nos. 24, 27.)

facts in the complaint are ambiguous, or if they conflict with facts known to or readily ascertainable by the insurer, then the insurer must investigate those facts using extrinsic evidence to determine if the insured is conceivably covered. *See Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007). This extrinsic evidence may be used to confirm, but not disprove, a duty to defend. *Id.* [2]

Twin City asserts it has no duty to defend because the events described in PCA's amended complaint are not the type generally covered under the policy and, even if they were, policy exclusions preclude coverage. (Dkt. No. 24 at 10–19.)

1. General Coverage Under the Policy

In general, Twin City's policy applies to "property damage." (Dkt. Nos. 1-2 at 11, 1-3 at 10, 1-4 at 13.) The alleged property damage here is the destruction of some of PCA's piping, which PCA cut to remove Lundberg's flame arresters. (*See* Dkt. Nos. 1-1 at 37 ("damages associated with replacing the defective . . . flame arresters"); 29 at 3 (describing "non-Lundberg piping that was cut to remove the Lundberg flame arresters").)

However, this type of property damage is only covered if "caused by an 'occurrence,'" which the policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Dkt. Nos. 1-2 at 11, 30; 1-3 at 10, 29; 1-4 at 13, 32.) For purposes of triggering a duty to defend, a manufacturing error, such as the allegedly defective flame arresters, is an "occurrence" so long as the error is "unexpected" or "unforeseen." *Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 608 P.2d 254, 257 (Wash. 1980). Twin City argues that any alleged defects with Lundberg's flame arresters were design defects, rather than manufacturing defects, and only the latter constitute an "occurrence" under

---

[2] Twin City moves to strike extrinsic evidence presented by Lundberg on the basis that it is inadmissible, unverified, and irrelevant. (Dkt. No. 32 at 7–8.) But it appears that Lundberg could present this evidence in an admissible form at trial. *See* Fed. R. Civ. P. 56(c)(2). And the documents and testimony are relevant. Moreover, the relevant information is corroborated by testimony from Lundberg's declarant. (*See* Dkt. No. 23.) Therefore, the Court will consider it.

the policy. (Dkt. Nos. 24 at 11, 32 at 12–15.) It also argues that the alleged defects were so consistent throughout all of Lundgren's flame arresters that they could not reasonably be considered "unexpected" or "unforeseen." (*Id.*) Neither argument is persuasive.

A reasonable interpretation of PCA's amended complaint is that the alleged defects are not traceable solely to design errors. (*See, e.g.*, Dkt. No. 1-1 at 18 (arresters were not "manufactured to appropriate tolerances"), 24 (arresters were "defective as designed, ***manufactured***, sold, and installed by Lundberg" (emphasis added)).) Twin City suggests that PCA's vague allegations regarding manufacturing error, along with the extrinsic evidence presented by Lundberg, are insufficient to establish a mistake in manufacturing. (*See* Dkt. Nos. 32 at 14–15, 34 at 6–7.) But "[u]nder Washington law, an 'occurrence' includes the *deliberate* manufacture of a product which inadvertently is mismanufactured." *Mid-Continent Cas. Co. v. Titan Constr. Corp.*, 281 F. App'x 766, 768 (9th Cir. 2008) (citing *Yakima Cement Prods. Co.*, 608 P.2d at 257). In addition, "negligent construction and negligent design claims fall within the definition of a fortuitous event." *Baugh Constr. Co. v. Mission Ins. Co.*, 836 F.2d 1164, 1169 (9th Cir. 1988) (citing *Yakima Cement Prods. Co.*, 608 P.2d at 257 (1980)).

Here, it can reasonably be concluded that PCA's amended complaint contains sufficient allegations to trigger a duty to defend. Therefore, Lundberg has satisfied its burden to establish coverage. Unless Twin City can show that a policy exclusion applies, it has a duty to defend.

    2. <u>Policy Exclusions</u>

Twin City asserts that any one of three policy exclusions counsel against a duty to defend. (*See* Dkt. Nos. 24 at 12–19; 32 at 15.)

      a. *Engineers Professional Liability*

It first points to the provision excluding coverage for engineering activities. (Dkt. Nos. 24 at 13; 32 at 15 (citing Dkt. Nos. 1-2 at 23–24, 57; 1-3 at 22–23, 57; 1-4 at 25–26, 61).) This argument borders on frivolous. While it is true that PCA's amended complaint describes Lundberg as a "leading engineering" firm to the "pulp and paper industry," (Dkt. No. 1-1 at 8), it

also alleges that Lundberg manufactures and installs the pollution emission systems that it engineers. (*See* Dkt. No. 1-1 at 3–13, 15–24.) Again, "[t]he duty to defend arises when a complaint contains *any* allegations that could make an insurer liable to an insured under the policy." *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 873 n.7 (emphasis added). Such is the case here. Therefore, this exclusion is inapplicable.

b. *Your Own Product*

Twin City next points to the provision excluding coverage for damage to the insured's own product. (Dkt. Nos. 24 at 15–16, 32 at 16–19 (citing Dkt. Nos. 1-2 at 15, 1-3 at 14, 1-4 at 17).) But Lundberg presents unrebutted testimony and other evidence indicating that the pipes which had to be cut in at least two of the five locations were not installed by Lundberg. (*See* Dkt. Nos. 28 at 28, 29 at 2.) This is in addition to the exhibits attached to PCA's complaint suggesting that Lundberg routinely sold its flame arresters à la carte; *i.e.*, separate from the connecting piping. (*See* Dkt. Nos. 1-1 at 57–58, 82–83, 28 at 28, 29 at 2.) Therefore, this exclusion is also inapplicable.

c. *Impaired Property*

Finally, Twin City points to the provision excluding coverage for impaired property. (Dkt. Nos. 24 at 16–19, 32 at 20–24 (citing Dkt. No. 1-2 at 15, 1-3 at 14, 1-4 at 17).) The policy defines such property as:

> tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>   b. You have failed to fulfill the terms of a contract or agreement;
> if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

(Dkt. Nos. 1-2 at 28; 1-3 at 27; 1-4 at 30.) Said another way, the policy does not cover the loss of usefulness of someone else's property if the property can be rendered usable simply through the removal or correction of the insured's product or work.

But nothing in PCA's complaint or the extrinsic evidence Twin City received suggests that the allegedly defective flame arresters could be removed without making *PCA's piping* unusable, in at least two of the five locations. (*See generally* Dkt. Nos. 1-1, 28 at 28, 29 at 2–3.) Therefore, this exclusion is also inapplicable. This is consistent with this Court's ruling on analogous facts. *See Phoenix Ins. Co. v. Diamond Plastics Corp.*, 2020 WL 5993909, slip op. at 3 (W.D. Wash. 2020) (finding the facts comparable to *Dewitt Const. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1134 (9th Cir. 2002)).

While Twin City points the Court to another ruling finding no duty to defend, (*see* Dkt. No. 32 at 21–22 (citing *Am. Hallmark Ins. Co. of Texas v. Jireh Asphalt and Concrete, Inc.*, 2021 WL 4709803, slip op. at 3 (W.D. Wash. Oct. 8, 2021)), neither the facts nor the procedural posture of that case are analogous. In *Jireh Asphalt*, there was no damage to anyone else's property and the insurer's motion for summary judgment was unopposed, so the Court received no argument on the issue. S*ee* 2021 WL 4709803, slip op. at 1–4.

Twin City has not met its burden to show that an applicable policy exclusion would excuse it of a duty to defend Lundberg in the PCA suit.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for partial summary judgment (Dkt. No. 27) and DENIES Plaintiff's motion for partial summary judgment (Dkt. No. 24).

DATED this 9th day of February 2022.

*[signature: John C. Coughenour]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE